FILED: NEW YORK COUNTY CLERK 03/09/2023 06:41 PM

INDEX NO. 654839/2022

NYSCEF DOC. NO. 22

RECEIVED NYSCEF: 03/09/2023

111.    Unlike the *Bakalar* court, *Reif v. Nagy* carefully analyzed the historical circumstances and rejected decisively the arguments that Grönbaum's sister-in-law Mathilde Lukacs had laundered Grönbaum's artworks through Switzerland.

112.    The Appellate Division carefully analyzed overwhelming evidence suggesting that Mathilde Lukacs never had custody of the art collection, and certainly lacked custody during the War when she was imprisoned.

113.    The Appellate Division further noted:

> We note that there are no records, including invoices, checks, or receipts documenting that the Artworks were purchased by Kornfeld from Mathilde. Moreover, even if Mathilde had possession of Grunbaum's art collection, possession is not equivalent to legal title.

*Id.* at 127.

114.    The First Department also analyzed record evidence not available to the *Bakalar* court, such as post-*Bakalar* revelations involving Eberhard Kornfeld's dealings with Cornelius Gurlitt and Kornfeld's trafficking other Nazi-looted artworks.

115.    Thus, *Reif v. Nagy's* factual findings are based on a developed factual record and supercede the factual record in *Bakalar*, further making *Bakalar* an untrustworthy precedent.

116.    In affirming, the First Department determined that relative to the art dealer (Nagy), Reif, Frankel and Vavra had "superior ownership and possessory interests" in the Schiele artworks. *Id.,* 175 A.D.3d at 132, 106 N.Y.S.3d at 24.

117.    Unlike *Bakalar, Reif v. Nagy* rejected the proposition that the decedent Mathilde Lukacs's missing testimony could have prejudiced Nagy because "Mathilde could not have shown she had good title to the artworks and her testimony would not have been probative." 175 A.D.3d 107 (First Dept. 2019).

FILED: NEW YORK COUNTY CLERK 03/09/2023 06:41 PM          INDEX NO. 654839/2022
NYSCEF DOC. NO. 22                                        RECEIVED NYSCEF: 03/09/2023

118.     In rejecting Nagy's "prejudice" argument, *Reif v. Nagy* relied on the New York
Court of Appeals 2013 decision clarifying that a the proponent of the laches defense must show
that a decedent's missing testimony would have supported a claim of title. *Matter of
Flamenbaum*, 22 N.Y.3d 962, 966 (2013).

119.     *Reif v. Nagy's* trustworthy application of *Matter of Flamenbaum* constitutes an
intervening change or clarification of law that further renders the *Bakalar* precedent unreliable.

120.     Because Nagy refused to return the artworks, the Appellate Division affirmed an
award of prejudgment interest in the amount of $700,964.44. *Reif v. Nagy,* 199 A.D.3d 616, 158
N.Y.S.3d 89 (1st Dept. 2021).

121.     Nagy persisted in challenging the Heirs' possessory interest in artworks stolen
from Grünbaum until the Court of Appeals' May 24, 2022 denial of Nagy's motion for leave to
appeal. *Reif v. Nagy,* 38 N.Y.3d 908, 168 N.Y.S.3d 720 (2022).

122.     The Court of Appeals' May 2022 decision established a possessory interest in
Grönbaum's heirs under New York law to artworks stolen from Fritz Grünbaum, by the Nazis,
such as Schiele's *Girl With Black Hair (1911)* in the Museum's possession.

**Schieles Stolen From Grünbaum Featured in 1956 Gutekunst & Klipstein Sales Catalogue**

123.     The Artwork is featured in a 1956 Gutekunst & Klipstein Sales catalogue of Egon
Schiele's artworks.

124.     All artworks in the 1956 Gutekunst & Klipstein sales catalogue were stolen from
Grünbaum, including the famous *Dead City III*, which was seized by District Attorney Robert
Morgenthau from the Museum of Modern Art in New York City in 1998. *Reif v. Nagy,* 175 A.D.3d
107 at 110, 114, 121 (1st Dept. 2019). The Gutekunst & Klipstein sales catalogue made no mention
of Mathilde Lukacs in the provenance of the artworks.

FILED: NEW YORK COUNTY CLERK 03/09/2023 06:41 PM
NYSCEF DOC. NO. 22

INDEX NO. 654839/2022
RECEIVED NYSCEF: 03/09/2023

125.   In the 1997 Museum of Modern Art Catalogue:   *"Egon Schiele: the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Dead City III* (1911) appears as follows (with no mention of Mathilde Lukacs):



Arthur Roessler, Vienna; Alfred Spitzer, Vienna; Fritz Grünbaum, Vienna; Gutekunst & Klipstein, Bern, Galerie St. Etienne, New York; Rudolf Leopold, Vienna.   **Exhibit N** at 144.



126.   In the 1997 Museum of Modern Art Catalogue:   *"Egon Schiele : the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Red Blouse ("Rote Bluse")* (1913) appears as follows (with no mention of

FILED: NEW YORK COUNTY CLERK 03/09/2023 06:41 PM

NYSCEF DOC. NO. 22

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/09/2023

Mathilde Lukacs): Fritz Grunbaum, Vienna; Heirs of Fritz Grunbaum, The Netherlands; Galerie Kornfeld, Bern (auction), 1981; Rudolf Leopold, Vienna. **Exhibit N** at 220.

### AS AND FOR A FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT

127.    Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

128.    CPLR 3001 authorizes the Court to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

129.    A justiciable controversy exists concerning the ownership of the Artwork that only the Supreme Court may determine.

130.    Therefore, Plaintiffs request a declaratory judgment that the Artwork is the property of Plaintiffs.

**WHEREFORE,**  Plaintiffs demand: (1) a declaratory judgment that Plaintiffs own the Artwork; (2) an award of costs and interest; and (3) such other and further relief the Court deems just, proper and equitable.

FILED: NEW YORK COUNTY CLERK 03/09/2023 06:41 PM

NYSCEF DOC. NO. 22

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/09/2023

Dated: New York, New York
December 14, 2022

Respectfully submitted,

**DUNNINGTON BARTHOLOW & MILLER LLP**
*Attorneys for Plaintiffs*

By: /s/ Raymond J. Dowd
Raymond J. Dowd
Claudia G. Jaffe
230 Park Avenue 21st Floor
New York, New York 10169
Telephone: 212-682-8811
Facsimile: 212-661-7769
rdowd@dunnington.com
cjaffe@dunnington.com

FILED: NEW YORK COUNTY CLERK 03/09/2023 06:41 PM     INDEX NO. 654839/2022
NYSCEF DOC. NO. 22                                   RECEIVED NYSCEF: 03/09/2023

## VERIFICATION

TIMOTHY M. REIF, affirms, subject to penalties of perjury under the laws of the State of New York as follows:

1. I am a plaintiff in this action and an attorney admitted to practice in the State of New York.

2. I have read the foregoing Complaint with exhibits, know the contents thereof and the same are true and correct to my own knowledge, except where alleged upon information and belief, and with respect to those allegations, I believe them to be true.

3. The grounds of my belief as to all matters not stated to upon my knowledge are documents, papers and data contained in the files pertaining to this matter.

December 14, 2022

_____
TIMOTHY M. REIF

FILED: NEW YORK COUNTY CLERK 03/09/2023 06:41 PM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 23    RECEIVED NYSCEF: 03/09/2023

# EXHIBIT D

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:40 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 23                                      RECEIVED NYSCEF: 02/04/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA,<br><br>    *Plaintiffs,*<br><br>-against -<br><br>THE MUSEUM OF MODERN ART,<br><br>    *Defendant,*<br><br>An Artwork *Girl Putting on Shoe* (1910) by the Artist Egon Schiele,<br><br>    *Defendant-in-rem.* | Index No.:<br><br>**SUMMONS** |

To The Defendants Named Above:

  **YOU ARE HEREBY SUMMONED** to answer the attached Verified Complaint in this

action, and to serve a copy of your verified answer, or if the Verified Complaint is not served

with this Summons, to serve a notice of appearance on the Plaintiffs' counsel, Dunnington

Bartholow & Miller LLP, at the address set forth below within twenty (20) days after the service

of this Summons (not counting the day of service itself), or within thirty (30) days after service is

complete if this Summons is not delivered personally to you within the State of New York.

  **PLEASE TAKE FURTHER NOTICE** that should you fail to answer or appear, a

judgment will be entered against you by default for the relief in the Verified Complaint together

with the costs and disbursements of this action.

Dated:  New York, New York

1

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM          INDEX NO. 654839/2022

NYSCEF DOC. NO. 23                                          RECEIVED NYSCEF: 02/09/2022

December 14, 2022

**DUNNINGTON BARTHOLOW & MILLER LLP**
*Attorneys for Plaintiffs*

By:     ___s/Raymond J. Dowd_____
        Raymond J. Dowd
        Claudia G. Jaffe
        230 Park Avenue, 21st Floor
        New York, New York 10169
        Phone: (212) 682-8811
        Facsimile: (212) 661-7769
        RDowd@dunnington.com
        CJaffe@dunnington.com

2

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:40 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 23                                    RECEIVED NYSCEF: 02/04/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA,

*Plaintiffs,*

-against -

THE MUSEUM OF MODERN ART,

*Defendant,*

An Artwork *Girl Putting on Shoe* (1910) by the Artist Egon Schiele,

*Defendant-in-rem.*

Index No.:

**VERIFIED COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, by and through their counsel, DUNNINGTON BARTHOLOW & MILLER LLP, hereby complain of the Defendants as follows:

**PRELIMINARY STATEMENT**

1.      This is an action by the heirs of Franz Friedrich ("Fritz") Grünbaum (the Grünbaum Heirs) to recover a painting by Egon Schiele entitled *Girl Putting on Shoe* (1910) (the "Artwork") which, upon information and belief, is currently located in New York County at The Museum of Modern Art, 11 West 53rd Street, New York, New York ("the MoMA").



FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM
NYSCEF DOC. NO. 23

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

2.      The Artwork is catalogued in Kallir, Jane, *Egon Schiele: The Complete Works* (Harry Abrams 1990 & 1998) as a drawing, designated D.686.

3.      Plaintiffs assert causes of action for replevin, declaratory judgment, and enforcement of Section 233-aa, Subdivision 15, of the New York Education Law (requiring museums to label works of art on display that changed hands due to theft, seizure, confiscation, forced sale or other involuntary means in Europe during the Nazi era).

4.      The Artwork is a unique chattel as defined by CPLR 7109(a) which authorizes injunctive relief.

5.      The Nazi regime stole the Artwork from Grünbaum while he was imprisoned in the Dachau Concentration Camp, where the Nazis tortured him and compelled him to sign an unlawful power of attorney giving his wife authority to convey his property, before murdering him.

6.      This action is related to *Reif v. Nagy* because the Hon. Charles Ramos determined conveyances pursuant to the unlawful Dachau power of attorney to be invalid because "[a] signature at gunpoint cannot lead to a valid conveyance." *Reif v. Nagy,* 61 Misc.3d 319, 326, 80 N.Y.S.3d 629, 634 (Sup. Ct. New York County Comm. Div. 2018), *aff'd,* 175 A.D.3d 107, 106 N.Y.S.3d 5 (1st Dept. 2019), *leave to review declined,* 25 N.Y.3d 986, 125 N.Y.S.3d 76 (May 24, 2022).

7.      The Artwork was among artworks stolen from Grünbaum by the Nazis based on the unlawful Dachau power of attorney.

### THE PARTIES

8.      Plaintiffs are co-heirs of the estate of Grünbaum, a Viennese Jewish cabaret performer (born in Brno, Moravia) who was arrested by the Gestapo on March 22, 1938,

2

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM
NYSCEF DOC. NO. 23

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

imprisoned in the Dachau Concentration Camp, despoiled of all of his property by the Nazi regime, and murdered in Dachau on January 14, 1941.

9.      Plaintiffs Reif and Fraenkel are co-trustees of the testamentary Leon Fischer Trust for the Life and Work of Fritz Grünbaum (the "Fischer Trust") and hold valid letters of trusteeship representing the late Leon Fischer's 50% ownership interest in Grünbaum's estate.

10.      Plaintiff Reif is a resident of the City, County and State of New York.

11.      Plaintiff Fraenkel is a resident of the State of Florida.

12.      Plaintiff Vavra is a resident of the Czech Republic who owns a 50% interest in Grünbaum's estate.

13.      Defendant the MoMA Art Library & Museum, New York ("the MoMA") is a museum and institution located at 11 West 53rd Street, New York, New York 10019.

14.      Defendant-in-rem the Artwork, upon information and belief, is presently located in New York at the MoMA and is being sued herein *in rem*.

## ALLEGATIONS SUPPORTING PLAINTIFFS' STANDING

15.      On July 16, 1938, Nazis forced Grünbaum to sign a power of attorney in the Dachau Concentration Camp permitting his wife Elisabeth to liquidate his assets and hand the assets over to the Nazi regime.  **Exhibit A** at 3. (true copy of the power of attorney ("Vollmacht") (including a certified English translation)**.**

16.      From 1938 to 1939, Elisabeth was forced to liquidate Fritz's assets pursuant to Nazi decrees.

17.      On Grönbaum's death (in the Dachau Concentration Camp where he was imprisoned), a Vienna notary certified that Fritz had no property, there was nothing left. **Exhibit B** at 3 (true copy of the notary's certification).

3

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 23                                        RECEIVED NYSCEF: 02/09/2022

18.    On October 5, 1942 Elisabeth was deported to the Maly Trostinec death camp in Minsk, where she was murdered.

19.    Elisabeth Grünbaum's June 1939 Jewish Property Declaration shows that all of her property had been taken by the Nazis before she was murdered. **Exhibit C** (true copy of Elisabeth's Jewish Property Declaration (including a certified English translation); *see* **Exhibit C** at 3, 28 (stamp "Erledigt" ["done" or "completed"] and "Gesperrt" ["closed"]).

20.    As explained more fully below, these documents show conclusively that the Grünbaums lost Grünbaum's art collection prior to their deaths.

21.    Austrian government records demonstrate that no Grünbaum family member could have legally recovered the art collection following the deaths of Fritz and Elisabeth Grünbaum.

22.    Austrian government records show that from 1941 until 2002 Grünbaum had no heirs appointed by an Austrian court and no Austrian decrees of distribution were issued.

23.    Under Austrian law, for a family member to transfer a decedent's assets, that family member must first be declared an heir and receive a decree of distribution.

24.    Thus, the lack of any heirship or distribution decrees from 1941 until 2002 in Austrian government files signifies, as a matter of law, that no family member could have taken title to Grünbaum's art collection, or title to any individual artworks belonging to Grünbaum.

25.    Pursuant to a Certificate of Heirship issued by the District Court Innere Stadt Vienna dated September 12, 2002, Leon Fischer ("Fischer") and Milos Vavra ("Vavra") were each declared an heir of Fritz Grünbaum's estate entitled to an undivided fifty percent (50%) share. **Exhibit D** (true copy of the Certificate of Heirship).

4

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM          INDEX NO. 654839/2022
NYSCEF DOC. NO. 23                                         RECEIVED NYSCEF: 02/09/2022

26.     Prior to District Attorney Robert Morgenthau's seizure of Grünbaum's *Dead City III* at the Museum of Modern Art in New York City in 1999, neither Fischer nor Vavra had any idea that Grünbaum's art collection survived World War II.

27.     Pursuant to a last will and testament dated February 2012, Fischer appointed Reif and Fraenkel as executors of his estate.

28.     Fischer died on August 16, 2013.

29.     Upon learning of the art collection's existence, Fischer and Vavra diligently pursued Grönbaum's art collection.

30.     Letters testamentary were issued to Reif and Fraenkel and Fischer's will was duly probated.

31.      Fischer's will created the Leon Fischer Trust for the Life and Work of Fritz Grünbaum (the "Fischer Trust") to pursue Grönbaum's artworks with proceeds going to charity.

32.     Reif and Fraenkel are now co-trustees of the Fischer Trust and hold valid letters of trusteeship.

**ALLEGATIONS SUPPORTING RECOVERY OF THE STOLEN ARTWORK**

33.     Otto (Nirenstein) Kallir (1894-1978) was a Viennese art dealer who worked at the Wurthle Gallery in Vienna before founding his own art gallery in 1923 called the "Neue Galerie".

34.     In 1925 the Wurthle Gallery displayed 22 artworks from Fritz Grunbaum's art collection.  A true copy of the 1925 Wurthle Gallery catalogue is attached hereto as **Exhibit E**.

35.     In 1928, Fritz Grünbaum permitted Otto Kallir to enter his Vienna apartment (in Grünbaum's absence) to select from among Grünbaum's Schieles the works that Kallir wanted to display at an exhibition commemorating the tenth anniversary of Schiele's death.  A true copy of

5

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:40 PM
NYSCEF DOC. NO. 23

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/04/2022

the Kallir/Grunbaum 1928 correspondence ("the 1928 Correspondence") is attached hereto as **Exhibit F**.

36.     The 1928 Correspondence was donated by the Kallir family to the Austrian National Gallery (the Belvedere) as a gift of the Neue Galerie's business records following Otto Kallir's death and is currently maintained by the Austrian government as part of the Neue Galerie archive.

37.     The 1928 Correspondence shows that Grünbaum trusted Kallir.

38.     The 1928 Correspondence shows that Kallir was familiar with the contents of Grünbaum's art collection, in particularly Grünbaum's Schieles.

39.     The 1928 Correspondence lists four oils and 21 drawings and watercolors either by name or by description, including "Ich liebe Gegensatze" (1912) or "I Love Antitheses" (1912).

40.     In 1930, Otto Kallir published a catalogue raisonné of Egon Schiele's oil paintings that documented Fritz Grünbaum's ownership of works including "Dead City III".

41.     The foregoing pre-war documentation was used by scholars and historians to trace artworks looted from Fritz Grünbaum's art collection when portion of the collection after World War II when portions of the collection surfaced in Berne, Switzerland.

42.     On April 26, 1938, the Nazi regime decreed all Jewish property in excess of 5,000 Reichsmarks ("RM") to be available to the Nazi Reich for Field Marshal Goering's Four Year Plan to build the Nazi war machine.

43.     The April 26, 1938 decree required all Jews with property in excess of 5,000 RM to declare their assets quarterly until the assets were gone or until the Jews left the Reich.

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:40 PM
NYSCEF DOC. NO. 23

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/04/2022

44.    Jews were forbidden to transfer declared property, including art, without permission from Nazi authorities.

45.    As part of the process of securing Jewish assets to prevent transfers or sales, the Jewish Property Transaction Office (Vermögensverkehrsstelle) of Vienna commissioned inventories and valuation reports.   The Jewish victims were charged a fee for this process.

46.    A Vermögensverkehrsstelle inventory thus signified that Jewish assets were secured by the Nazi government.  Pursuant to that process, the Vermögensverkehrsstelle commissioned Franz Kieslinger, an expert of the Dorotheum, to inventory Grünbaum's art collection while Grünbaum was in the Dachau Concentration Camp in 1938.

47.    The Kieslinger Inventory is part of the Elisabeth and Fritz Grunbaum Jewish Property files maintained in the Austrian State Archives. **Exhibit G** at 3, 14-16, 27, 40-43. (true copy of Fritz Grönbaum's July 16, 1938 Jewish Property Declaration, which declares the art collection and includes the Kieslinger Inventory).

48.    The Dorotheum was a Nazi-controlled auction house in Vienna used by the Nazi regime to sell art plundered from Jews and turn the proceeds over to the Nazi Reich.

49.    The Kieslinger Inventory shows Grönbaum's art collection to be valued at 5,791 RM.  **Exhibit G** at 16, 42.

50.    Grönbaum's art collection contained at least eighty-one works by the artist Egon Schiele.

51.    The stamps "Erledigt" ["done" or "completed"] and "Gesperrt" ["closed" or "blocked"] were official Nazi stamps indicating that the property of the Jewish person in question had been spoliated.

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:40 PM
NYSCEF DOC. NO. 23

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/04/2022

52.     Fritz's Jewish Property Declaration bears "Erledigt" and "Gesperrt" stamps.

**Exhibit G** at 17, 43.

53.     Because the art collection was inventoried and described in the Jewish Property

Declarations, the "Erledigt" and "Gesperrt" stamps demonstrate conclusively that the Nazis stole

Fritz Grünbaum's art collection.

54.     In November and December 1938, surrounding the Kristallnacht pogrom, the

Nazis passed additional laws to steal Jewish property and to forbid Jews from engaging in

property transactions without Nazi approval.

55.     One of the laws provided for "Aryan" trustees to be appointed to liquidate Jewish

property.

56.     All proceeds from sales or transfers of Jewish property went to the Nazi Reich,

with commissions to the Aryan trustees.

57.     Some time prior to January 1939, Vienna attorney Ludwig Rochlitzer was

appointed Aryan trustee of the "property of the Grünbaums."  **Exhibit H** (a true copy of a

January 31, 1939 letter from Rochlitzer to Elisabeth announcing Rochlitzer's appointment as

Aryan trustee for the Grünbaum property, together with certified English translation).

58.     From the time of Rochlitzer's appointment as Aryan trustee, neither Fritz nor

Elisabeth had access to Fritz's art collection.

59.     Grünbaum never voluntarily abandoned his art collection during his lifetime.

**U.S. State Department Warns U.S. Museums, Colleges And Art Dealers Against Acquiring
Potentially Stolen Artworks From Europe In Highly Publicized Campaign, Thus Putting
The World On Notice**

60.     Following World War II, Nazi looting of artworks from Jewish victims received

tremendous media attention in the United States.

8

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 23    RECEIVED NYSCEF: 02/09/2022

61.    Following World War II, the U.S. State Department put out bulletins to museums, universities, art dealers and others urging U.S. citizens to be vigilant against acquiring Nazi-looted artwork and asking for assistance in returning stolen art.

62.    Media and government efforts put the art and museum community on heightened notice that acquiring artworks that were in Europe after 1933 and created prior to 1946 without complete provenances.

63.    Accordingly, any U.S. person acquiring artworks that were in Europe after 1933 and created prior to 1946 without complete provenances cannot be prejudiced by the inaction of a Holocaust victim family in seeking to recover artworks stolen by Nazis because that person should have exercised vigilance prior to and after acquiring the artwork.

64.    The MoMA was on inquiry notice prior to acquiring the Artwork that it might be stolen and failed to exercise appropriate diligence in acquiring the Artwork or to make reasonable efforts to ascertain the true owners of the Artwork prior to taking possession.

65.    New York law protects the right of the owner whose property has been stolen to recover that property, even if it is in the possession of a good-faith purchaser for value. *Solomon R. Guggenheim Found. v. Lubell,* 77 NY2d 311, 317-18 [1991]

66.    New York places the burden of investigating the provenance of a work of art on the potential purchaser in furtherance of discouraging the trade in stolen art. *Solomon R. Guggenheim Found. v. Lubell,* 77 N.Y.2d 311, 320-21 (1991).

**Grünbaum's Art Collection Surfaces In Switzerland In 1956**

67.    The Artwork is featured in a 1956 Gutekunst & Klipstein Sales catalogue of Egon Schiele's artworks as number 8. **Exhibit I (**a true copy of the 1956 Gutekunst & Klipstein Schiele sale catalogue, with certified English translation) at 17.

9

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM
INDEX NO. 654839/2022
NYSCEF DOC. NO. 23
RECEIVED NYSCEF: 02/09/2022

68.     All artworks in the 1956 Gutekunst & Klipstein sales catalogue were stolen from Grünbaum, including the famous *Dead City III*, which was seized by the District Attorney Robert Morgenthau from the Museum of Modern Art in New York City in 1998. *Reif v. Nagy*, 175 A.D.3d 107 at 110, 114, 121.

69.     According to a Gutekunst & Klipstein invoice September 18, 1956 Otto Kallir purchased *Dead City III*, from Gutekunst & Klipstein together with 19 other artworks by Egon Schiele.  A true copy is attached hereto as **Exhibit J**.

70.     Examination of pre-war documentation prior to acquisition of the Artwork would have revealed evidence that it had been stolen from Grünbaum.

**Bakalar Sues The Grünbaum Heirs To Extinguish Rights In Grünbaum's Art Collection Using Fabricated Evidence**

71.     In 2005, Fischer and Vavra were sued by David Bakalar, a Massachusetts resident who sought to extinguish their rights in an Egon Schiele drawing stolen from Grünbaum titled *Seated Woman with Bent Left Leg* in an action captioned *Bakalar v. Vavra.*

72.     Bakalar had sought to auction *Seated Woman With Bent Left Leg* at Sotheby's in New York and London.

73.     In doing so, Bakalar promoted the false story that Grünbaum's sister-in-law Mathilde Lukacs obtained Grünbaum's art collection and sold it to Swiss art dealer Eberhard Kornfeld in 1956.

74.     The "Mathilde Lukacs" story, first floated in 1998 by Eberhard Kornfeld after *Dead City III's* seizure, has long been derided by Holocaust scholars as implausible because Lukacs was herself imprisoned in Belgium during World War II after escaping Vienna.

75.     Bakalar succeeded in excluding as untimely an expert report of historian Dr. Jonathan Petropoulos debunking the Mathilde Lukacs provenance and excluding an expert report

10

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:40 PM

NYSCEF DOC. NO. 23

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/04/2022

on Czech law of Dr. Milan Kostohryz showing that the Vavra line of heirs was persecuted and trapped behind the Iron Curtain in Communist Czechoslovakia.

76.     Because of these exclusions of key evidence and because Eberhard Kornfeld denied the Grünbaum Heirs' handwriting expert access to handwriting samples of Mathilde Lukacs that would have demonstrated forgeries, the *Bakalar v. Vavra* case was not fully or fairly litigated.

77.     In 2006, the Southern District of New York denied Fischer's and Vavra's request to amend the pleadings to permit them to pursue additional artworks owned by Fritz Grünbaum. *Bakalar v. Vavra,* 237 F.R.D. 59 (S.D.N.Y. 2006).

78.     From 2005 to 2012, Fischer and Vavra unsuccessfully sought in *Bakalar v. Vavra* to assert a possessory interest in *Seated Woman with Bent Left Leg*.

79.     Following a bench trial, the district court concluded that Bakalar could not establish by a preponderance of the evidence that Grünbaum voluntarily relinquished possession of the drawing or that he did so intending to pass title. *Bakalar v. Vavra,* 819 F.Supp.2d 293 at 300.

80.     The district court further found that Mathilde Lukacs did not acquire valid title to the drawing.  819 F.Supp.2d 293 at 302-303.

81.     Despite Bakalar's inability to prove legal title, the Hon. William Pauley determined that inactions of predecessors-in-interest of Leon Fischer and Milos Vavra extinguished possessory rights of the Grünbaum Heirs, as against Bakalar, a Massachusetts purchaser who purchased an artwork in New York from Otto Kallir of Galerie St. Etienne, who had in turn purchased *Seated Woman with Bent Left Leg* from the 1956 Gutekunst & Klipstein sale together with 18 other Schiele artworks, including *Dead City III.*   819 F.Supp.2d 293, 305

11

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM

NYSCEF DOC. NO. 23

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

(S.D.N.Y. 2011).   The district court invoked the doctrine of laches to reach this result.  The court applied laches in a manner inconsistent with the approach of New York common law courts to applying the equitable doctrine of laches and in a manner inconsistent with public policy protecting true owners of stolen artworks.

82.    On October 11, 2012, the Second Circuit Court of Appeals, in a summary (non-precedential) order, affirmed Judge Pauley's decision by finding it not clearly erroneous. *Bakalar v. Vavra*, 500 Fed.Appx. 6 (2d Cir. 2012).

83.    In doing so, the Second Circuit mistakenly relied on a fabricated version of the Grünbaum Heirs' case offered by the plaintiff that was nowhere contained in the record and --- when raised for the first time on appeal by plaintiff ---- had been vigorously contradicted by Vavra and Fischer.   *Bakalar v Vavra*, 500 Fed Appx. 6, 7-8 (2d Cir. 2012) ("Vavra and Fischer's hypothesis—that the Nazis stole the Drawing from Grunbaum only to subsequently return or sell it to his Jewish sister-in-law—does not come close to showing that the district court's finding was clearly erroneous.").

84.    To underscore, neither Vavra nor Fischer ever argued that Nazis returned or sold artworks to Mathilde Lukacs (and the record contained no evidence to support this manufactured narrative).

85.    To the contrary, from the first pleadings, Vavra and Fischer argued that the story that Mathilde Lukacs sold Grünbaum's art collection to Gutekunst & Klipstein was entirely a fabrication.

86.    Also from the first pleadings, Vavra and Fischer argued that even if, assuming arguendo, the Mathilde Lukacs story were true, Lukacs would not have had good title, which, in turn, meant that she could not have given good title to Bakalar.

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM

NYSCEF DOC. NO. 23

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

87.     In *Matter of Flamenbaum*, 22 N.Y.3d 962, 966 (2013), decided after *Bakalar*, clarified that, in the context of missing testimony relevant to a laches defense, the proponent of the defense must show that the missing evidence would have been relevant to establishing legal title. ("although the decedent's testimony may have shed light on how he came into possession of the (artwork), we can perceive of no scenario whereby the decedent could have shown that he held (good) title").

**In The Wake Of *Bakalar*, And Prior to *Reif v. Nagy*, Three Art Dealers Conspire To Strip German Lost Art Database (www.lostart.de) of Grünbaum Claims**

88.     During the course of the *Bakalar* litigation, Grünbaum's heirs were criticized for not having registered search requests related to Grünbaum's art collection on the Lost Art Database located at www.lostart.de.

89.     Accordingly, Vavra and Fischer registered the "search requests" based on the Kieslinger inventory and other pre-World War II material to artworks that appeared circumstantially to fit the description of artworks lost by Grünbaum.

90.     Below is the Lost Art Database's description of what "search requests" are:

Lost Art Database

The Lost Art Database documents cultural property expropriated as a result of Nazi persecution, especially from Jewish owners, between 1933 and 1945 ("Nazi-looted art"), or for which such a loss cannot be ruled out. With the help of the publication of so-called Search Requests and Found-Object Reports, former owners or their heirs are to be brought together with current owners and thus support all stakeholders in finding a just and fair solution.

The Lost Art Database also contains reports on cultural property that was removed as a result of the Second World War ("trophy art"). Their publication is intended to support solutions in accordance with international law. The Lost Art Database is accessible worldwide free of charge. www.lostart.de/en/start

13

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM

NYSCEF DOC. NO. 23

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/09/2022

91.     On September 23, 2015, German attorney Jutta von Falkenhausen wrote to the Lost Art Database on behalf of Galerie Kornfeld Verlag AG (Bern) represented by Christine Stauffer, Galerie St. Etienne (New York) represented by Jane Kallir, and Richard Nagy Ltd. (London) represented by Richard Nagy. **Exhibit K** (true copy of von Falkenhausen's letter)**.**

92.     Relying on *Bakalar v. Vavra* and on Austrian decisions that, in turn, relied on *Bakalar v. Vavra* and the fabricated "Mathilde Lukacs" story, von Falkenhausen demanded that the Lost Art Database delist certain of the Grünbaum heirs' claims.

93.     Von Falkenhausen's request included Schiele's *Dead City III* and the *Red Blouse*, both of which are located at the Leopold Museum in Vienna. **Exhibit K** at 12.

94.     Over the Grünbaum Heirs' objections, the Lost Art Database erased the Grünbaum Heirs' claims, in particular, the claims relating to artworks in the 1956 Gutekunst & Klipstein Schiele sale.

95.      Today, if one types in the name "Grünbaum" one will find a number of requests. Under "status" it states "This announcement is contradicted by third parties." **Exhibit L** (Mountain Landscape (Farmhouse in the Tirol) Lost art-ID 478864).  On August 26, 2018, the New York Times reported on the dispute between the Grünbaum Heirs and the Lost Art Database in the article by William Cohan: *Jewish Heirs Take on an Art Foundation That Rights Nazi Wrongs* **Exhibit M**. https://www.nytimes.com/2018/08/26/arts/design/nazi-art-egon-schiele-fritz-grunbaum.html.

*Reif v. Nagy* **Debunks Fabricated Mathilde Lukacs Provenance**

96.     In November 2015, shortly after learning that two other Egon Schiele artworks from the 1956 Gutekunst & Klipstein sale catalogue (*Woman Hiding Her Face* and *Woman In Black Pinafore*) were displayed by London art dealer Richard Nagy at the Park Avenue Armory,

14

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM
NYSCEF DOC. NO. 23

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

Reif, Fraenkel and Vavra commenced *Reif v. Nagy* in the New York State Supreme Court, New York County.

97.      The Supreme Court, Ramos, J., after carefully considering expert testimony from Dr. Petropoulos and Dr. Kostohryz that had been excluded in the *Bakalar* case, granted summary judgment on the plaintiffs' replevin and conversion claims.  *Reif v. Nagy*, 61 Misc.3d at 330, 80 N.Y.S.3d at 367.

98.      Justice Ramos found that the Nazis confiscated Fritz Grünbaum's artworks by forcing him to sign the power of attorney to his wife, who was herself later murdered by the Nazis, and that the act of signing the power of attorney was involuntary: "[a] signature at gunpoint cannot lead to a valid conveyance." *Id.,* 61 Misc.3d at 326, 80 N.Y.S.3d at 634.

99.      In affirming, the Appellate Division, First Department, determined that the power of attorney the Nazis forced Fritz to execute in favor of Elisabeth while Fritz was imprisoned in Dachau was not voluntarily executed, "reject[ing] the notion that a person who signed a power of attorney in a death camp can be said to have executed the document voluntarily." *Reif v. Nagy,* 175 A.D.3d 107, 129, 106 N.Y.S.3d 5, 21 (First Dept. 2019).

100.      The First Department concluded Elisabeth was never able to convey good title. 175 A.D.3d at 129, 106 N.Y.S.3d at 21.

101.      The First Department determined that Grünbaum's art collection "never legally left Austria."  175 A.D.3d at 111.

102.      The First Department also determined that the art collection was in Austria on June 30, 1939, after Grünbaum's sister-in-law Mathilde Lukacs had fled Vienna for Belgium. 175 A.D.3d at 112.

15

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:40 PM

NYSCEF DOC. NO. 23

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/04/2022

103.    Unlike the *Bakalar* court, *Reif v. Nagy* carefully analyzed the historical circumstances and rejected decisively the arguments that Grönbaum's sister-in-law Mathilde Lukacs had laundered Grönbaum's artworks through Switzerland.

104.    The Appellate Division carefully analyzed overwhelming evidence suggesting that Mathilde Lukacs never had custody of the art collection, and certainly lacked custody during the War when she was imprisoned.

105.    The Appellate Division further noted:

> We note that there are no records, including invoices, checks, or receipts documenting that the Artworks were purchased by Kornfeld from Mathilde. Moreover, even if Mathilde had possession of Grunbaum's art collection, possession is not equivalent to legal title.

*Id.* at 127.

106.    The First Department also analyzed record evidence not available to the *Bakalar* court, such as post-*Bakalar* revelations involving Eberhard Kornfeld's dealings with Cornelius Gurlitt and Kornfeld's trafficking other Nazi-looted artworks.

107.    Thus, *Reif v. Nagy's* factual findings are based on a developed factual record and supercede the factual record in *Bakalar*, further making *Bakalar* an untrustworthy precedent.

108.    In affirming, the First Department determined that relative to the art dealer (Nagy), Reif, Frankel and Vavra had "superior ownership and possessory interests" in the Schiele artworks. *Id.,* 175 A.D.3d at 132, 106 N.Y.S.3d at 24.

109.    Unlike *Bakalar, Reif v. Nagy* rejected the proposition that the decedent Mathilde Lukacs's missing testimony could have prejudiced Nagy because "Mathilde could not have shown she had good title to the artworks and her testimony would not have been probative." 175 A.D.3d 107 (First Dept. 2019).

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:40 PM
NYSCEF DOC. NO. 23

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/04/2022

110.    In rejecting Nagy's "prejudice" argument, *Reif v. Nagy* relied on the New York Court of Appeals 2013 decision clarifying that a the proponent of the laches defense must show that a decedent's missing testimony would have supported a claim of title.  *Matter of Flamenbaum*, 22 N.Y.3d 962, 966 (2013).

111.    *Reif v. Nagy's* trustworthy application of *Matter of Flamenbaum* constitutes an intervening change or clarification of law that further renders the *Bakalar* precedent unreliable.

112.    Because Nagy refused to return the artworks, the Appellate Division affirmed an award of prejudgment interest in the amount of $700,964.44.  *Reif v. Nagy,* 199 A.D.3d 616, 158 N.Y.S.3d 89 (1st Dept. 2021).

113.    Nagy persisted in challenging the Heirs' possessory interest in artworks stolen from Grünbaum until the Court of Appeals' May 24, 2022 denial of Nagy's motion for leave to appeal.  *Reif v. Nagy,* 38 N.Y.3d 908, 168 N.Y.S.3d 720 (2022).

114.    The Court of Appeals' May 2022 decision established a possessory interest in Grünbaum's heirs under New York law to artworks stolen from Fritz Grünbaum, by the Nazis, such as Schiele's *Girl Putting on Shoe (1910)* in the MoMA's possession.

**Schieles Stolen From Grünbaum Featured in 1956 Gutekunst & Klipstein Sales Catalogue**

115.    The Artwork is featured in a 1956 Gutekunst & Klipstein Sales catalogue of Egon Schiele's artworks.

116.    All artworks in the 1956 Gutekunst & Klipstein sales catalogue were stolen from Grünbaum, including the famous *Dead City III*, which was seized by District Attorney Robert Morgenthau from the Museum of Modern Art in New York City in 1998. *Reif v. Nagy,* 175 A.D.3d 107 at 110, 114, 121 (1st Dept. 2019). The Gutekunst & Klipstein sales catalogue made no mention of Mathilde Lukacs in the provenance of the artworks.

17

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:01 PM

NYSCEF DOC. NO. 23

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

117.    In the 1997 Museum of Modern Art Catalogue:   *"Egon Schiele: the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Dead City III* (1911) appears as follows (with no mention of Mathilde Lukacs):



Arthur Roessler, Vienna; Alfred Spitzer, Vienna; Fritz Grünbaum, Vienna; Gutekunst & Klipstein, Bern, Galerie St. Etienne, New York; Rudolf Leopold, Vienna.   **Exhibit N** at 144.



118.    In the 1997 Museum of Modern Art Catalogue:   *"Egon Schiele : the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Red Blouse ("Rote Bluse")* (1913) appears as follows (with no mention of

18

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM
NYSCEF DOC. NO. 23

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

Mathilde Lukacs): Fritz Grunbaum, Vienna; Heirs of Fritz Grunbaum, The Netherlands; Galerie Kornfeld, Bern (auction), 1981; Rudolf Leopold, Vienna. **Exhibit N** at 220.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION – REPLEVIN (CPLR ART. 71)

119.    Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

120.    As set forth above, the Artwork was stolen from Fritz Grünbaum while he was in the Dachau Concentration Camp.

121.    Under New York law, where a chattel is stolen, no one acquiring that chattel from a thief can take good title.

122.    Plaintiffs have a right of ownership to the Artwork.

123.    Plaintiffs have diligently searched for the Artwork.

124.    A replevin cause of action is timely.

125.    Under New York law, and Chapter 71 of the CPLR, Plaintiffs are entitled to recover possession of the stolen chattel (artwork) through replevin.

126.    Accordingly, Plaintiffs respectfully request an order directing the return of the Artwork and forbidding the Artwork's transfer during the pendency of this action.

### AS AND FOR A SECOND CAUSE OF ACTION – DECLARATORY JUDGMENT
#### (Against Both Defendants)

127.    Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

128.    CPLR 3001 authorizes the Court to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

129.    A justiciable controversy exists concerning the ownership of the Artwork that only the Supreme Court may determine.

19

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM
NYSCEF DOC. NO. 23

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

130.   Therefore, Plaintiffs request a declaratory judgment that the Artwork is the property of Plaintiffs.

## AS AND FOR A THIRD CAUSE OF ACTION – ENFORCEMENT OF MUSEUM LABELING LAW (Against The MoMA)

131.   Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

132.   New York Education Law, Section 233-aa, Subdivision 15, provides that every museum that has on display any identifiable works of art known to have been created before 1945 that changed hands due to theft, seizure, confiscation, forced sale or other involuntary means in Europe during the Nazi era of 1933-1945 shall, to the extent practicable, prominently place a placard or other signage acknowledging such information along with such display.

133.   Fritz Grünbaum's art collection, including the Artwork, changed hands by involuntary means during the Nazi era because in 1938 the Nazi regime forced him to sign the power of attorney permitting his wife Elisabeth to liquidate his assets and hand the assets over to the Nazi regime, and then between 1938 and 1939, Elisabeth was forced to liquidate Fritz's assets pursuant to Nazi decrees while Fritz was imprisoned in the Dachau Concentration Camp.

134.   The MoMA displays the Artwork without accompanying signage acknowledging that the Artwork changed hands through involuntary means during the Nazi era.

135.   As shown below, The MoMA displays the Artwork on its website without any accompanying information disclosing that the Artwork changed hands through involuntary means during the Nazi era.  [https://www.moma.org/s/ge/collection_ge/artist/artist_id-5215_role-1_sov.html].

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 23                                      RECEIVED NYSCEF: 02/09/2022



136.    Plaintiffs, Grünbaum's heirs, are damaged because the MoMA displays the Artwork without the signage called for by Education Law Section 233-aa, Subdivision 15.

137.    The MoMA's failure to place the signage mandated by Education Law Section 233-aa, Section 15, is significant because it encourages other institutions and museums to disregard the law, and supports efforts to wipe out evidence of Nazi-persecution and claims asserted by heirs of Holocaust victims.

138.    Therefore, Plaintiffs request that the MoMA be directed to label the Artwork in compliance with New York law and request injunctive relief.

**WHEREFORE,** Plaintiffs demand: (1) on their first cause of action, judgment providing for the return of the Artwork; (2) on their second cause of action, a declaratory judgment that Plaintiffs own the Artwork; (3) an award of costs and interest; (4) an injunction barring the

21

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:40 PM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 23    RECEIVED NYSCEF: 02/09/2022

MoMA from selling, loaning, transferring or otherwise alienating the Artwork, or removing the

Artwork from the jurisdiction of the State of New York, during the pendency of this action; and

(5) such other and further relief the Court deems just, proper and equitable.

Dated: New York, New York
        December 14, 2022

                                    Respectfully submitted,

                                    **DUNNINGTON BARTHOLOW & MILLER
                                    LLP**
                                    *Attorneys for Plaintiffs*

                                    By:   /s/ Raymond J. Dowd_____
                                        Raymond J. Dowd
                                        Claudia G. Jaffe
                                        230 Park Avenue 21st Floor
                                        New York, New York 10169
                                        Telephone: 212-682-8811
                                        Facsimile: 212-661-7769
                                        rdowd@dunnington.com
                                        cjaffe@dunnington.com

22

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:40 PM

NYSCEF DOC. NO. 23

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/04/2022

## VERIFICATION

TIMOTHY M. REIF, affirms, subject to penalties of perjury under the laws of the State

of New York as follows:

1.  I am a plaintiff in this action and an attorney admitted to practice in the State of New

    York.

2.  I have read the foregoing Complaint with exhibits, know the contents thereof and the

    same are true and correct to my own knowledge, except where alleged upon

    information and belief, and with respect to those allegations, I believe them to be true.

3.  The grounds of my belief as to all matters not stated to upon my knowledge are

    documents, papers and data contained in the files pertaining to this matter.

December 14, 2022

_____

TIMOTHY M. REIF

FILED: NEW YORK COUNTY CLERK 03/09/2023 06:41 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 24    RECEIVED NYSCEF: 03/09/2023

# EXHIBIT E

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 24                                                RECEIVED NYSCEF: 02/09/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA,

               *Plaintiffs,*

-against -

THE MUSEUM OF MODERN ART,

               Defendant,

An Artwork *Prostitute* (1912) by the Artist Egon Schiele,

               *Defendant-in-rem.*

Index No.:

**SUMMONS**

**Jury Trial Demanded**

---

To The Defendants Named Above:

     **YOU ARE HEREBY SUMMONED** to answer the attached Verified Complaint in this action, and to serve a copy of your verified answer, or if the Verified Complaint is not served with this Summons, to serve a notice of appearance on the Plaintiffs' counsel, Dunnington Bartholow & Miller LLP, at the address set forth below within twenty (20) days after the service of this Summons (not counting the day of service itself), or within thirty (30) days after service is complete if this Summons is not delivered personally to you within the State of New York.

     **PLEASE TAKE FURTHER NOTICE** that should you fail to answer or appear, a judgment will be entered against you by default for the relief in the Verified Complaint together with the costs and disbursements of this action.

Dated: New York, New York

1

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:49 PM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 24    RECEIVED NYSCEF: 02/04/2022

December 14, 2022

**DUNNINGTON BARTHOLOW & MILLER LLP**
*Attorneys for Plaintiffs*

By:    s/Raymond J. Dowd
       Raymond J. Dowd
       Claudia G. Jaffe
       230 Park Avenue, 21st Floor
       New York, New York 10169
       Phone: (212) 682-8811
       Facsimile: (212) 661-7769
       RDowd@dunnington.com
       CJaffe@dunnington.com

2

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:02 PM     INDEX NO. 654839/2022
NYSCEF DOC. NO. 24     RECEIVED NYSCEF: 02/09/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA, <br><br> *Plaintiffs,* <br><br> -against - <br><br> THE MUSEUM OF MODERN ART, <br><br> Defendant, <br><br> An Artwork *Prostitute* (1912) by the Artist Egon Schiele, <br><br> *Defendant-in-rem.* | Index No.: <br><br> **VERIFIED COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiffs, by and through their counsel, DUNNINGTON BARTHOLOW & MILLER LLP, hereby complain of the Defendants as follows:

## PRELIMINARY STATEMENT

1.      This is an action by the heirs of Franz Friedrich ("Fritz") Grünbaum (the Grünbaum Heirs) to recover a painting by Egon Schiele entitled *Prostitute* (1912) (the "Artwork") which, upon information and belief, is currently located in New York County at The Museum of Modern Art, 11 West 53rd Street, New York, New York ("the MoMA").



FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM
NYSCEF DOC. NO. 24

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

2.      The Artwork is catalogued in Kallir, Jane, *Egon Schiele: The Complete Works* (Harry Abrams 1990 & 1998) as a drawing, designated D.1045.

3.      Plaintiffs assert causes of action for replevin, declaratory judgment, and enforcement of Section 233-aa, Subdivision 15, of the New York Education Law (requiring museums to label works of art on display that changed hands due to theft, seizure, confiscation, forced sale or other involuntary means in Europe during the Nazi era).

4.      The Artwork is a unique chattel as defined by CPLR 7109(a) which authorizes injunctive relief.

5.      The Nazi regime stole the Artwork from Grünbaum while he was imprisoned in the Dachau Concentration Camp, where the Nazis tortured him and compelled him to sign an unlawful power of attorney giving his wife authority to convey his property, before murdering him.

6.      This action is related to *Reif v. Nagy* because the Hon. Charles Ramos determined conveyances pursuant to the unlawful Dachau power of attorney to be invalid because "[a] signature at gunpoint cannot lead to a valid conveyance." *Reif v. Nagy,* 61 Misc.3d 319, 326, 80 N.Y.S.3d 629, 634 (Sup. Ct. New York County Comm. Div. 2018), *aff'd,* 175 A.D.3d 107, 106 N.Y.S.3d 5 (1st Dept. 2019), *leave to review declined,* 25 N.Y.3d 986, 125 N.Y.S.3d 76 (May 24, 2022).

7.      The Artwork was among artworks stolen from Grünbaum by the Nazis based on the unlawful Dachau power of attorney.

## THE PARTIES

8.       Plaintiffs are co-heirs of the estate of Grünbaum, a Viennese Jewish cabaret performer (born in Brno, Moravia) who was arrested by the Gestapo on March 22, 1938,

2

FILED: NEW YORK COUNTY CLERK 03/09/2022 06:42 PM
NYSCEF DOC. NO. 24

INDEX NO. 654839/2022
RECEIVED NYSCEF: 03/09/2022

imprisoned in the Dachau Concentration Camp, despoiled of all of his property by the Nazi regime, and murdered in Dachau on January 14, 1941.

9.      Plaintiffs Reif and Fraenkel are co-trustees of the testamentary Leon Fischer Trust for the Life and Work of Fritz Grünbaum (the "Fischer Trust") and hold valid letters of trusteeship representing the late Leon Fischer's 50% ownership interest in Grünbaum's estate.

10.     Plaintiff Reif is a resident of the City, County and State of New York.

11.     Plaintiff Fraenkel is a resident of the State of Florida.

12.     Plaintiff Vavra is a resident of the Czech Republic who owns a 50% interest in Grünbaum's estate.

13.     Defendant the MoMA Art Library & Museum, New York ("the MoMA") is a museum and institution located at 11 West 53rd Street, New York, New York 10019.

14.     Defendant-in-rem the Artwork, upon information and belief, is presently located in New York at the MoMA and is being sued herein *in rem*.

### ALLEGATIONS SUPPORTING PLAINTIFFS' STANDING

15.     On July 16, 1938, Nazis forced Grünbaum to sign a power of attorney in the Dachau Concentration Camp permitting his wife Elisabeth to liquidate his assets and hand the assets over to the Nazi regime.  **Exhibit A** at 3. (true copy of the power of attorney ("Vollmacht") (including a certified English translation)**.**

16.     From 1938 to 1939, Elisabeth was forced to liquidate Fritz's assets pursuant to Nazi decrees.

17.     On Grönbaum's death (in the Dachau Concentration Camp where he was imprisoned), a Vienna notary certified that Fritz had no property, there was nothing left. **Exhibit B** at 3 (true copy of the notary's certification).

3

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM
NYSCEF DOC. NO. 24

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

18.     On October 5, 1942 Elisabeth was deported to the Maly Trostinec death camp in Minsk, where she was murdered.

19.     Elisabeth Grünbaum's June 1939 Jewish Property Declaration shows that all of her property had been taken by the Nazis before she was murdered. **Exhibit C** (true copy of Elisabeth's Jewish Property Declaration (including a certified English translation); *see* **Exhibit C** at 3, 28 (stamp "Erledigt" ["done" or "completed"] and "Gesperrt" ["closed"]).

20.     As explained more fully below, these documents show conclusively that the Grünbaums lost Grünbaum's art collection prior to their deaths.

21.     Austrian government records demonstrate that no Grünbaum family member could have legally recovered the art collection following the deaths of Fritz and Elisabeth Grünbaum.

22.     Austrian government records show that from 1941 until 2002 Grünbaum had no heirs appointed by an Austrian court and no Austrian decrees of distribution were issued.

23.     Under Austrian law, for a family member to transfer a decedent's assets, that family member must first be declared an heir and receive a decree of distribution.

24.     Thus, the lack of any heirship or distribution decrees from 1941 until 2002 in Austrian government files signifies, as a matter of law, that no family member could have taken title to Grünbaum's art collection, or title to any individual artworks belonging to Grünbaum.

25.     Pursuant to a Certificate of Heirship issued by the District Court Innere Stadt Vienna dated September 12, 2002, Leon Fischer ("Fischer") and Milos Vavra ("Vavra") were each declared an heir of Fritz Grünbaum's estate entitled to an undivided fifty percent (50%) share. **Exhibit D** (true copy of the Certificate of Heirship).

4

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM

NYSCEF DOC. NO. 24

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

26.    Prior to District Attorney Robert Morgenthau's seizure of Grünbaum's *Dead City III* at the Museum of Modern Art in New York City in 1999, neither Fischer nor Vavra had any idea that Grünbaum's art collection survived World War II.

27.    Pursuant to a last will and testament dated February 2012, Fischer appointed Reif and Fraenkel as executors of his estate.

28.    Fischer died on August 16, 2013.

29.    Upon learning of the art collection's existence, Fischer and Vavra diligently pursued Grönbaum's art collection.

30.    Letters testamentary were issued to Reif and Fraenkel and Fischer's will was duly probated.

31.    Fischer's will created the Leon Fischer Trust for the Life and Work of Fritz Grünbaum (the "Fischer Trust") to pursue Grönbaum's artworks with proceeds going to charity.

32.    Reif and Fraenkel are now co-trustees of the Fischer Trust and hold valid letters of trusteeship.

**ALLEGATIONS SUPPORTING RECOVERY OF THE STOLEN ARTWORK**

33.    Otto (Nirenstein) Kallir (1894-1978) was a Viennese art dealer who worked at the Wurthle Gallery in Vienna before founding his own art gallery in 1923 called the "Neue Galerie".

34.    In 1925 the Wurthle Gallery displayed 22 artworks from Fritz Grunbaum's art collection. A true copy of the 1925 Wurthle Gallery catalogue is attached hereto as **Exhibit E**.

35.    In 1928, Fritz Grünbaum permitted Otto Kallir to enter his Vienna apartment (in Grünbaum's absence) to select from among Grünbaum's Schieles the works that Kallir wanted to display at an exhibition commemorating the tenth anniversary of Schiele's death. A true copy of

5

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM

NYSCEF DOC. NO. 24

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

the Kallir/Grunbaum 1928 correspondence ("the 1928 Correspondence") is attached hereto as **Exhibit F**.

36.    The 1928 Correspondence was donated by the Kallir family to the Austrian National Gallery (the Belvedere) as a gift of the Neue Galerie's business records following Otto Kallir's death and is currently maintained by the Austrian government as part of the Neue Galerie archive.

37.    The 1928 Correspondence shows that Grünbaum trusted Kallir.

38.    The 1928 Correspondence shows that Kallir was familiar with the contents of Grünbaum's art collection, in particularly Grünbaum's Schieles.

39.    The 1928 Correspondence lists four oils and 21 drawings and watercolors either by name or by description, including "Ich liebe Gegensatze" (1912) or "I Love Antitheses" (1912).

40.    In 1930, Otto Kallir published a catalogue raisonné of Egon Schiele's oil paintings that documented Fritz Grünbaum's ownership of works including "Dead City III".

41.    The foregoing pre-war documentation was used by scholars and historians to trace artworks looted from Fritz Grünbaum's art collection when portion of the collection after World War II when portions of the collection surfaced in Berne, Switzerland.

42.    On April 26, 1938, the Nazi regime decreed all Jewish property in excess of 5,000 Reichsmarks ("RM") to be available to the Nazi Reich for Field Marshal Goering's Four Year Plan to build the Nazi war machine.

43.    The April 26, 1938 decree required all Jews with property in excess of 5,000 RM to declare their assets quarterly until the assets were gone or until the Jews left the Reich.

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM
NYSCEF DOC. NO. 24

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

44.    Jews were forbidden to transfer declared property, including art, without permission from Nazi authorities.

45.    As part of the process of securing Jewish assets to prevent transfers or sales, the Jewish Property Transaction Office (Vermögensverkehrsstelle) of Vienna commissioned inventories and valuation reports.   The Jewish victims were charged a fee for this process.

46.    A Vermögensverkehrsstelle inventory thus signified that Jewish assets were secured by the Nazi government.  Pursuant to that process, the Vermögensverkehrsstelle commissioned Franz Kieslinger, an expert of the Dorotheum, to inventory Grünbaum's art collection while Grünbaum was in the Dachau Concentration Camp in 1938.

47.    The Kieslinger Inventory is part of the Elisabeth and Fritz Grunbaum Jewish Property files maintained in the Austrian State Archives. **Exhibit G** at 3, 14-16, 27, 40-43. (true copy of Fritz Grönbaum's July 16, 1938 Jewish Property Declaration, which declares the art collection and includes the Kieslinger Inventory).

48.    The Dorotheum was a Nazi-controlled auction house in Vienna used by the Nazi regime to sell art plundered from Jews and turn the proceeds over to the Nazi Reich.

49.    The Kieslinger Inventory shows Grönbaum's art collection to be valued at 5,791 RM.  **Exhibit G** at 16, 42.

50.    Grönbaum's art collection contained at least eighty-one works by the artist Egon Schiele.

51.    The stamps "Erledigt" ["done" or "completed"] and "Gesperrt" ["closed" or "blocked"] were official Nazi stamps indicating that the property of the Jewish person in question had been spoliated.

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:09 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 24                                         RECEIVED NYSCEF: 02/09/2022

52.     Fritz's Jewish Property Declaration bears "Erledigt" and "Gesperrt" stamps.
**Exhibit G** at 17, 43.

53.     Because the art collection was inventoried and described in the Jewish Property
Declarations, the "Erledigt" and "Gesperrt" stamps demonstrate conclusively that the Nazis stole
Fritz Grünbaum's art collection.

54.     In November and December 1938, surrounding the Kristallnacht pogrom, the
Nazis passed additional laws to steal Jewish property and to forbid Jews from engaging in
property transactions without Nazi approval.

55.     One of the laws provided for "Aryan" trustees to be appointed to liquidate Jewish
property.

56.     All proceeds from sales or transfers of Jewish property went to the Nazi Reich,
with commissions to the Aryan trustees.

57.     Some time prior to January 1939, Vienna attorney Ludwig Rochlitzer was
appointed Aryan trustee of the "property of the Grünbaums." **Exhibit H** (a true copy of a
January 31, 1939 letter from Rochlitzer to Elisabeth announcing Rochlitzer's appointment as
Aryan trustee for the Grünbaum property, together with certified English translation).

58.     From the time of Rochlitzer's appointment as Aryan trustee, neither Fritz nor
Elisabeth had access to Fritz's art collection.

59.     Grünbaum never voluntarily abandoned his art collection during his lifetime.

**U.S. State Department Warns U.S. Museums, Colleges And Art Dealers Against Acquiring
Potentially Stolen Artworks From Europe In Highly Publicized Campaign, Thus Putting
The World On Notice**

60.     Following World War II, Nazi looting of artworks from Jewish victims received
tremendous media attention in the United States.

8

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM
NYSCEF DOC. NO. 24

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

61.    Following World War II, the U.S. State Department put out bulletins to museums, universities, art dealers and others urging U.S. citizens to be vigilant against acquiring Nazi-looted artwork and asking for assistance in returning stolen art.

62.    Media and government efforts put the art and museum community on heightened notice that acquiring artworks that were in Europe after 1933 and created prior to 1946 without complete provenances.

63.    Accordingly, any U.S. person acquiring artworks that were in Europe after 1933 and created prior to 1946 without complete provenances cannot be prejudiced by the inaction of a Holocaust victim family in seeking to recover artworks stolen by Nazis because that person should have exercised vigilance prior to and after acquiring the artwork.

64.    The MoMA was on inquiry notice prior to acquiring the Artwork that it might be stolen and failed to exercise appropriate diligence in acquiring the Artwork or to make reasonable efforts to ascertain the true owners of the Artwork prior to taking possession.

65.    New York law protects the right of the owner whose property has been stolen to recover that property, even if it is in the possession of a good-faith purchaser for value. *Solomon R. Guggenheim Found. v. Lubell,* 77 NY2d 311, 317-18 [1991]

66.    New York places the burden of investigating the provenance of a work of art on the potential purchaser in furtherance of discouraging the trade in stolen art. *Solomon R. Guggenheim Found. v. Lubell,* 77 N.Y.2d 311, 320-21 (1991).

**Grünbaum's Art Collection Surfaces In Switzerland In 1956**

67.    The Artwork is featured in a 1956 Gutekunst & Klipstein Sales catalogue of Egon Schiele's artworks as number 4. **Exhibit I (**a true copy of the 1956 Gutekunst & Klipstein Schiele sale catalogue, with certified English translation) at 22.

9

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:42 PM
NYSCEF DOC. NO. 24

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

68.     All artworks in the 1956 Gutekunst & Klipstein sales catalogue were stolen from Grünbaum, including the famous *Dead City III*, which was seized by the District Attorney Robert Morgenthau from the Museum of Modern Art in New York City in 1998. *Reif v. Nagy,* 175 A.D.3d 107 at 110, 114, 121.

69.     According to a Gutekunst & Klipstein invoice September 18, 1956 Otto Kallir purchased *Dead City III*, from Gutekunst & Klipstein together with 19 other artworks by Egon Schiele.  A true copy is attached hereto as **Exhibit J**.

70.     Examination of pre-war documentation prior to acquisition of the Artwork would have revealed evidence that it had been stolen from Grünbaum.

**Bakalar Sues The Grünbaum Heirs To Extinguish Rights In Grünbaum's Art Collection Using Fabricated Evidence**

71.     In 2005, Fischer and Vavra were sued by David Bakalar, a Massachusetts resident who sought to extinguish their rights in an Egon Schiele drawing stolen from Grünbaum titled *Seated Woman with Bent Left Leg* in an action captioned *Bakalar v. Vavra.*

72.     Bakalar had sought to auction *Seated Woman With Bent Left Leg* at Sotheby's in New York and London.

73.     In doing so, Bakalar promoted the false story that Grünbaum's sister-in-law Mathilde Lukacs obtained Grünbaum's art collection and sold it to Swiss art dealer Eberhard Kornfeld in 1956.

74.     The "Mathilde Lukacs" story, first floated in 1998 by Eberhard Kornfeld after *Dead City III*'s seizure, has long been derided by Holocaust scholars as implausible because Lukacs was herself imprisoned in Belgium during World War II after escaping Vienna.

75.     Bakalar succeeded in excluding as untimely an expert report of historian Dr. Jonathan Petropoulos debunking the Mathilde Lukacs provenance and excluding an expert report

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM
NYSCEF DOC. NO. 24

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

on Czech law of Dr. Milan Kostohryz showing that the Vavra line of heirs was persecuted and trapped behind the Iron Curtain in Communist Czechoslovakia.

76.     Because of these exclusions of key evidence and because Eberhard Kornfeld denied the Grünbaum Heirs' handwriting expert access to handwriting samples of Mathilde Lukacs that would have demonstrated forgeries, the *Bakalar v. Vavra* case was not fully or fairly litigated.

77.     In 2006, the Southern District of New York denied Fischer's and Vavra's request to amend the pleadings to permit them to pursue additional artworks owned by Fritz Grünbaum. *Bakalar v. Vavra,* 237 F.R.D. 59 (S.D.N.Y. 2006).

78.     From 2005 to 2012, Fischer and Vavra unsuccessfully sought in *Bakalar v. Vavra* to assert a possessory interest in *Seated Woman with Bent Left Leg*.

79.     Following a bench trial, the district court concluded that Bakalar could not establish by a preponderance of the evidence that Grünbaum voluntarily relinquished possession of the drawing or that he did so intending to pass title. *Bakalar v. Vavra,* 819 F.Supp.2d 293 at 300.

80.     The district court further found that Mathilde Lukacs did not acquire valid title to the drawing.  819 F.Supp.2d 293 at 302-303.

81.     Despite Bakalar's inability to prove legal title, the Hon. William Pauley determined that inactions of predecessors-in-interest of Leon Fischer and Milos Vavra extinguished possessory rights of the Grünbaum Heirs, as against Bakalar, a Massachusetts purchaser who purchased an artwork in New York from Otto Kallir of Galerie St. Etienne, who had in turn purchased *Seated Woman with Bent Left Leg* from the 1956 Gutekunst & Klipstein sale together with 18 other Schiele artworks, including *Dead City III.*   819 F.Supp.2d 293, 305

11

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM

NYSCEF DOC. NO. 24

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/09/2022

(S.D.N.Y. 2011).   The district court invoked the doctrine of laches to reach this result.  The court applied laches in a manner inconsistent with the approach of New York common law courts to applying the equitable doctrine of laches and in a manner inconsistent with public policy protecting true owners of stolen artworks.

82.     On October 11, 2012, the Second Circuit Court of Appeals, in a summary (non-precedential) order, affirmed Judge Pauley's decision by finding it not clearly erroneous. *Bakalar v. Vavra*, 500 Fed.Appx. 6 (2d Cir. 2012).

83.     In doing so, the Second Circuit mistakenly relied on a fabricated version of the Grünbaum Heirs' case offered by the plaintiff that was nowhere contained in the record and --- when raised for the first time on appeal by plaintiff ---- had been vigorously contradicted by Vavra and Fischer.   *Bakalar v Vavra*, 500 Fed Appx. 6, 7-8 (2d Cir. 2012) ("Vavra and Fischer's hypothesis—that the Nazis stole the Drawing from Grunbaum only to subsequently return or sell it to his Jewish sister-in-law—does not come close to showing that the district court's finding was clearly erroneous.").

84.     To underscore, neither Vavra nor Fischer ever argued that Nazis returned or sold artworks to Mathilde Lukacs (and the record contained no evidence to support this manufactured narrative).

85.     To the contrary, from the first pleadings, Vavra and Fischer argued that the story that Mathilde Lukacs sold Grünbaum's art collection to Gutekunst & Klipstein was entirely a fabrication.

86.     Also from the first pleadings, Vavra and Fischer argued that even if, assuming arguendo, the Mathilde Lukacs story were true, Lukacs would not have had good title, which, in turn, meant that she could not have given good title to Bakalar.

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:09 PM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 24    RECEIVED NYSCEF: 02/09/2022

87.    In *Matter of Flamenbaum*, 22 N.Y.3d 962, 966 (2013), decided after *Bakalar*, clarified that, in the context of missing testimony relevant to a laches defense, the proponent of the defense must show that the missing evidence would have been relevant to establishing legal title. ("although the decedent's testimony may have shed light on how he came into possession of the (artwork), we can perceive of no scenario whereby the decedent could have shown that he held (good) title").

**In The Wake Of *Bakalar*, And Prior to *Reif v. Nagy*, Three Art Dealers Conspire To Strip German Lost Art Database (www.lostart.de) of Grünbaum Claims**

88.    During the course of the *Bakalar* litigation, Grünbaum's heirs were criticized for not having registered search requests related to Grünbaum's art collection on the Lost Art Database located at www.lostart.de.

89.    Accordingly, Vavra and Fischer registered the "search requests" based on the Kieslinger inventory and other pre-World War II material to artworks that appeared circumstantially to fit the description of artworks lost by Grünbaum.

90.    Below is the Lost Art Database's description of what "search requests" are:

Lost Art Database

The Lost Art Database documents cultural property expropriated as a result of Nazi persecution, especially from Jewish owners, between 1933 and 1945 ("Nazi-looted art"), or for which such a loss cannot be ruled out. With the help of the publication of so-called Search Requests and Found-Object Reports, former owners or their heirs are to be brought together with current owners and thus support all stakeholders in finding a just and fair solution.

The Lost Art Database also contains reports on cultural property that was removed as a result of the Second World War ("trophy art"). Their publication is intended to support solutions in accordance with international law. The Lost Art Database is accessible worldwide free of charge. www.lostart.de/en/start

13

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM
NYSCEF DOC. NO. 24

INDEX NO. 654839/2022
RECEIVED NYSCEF: 03/09/2022

91.     On September 23, 2015, German attorney Jutta von Falkenhausen wrote to the
Lost Art Database on behalf of Galerie Kornfeld Verlag AG (Bern) represented by Christine
Stauffer, Galerie St. Etienne (New York) represented by Jane Kallir, and Richard Nagy Ltd.
(London) represented by Richard Nagy. **Exhibit K** (true copy of von Falkenhausen's letter)**.**

92.     Relying on *Bakalar v. Vavra* and on Austrian decisions that, in turn, relied on
*Bakalar v. Vavra* and the fabricated "Mathilde Lukacs" story, von Falkenhausen demanded that
the Lost Art Database delist certain of the Grünbaum heirs' claims.

93.     Von Falkenhausen's request included Schiele's *Dead City III* and the *Red Blouse*,
both of which are located at the Leopold Museum in Vienna.  **Exhibit K** at 12.

94.     Over the Grünbaum Heirs' objections, the Lost Art Database erased the
Grünbaum Heirs' claims, in particular, the claims relating to artworks in the 1956 Gutekunst &
Klipstein Schiele sale.

95.      Today, if one types in the name "Grünbaum" one will find a number of requests.
Under "status" it states "This announcement is contradicted by third parties." **Exhibit L**
(Mountain Landscape (Farmhouse in the Tirol) Lost art-ID 478864).  On August 26, 2018, the
New York Times reported on the dispute between the Grünbaum Heirs and the Lost Art
Database in the article by William Cohan: *Jewish Heirs Take on an Art Foundation That Rights
Nazi Wrongs* **Exhibit M**. https://www.nytimes.com/2018/08/26/arts/design/nazi-art-egon-
schiele-fritz-grunbaum.html.

***Reif v. Nagy* Debunks Fabricated Mathilde Lukacs Provenance**

96.     In November 2015, shortly after learning that two other Egon Schiele artworks
from the 1956 Gutekunst & Klipstein sale catalogue (*Woman Hiding Her Face* and *Woman In
Black Pinafore*) were displayed by London art dealer Richard Nagy at the Park Avenue Armory,

14

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM
NYSCEF DOC. NO. 24

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

Reif, Fraenkel and Vavra commenced *Reif v. Nagy* in the New York State Supreme Court, New York County.

97.     The Supreme Court, Ramos, J., after carefully considering expert testimony from Dr. Petropoulos and Dr. Kostohryz that had been excluded in the *Bakalar* case, granted summary judgment on the plaintiffs' replevin and conversion claims. *Reif v. Nagy,* 61 Misc.3d at 330, 80 N.Y.S.3d at 367.

98.     Justice Ramos found that the Nazis confiscated Fritz Grünbaum's artworks by forcing him to sign the power of attorney to his wife, who was herself later murdered by the Nazis, and that the act of signing the power of attorney was involuntary: "[a] signature at gunpoint cannot lead to a valid conveyance." *Id.,* 61 Misc.3d at 326, 80 N.Y.S.3d at 634.

99.     In affirming, the Appellate Division, First Department, determined that the power of attorney the Nazis forced Fritz to execute in favor of Elisabeth while Fritz was imprisoned in Dachau was not voluntarily executed, "reject[ing] the notion that a person who signed a power of attorney in a death camp can be said to have executed the document voluntarily." *Reif v. Nagy,* 175 A.D.3d 107, 129, 106 N.Y.S.3d 5, 21 (First Dept. 2019).

100.     The First Department concluded Elisabeth was never able to convey good title. 175 A.D.3d at 129, 106 N.Y.S.3d at 21.

101.     The First Department determined that Grünbaum's art collection "never legally left Austria." 175 A.D.3d at 111.

102.     The First Department also determined that the art collection was in Austria on June 30, 1939, after Grünbaum's sister-in-law Mathilde Lukacs had fled Vienna for Belgium. 175 A.D.3d at 112.

15

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:02 PM

NYSCEF DOC. NO. 24

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

103.    Unlike the *Bakalar* court, *Reif v. Nagy* carefully analyzed the historical

circumstances and rejected decisively the arguments that Grönbaum's sister-in-law Mathilde

Lukacs had laundered Grönbaum's artworks through Switzerland.

104.    The Appellate Division carefully analyzed overwhelming evidence suggesting

that Mathilde Lukacs never had custody of the art collection, and certainly lacked custody during

the War when she was imprisoned.

105.    The Appellate Division further noted:

We note that there are no records, including invoices, checks, or receipts
documenting that the Artworks were purchased by Kornfeld from Mathilde.
Moreover, even if Mathilde had possession of Grunbaum's art collection,
possession is not equivalent to legal title.

*Id.* at 127.

106.    The First Department also analyzed record evidence not available to the *Bakalar*

court, such as post-*Bakalar* revelations involving Eberhard Kornfeld's dealings with Cornelius

Gurlitt and Kornfeld's trafficking other Nazi-looted artworks.

107.    Thus, *Reif v. Nagy's* factual findings are based on a developed factual record and

supercede the factual record in *Bakalar*, further making *Bakalar* an untrustworthy precedent.

108.    In affirming, the First Department determined that relative to the art dealer

(Nagy), Reif, Frankel and Vavra had "superior ownership and possessory interests" in the

Schiele artworks. *Id.,* 175 A.D.3d at 132, 106 N.Y.S.3d at 24.

109.    Unlike *Bakalar, Reif v. Nagy* rejected the proposition that the decedent Mathilde

Lukacs's missing testimony could have prejudiced Nagy because "Mathilde could not have

shown she had good title to the artworks and her testimony would not have been probative." 175

A.D.3d 107 (First Dept. 2019).

16

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:09 PM          INDEX NO. 654839/2022

NYSCEF DOC. NO. 24                                        RECEIVED NYSCEF: 02/09/2022

110.    In rejecting Nagy's "prejudice" argument, *Reif v. Nagy* relied on the New York

Court of Appeals 2013 decision clarifying that a the proponent of the laches defense must show

that a decedent's missing testimony would have supported a claim of title.  *Matter of*

*Flamenbaum*, 22 N.Y.3d 962, 966 (2013).

111.    *Reif v. Nagy's* trustworthy application of *Matter of Flamenbaum* constitutes an

intervening change or clarification of law that further renders the *Bakalar* precedent unreliable.

112.    Because Nagy refused to return the artworks, the Appellate Division affirmed an

award of prejudgment interest in the amount of $700,964.44.  *Reif v. Nagy,* 199 A.D.3d 616, 158

N.Y.S.3d 89 (1st Dept. 2021).

113.    Nagy persisted in challenging the Heirs' possessory interest in artworks stolen

from Grünbaum until the Court of Appeals' May 24, 2022 denial of Nagy's motion for leave to

appeal.  *Reif v. Nagy,* 38 N.Y.3d 908, 168 N.Y.S.3d 720 (2022).

114.    The Court of Appeals' May 2022 decision established a possessory interest in

Grünbaum's heirs under New York law to artworks stolen from Fritz Grünbaum, by the Nazis,

such as Schiele's *Girl Putting on Shoe (1910)* in the MoMA's possession.

**Schieles Stolen From Grünbaum Featured in 1956 Gutekunst & Klipstein Sales Catalogue**

115.    The Artwork is featured in a 1956 Gutekunst & Klipstein Sales catalogue of Egon

Schiele's artworks.

116.    All artworks in the 1956 Gutekunst & Klipstein sales catalogue were stolen from

Grünbaum, including the famous *Dead City III*, which was seized by District Attorney Robert

Morgenthau from the Museum of Modern Art in New York City in 1998. *Reif v. Nagy,* 175 A.D.3d

107 at 110, 114, 121 (1st Dept. 2019). The Gutekunst & Klipstein sales catalogue made no mention

of Mathilde Lukacs in the provenance of the artworks.

17

FILED: NEW YORK COUNTY CLERK 03/04/2022 06:42 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 24    RECEIVED NYSCEF: 03/04/2022

117.    In the 1997 Museum of Modern Art Catalogue:    *"Egon Schiele: the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Dead City III* (1911) appears as follows (with no mention of Mathilde Lukacs):



Arthur Roessler, Vienna; Alfred Spitzer, Vienna; Fritz Grünbaum, Vienna; Gutekunst & Klipstein, Bern, Galerie St. Etienne, New York; Rudolf Leopold, Vienna.   **Exhibit N** at 144.



118.    In the 1997 Museum of Modern Art Catalogue:    *"Egon Schiele : the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Red Blouse ("Rote Bluse")* (1913) appears as follows (with no mention of

18

FILED: NEW YORK COUNTY CLERK 03/09/2022 06:49 PM
NYSCEF DOC. NO. 24

INDEX NO. 654839/2022
RECEIVED NYSCEF: 03/09/2022

Mathilde Lukacs): Fritz Grunbaum, Vienna; Heirs of Fritz Grunbaum, The Netherlands; Galerie Kornfeld, Bern (auction), 1981; Rudolf Leopold, Vienna. **Exhibit N** at 220.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION – REPLEVIN (CPLR ART. 71)

119.    Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

120.    As set forth above, the Artwork was stolen from Fritz Grünbaum while he was in the Dachau Concentration Camp.

121.    Under New York law, where a chattel is stolen, no one acquiring that chattel from a thief can take good title.

122.    Plaintiffs have a right of ownership to the Artwork.

123.    Plaintiffs have diligently searched for the Artwork.

124.    A replevin cause of action is timely.

125.    Under New York law, and Chapter 71 of the CPLR, Plaintiffs are entitled to recover possession of the stolen chattel (artwork) through replevin.

126.    Accordingly, Plaintiffs respectfully request an order directing the return of the Artwork and forbidding the Artwork's transfer during the pendency of this action.

### AS AND FOR A SECOND CAUSE OF ACTION –
### DECLARATORY JUDGMENT
#### (Against Both Defendants)

127.    Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

128.    CPLR 3001 authorizes the Court to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

129.    A justiciable controversy exists concerning the ownership of the Artwork that only the Supreme Court may determine.

19

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:49 PM
NYSCEF DOC. NO. 24

INDEX NO. 654839/2022
RECEIVED NYSCEF: 03/09/2022

130.    Therefore, Plaintiffs request a declaratory judgment that the Artwork is the property of Plaintiffs.

## AS AND FOR A THIRD CAUSE OF ACTION –
## ENFORCEMENT OF MUSEUM LABELING LAW
### (Against The MoMA)

131.    Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

132.    New York Education Law, Section 233-aa, Subdivision 15, provides that every museum that has on display any identifiable works of art known to have been created before 1945 that changed hands due to theft, seizure, confiscation, forced sale or other involuntary means in Europe during the Nazi era of 1933-1945 shall, to the extent practicable, prominently place a placard or other signage acknowledging such information along with such display.

133.    Fritz Grünbaum's art collection, including the Artwork, changed hands by involuntary means during the Nazi era because in 1938 the Nazi regime forced him to sign the power of attorney permitting his wife Elisabeth to liquidate his assets and hand the assets over to the Nazi regime, and then between 1938 and 1939, Elisabeth was forced to liquidate Fritz's assets pursuant to Nazi decrees while Fritz was imprisoned in the Dachau Concentration Camp.

134.    The MoMA displays the Artwork without accompanying signage acknowledging that the Artwork changed hands through involuntary means during the Nazi era.

135.    As shown below, The MoMA displays the Artwork on its website without any accompanying information disclosing that the Artwork changed hands through involuntary means during the Nazi era.  [https://www.moma.org/s/ge/collection_ge/artist/artist_id-5215_role-1_sov_page-6.html].

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:09 PM          INDEX NO. 654839/2022

NYSCEF DOC. NO. 24                                          RECEIVED NYSCEF: 02/09/2022



136.    Plaintiffs, Grünbaum's heirs, are damaged because the MoMA displays the Artwork without the signage called for by Education Law Section 233-aa, Subdivision 15.

137.    The MoMA's failure to place the signage mandated by Education Law Section 233-aa, Section 15, is significant because it encourages other institutions and museums to disregard the law, and supports efforts to wipe out evidence of Nazi-persecution and claims asserted by heirs of Holocaust victims.

138.    Therefore, Plaintiffs request that the MoMA be directed to label the Artwork in compliance with New York law and request injunctive relief.

**WHEREFORE,** Plaintiffs demand: (1) on their first cause of action, judgment providing for the return of the Artwork; (2) on their second cause of action, a declaratory judgment that Plaintiffs own the Artwork; (3) an award of costs and interest; (4) an injunction barring the

21

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:42 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 24    RECEIVED NYSCEF: 02/09/2022

MoMA from selling, loaning, transferring or otherwise alienating the Artwork, or removing the

Artwork from the jurisdiction of the State of New York, during the pendency of this action; and

(5) such other and further relief the Court deems just, proper and equitable.


Dated: New York, New York
       December 14, 2022

                                          Respectfully submitted,


                                          **DUNNINGTON BARTHOLOW & MILLER LLP**
                                          *Attorneys for Plaintiffs*


                                    By:  /s/ Raymond J. Dowd_____
                                              Raymond J. Dowd
                                              Claudia G. Jaffe
                                              230 Park Avenue 21st Floor
                                              New York, New York 10169
                                              Telephone: 212-682-8811
                                              Facsimile: 212-661-7769
                                              rdowd@dunnington.com
                                              cjaffe@dunnington.com

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:49 PM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 24                                    RECEIVED NYSCEF: 02/04/2022

## VERIFICATION

TIMOTHY M. REIF, affirms, subject to penalties of perjury under the laws of the State

of New York as follows:

1. I am a plaintiff in this action and an attorney admitted to practice in the State of New

   York.

2. I have read the foregoing Complaint with exhibits, know the contents thereof and the

   same are true and correct to my own knowledge, except where alleged upon

   information and belief, and with respect to those allegations, I believe them to be true.

3. The grounds of my belief as to all matters not stated to upon my knowledge are

   documents, papers and data contained in the files pertaining to this matter.

December 14, 2022

_____
TIMOTHY M. REIF

FILED: NEW YORK COUNTY CLERK 03/09/2023 06:41 PM

NYSCEF DOC. NO. 25

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/09/2023

# EXHIBIT F

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM
NYSCEF DOC. NO. 25

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA,<br><br>*Plaintiffs,*<br><br>-against -<br><br>THE MORGAN LIBRARY & MUSEUM, NEW YORK,<br><br>*Defendant,*<br><br>An Artwork *SELF PORTRAIT* (1910) by the Artist Egon Schiele,<br><br>*Defendant-in-rem.* | Index No.:<br><br>**SUMMONS** |

To The Defendants Named Above:

**YOU ARE HEREBY SUMMONED** to answer the attached Verified Complaint in this action, and to serve a copy of your verified answer, or if the Verified Complaint is not served with this Summons, to serve a notice of appearance on the Plaintiffs' counsel, Dunnington Bartholow & Miller LLP, at the address set forth below within twenty (20) days after the service of this Summons (not counting the day of service itself), or within thirty (30) days after service is complete if this Summons is not delivered personally to you within the State of New York.

**PLEASE TAKE FURTHER NOTICE** that should you fail to answer or appear, a judgment will be entered against you by default for the relief in the Verified Complaint together with the costs and disbursements of this action.

1

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM

NYSCEF DOC. NO. 25

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

Dated: New York, New York
       December 14, 2022

**DUNNINGTON BARTHOLOW & MILLER LLP**
*Attorneys for Plaintiffs*

By:     \_\_\_s/Raymond J. Dowd_____
          Raymond J. Dowd
          Claudia G. Jaffe
          230 Park Avenue, 21st Floor
          New York, New York 10169
          Phone: (212) 682-8811
          Facsimile: (212) 661-7769
          RDowd@dunnington.com
          CJaffe@dunnington.com

2

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM        INDEX NO. 654839/2022

NYSCEF DOC. NO. 25                                            RECEIVED NYSCEF: 02/09/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA,<br><br>    *Plaintiffs,*<br><br>  -against -<br><br>THE MORGAN LIBRARY & MUSEUM, NEW YORK,<br>    Defendant,<br><br>An Artwork *SELF PORTRAIT* (1910) by the Artist Egon Schiele,<br><br>    *Defendant-in-rem.* | Index No.:<br><br>**VERIFIED COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs, by and through their counsel, DUNNINGTON BARTHOLOW & MILLER

LLP, hereby complain of the Defendants as follows:

## PRELIMINARY STATEMENT

1.  This is an action by the heirs of Franz Friedrich ("Fritz") Grünbaum (the

Grünbaum Heirs) to recover a painting by Egon Schiele entitled *Self Portrait* (1910) (the

"Artwork") which, upon information and belief, is currently located in New York County at The

Morgan Library & Museum, 225 Madison Avenue, New York, New York ("the Morgan").



FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM
NYSCEF DOC. NO. 25

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

2.     The Artwork is catalogued in Kallir, Jane, *Egon Schiele: The Complete Works* (Harry Abrams 1990 & 1998) as a drawing, designated D.686.

3.     Plaintiffs assert causes of action for replevin, declaratory judgment, and enforcement of Section 233-aa, Subdivision 15, of the New York Education Law (requiring museums to label works of art on display that changed hands due to theft, seizure, confiscation, forced sale or other involuntary means in Europe during the Nazi era).

4.     The Artwork is a unique chattel as defined by CPLR 7109(a) which authorizes injunctive relief.

5.     The Nazi regime stole the Artwork from Grünbaum while he was imprisoned in the Dachau Concentration Camp, where the Nazis tortured him and compelled him to sign an unlawful power of attorney giving his wife authority to convey his property, before murdering him.

6.     This action is related to *Reif v. Nagy* because the Hon. Charles Ramos determined conveyances pursuant to the unlawful Dachau power of attorney to be invalid because "[a] signature at gunpoint cannot lead to a valid conveyance." *Reif v. Nagy,* 61 Misc.3d 319, 326, 80 N.Y.S.3d 629, 634 (Sup. Ct. New York County Comm. Div. 2018), *aff'd,* 175 A.D.3d 107, 106 N.Y.S.3d 5 (1st Dept. 2019), *leave to review declined,* 25 N.Y.3d 986, 125 N.Y.S.3d 76 (May 24, 2022).

7.     The Artwork was among artworks stolen from Grünbaum by the Nazis based on the unlawful Dachau power of attorney.

**THE PARTIES**

8.     Plaintiffs are co-heirs of the estate of Grünbaum, a Viennese Jewish cabaret performer (born in Brno, Moravia) who was arrested by the Gestapo on March 22, 1938,

2

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM
NYSCEF DOC. NO. 25

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

imprisoned in the Dachau Concentration Camp, despoiled of all of his property by the Nazi regime, and murdered in Dachau on January 14, 1941.

9.      Plaintiffs Reif and Fraenkel are co-trustees of the testamentary Leon Fischer Trust for the Life and Work of Fritz Grünbaum (the "Fischer Trust") and hold valid letters of trusteeship representing the late Leon Fischer's 50% ownership interest in Grünbaum's estate.

10.      Plaintiff Reif is a resident of the City, County and State of New York.

11.      Plaintiff Fraenkel is a resident of the State of Florida.

12.      Plaintiff Vavra is a resident of the Czech Republic who owns a 50% interest in Grünbaum's estate.

13.      Defendant the Morgan Art Library & Museum, New York ("the Morgan") is a museum and institution located at 225 Madison Avenue, New York, New York 10016.

14.      Defendant-in-rem the Artwork, upon information and belief, is presently located in New York at the Morgan and is being sued herein *in rem*.

### ALLEGATIONS SUPPORTING PLAINTIFFS' STANDING

15.      On July 16, 1938, Nazis forced Grünbaum to sign a power of attorney in the Dachau Concentration Camp permitting his wife Elisabeth to liquidate his assets and hand the assets over to the Nazi regime. **Exhibit A** at 3. (true copy of the power of attorney ("Vollmacht") (including a certified English translation)**.**

16.      From 1938 to 1939, Elisabeth was forced to liquidate Fritz's assets pursuant to Nazi decrees.

17.      On Grönbaum's death (in the Dachau Concentration Camp where he was imprisoned), a Vienna notary certified that Fritz had no property, there was nothing left. **Exhibit B** at 3 (true copy of the notary's certification).

18.     On October 5, 1942 Elisabeth was deported to the Maly Trostinec death camp in Minsk, where she was murdered.

19.     Elisabeth Grünbaum's June 1939 Jewish Property Declaration shows that all of her property had been taken by the Nazis before she was murdered. **Exhibit C** (true copy of Elisabeth's Jewish Property Declaration (including a certified English translation); *see* **Exhibit C** at 3, 28 (stamp "Erledigt" ["done" or "completed"] and "Gesperrt" ["closed"]).

20.     As explained more fully below, these documents show conclusively that the Grünbaums lost Grünbaum's art collection prior to their deaths.

21.     Austrian government records demonstrate that no Grünbaum family member could have legally recovered the art collection following the deaths of Fritz and Elisabeth Grünbaum.

22.     Austrian government records show that from 1941 until 2002 Grünbaum had no heirs appointed by an Austrian court and no Austrian decrees of distribution were issued.

23.     Under Austrian law, for a family member to transfer a decedent's assets, that family member must first be declared an heir and receive a decree of distribution.

24.     Thus, the lack of any heirship or distribution decrees from 1941 until 2002 in Austrian government files signifies, as a matter of law, that no family member could have taken title to Grünbaum's art collection, or title to any individual artworks belonging to Grünbaum.

25.     Pursuant to a Certificate of Heirship issued by the District Court Innere Stadt Vienna dated September 12, 2002, Leon Fischer ("Fischer") and Milos Vavra ("Vavra") were each declared an heir of Fritz Grünbaum's estate entitled to an undivided fifty percent (50%) share. **Exhibit D** (true copy of the Certificate of Heirship).

4

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM

NYSCEF DOC. NO. 25

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

26.    Prior to District Attorney Robert Morgenthau's seizure of Grünbaum's *Dead City III* at the Museum of Modern Art in New York City in 1999, neither Fischer nor Vavra had any idea that Grünbaum's art collection survived World War II.

27.    Pursuant to a last will and testament dated February 2012, Fischer appointed Reif and Fraenkel as executors of his estate.

28.    Fischer died on August 16, 2013.

29.    Upon learning of the art collection's existence, Fischer and Vavra diligently pursued Grönbaum's art collection.

30.    Letters testamentary were issued to Reif and Fraenkel and Fischer's will was duly probated.

31.     Fischer's will created the Leon Fischer Trust for the Life and Work of Fritz Grünbaum (the "Fischer Trust") to pursue Grönbaum's artworks with proceeds going to charity.

32.    Reif and Fraenkel are now co-trustees of the Fischer Trust and hold valid letters of trusteeship.

**ALLEGATIONS SUPPORTING RECOVERY OF THE STOLEN ARTWORK**

33.    Otto (Nirenstein) Kallir (1894-1978) was a Viennese art dealer who worked at the Wurthle Gallery in Vienna before founding his own art gallery in 1923 called the "Neue Galerie".

34.    In 1925 the Wurthle Gallery displayed 22 artworks from Fritz Grunbaum's art collection.  A true copy of the 1925 Wurthle Gallery catalogue is attached hereto as **Exhibit E**.

35.    In 1928, Fritz Grünbaum permitted Otto Kallir to enter his Vienna apartment (in Grünbaum's absence) to select from among Grünbaum's Schieles the works that Kallir wanted to display at an exhibition commemorating the tenth anniversary of Schiele's death.  A true copy of

5

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:19 PM

NYSCEF DOC. NO. 25

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

the Kallir/Grunbaum 1928 correspondence ("the 1928 Correspondence") is attached hereto as **Exhibit F**.

36.    The 1928 Correspondence was donated by the Kallir family to the Austrian National Gallery (the Belvedere) as a gift of the Neue Galerie's business records following Otto Kallir's death and is currently maintained by the Austrian government as part of the Neue Galerie archive.

37.    The 1928 Correspondence shows that Grünbaum trusted Kallir.

38.    The 1928 Correspondence shows that Kallir was familiar with the contents of Grünbaum's art collection, in particularly Grünbaum's Schieles.

39.    The 1928 Correspondence lists four oils and 21 drawings and watercolors either by name or by description, including "Ich liebe Gegensatze" (1912) or "I Love Antitheses" (1912).

40.    In 1930, Otto Kallir published a catalogue raisonné of Egon Schiele's oil paintings that documented Fritz Grünbaum's ownership of works including "Dead City III".

41.    The foregoing pre-war documentation was used by scholars and historians to trace artworks looted from Fritz Grünbaum's art collection when portion of the collection after World War II when portions of the collection surfaced in Berne, Switzerland.

42.    On April 26, 1938, the Nazi regime decreed all Jewish property in excess of 5,000 Reichsmarks ("RM") to be available to the Nazi Reich for Field Marshal Goering's Four Year Plan to build the Nazi war machine.

43.    The April 26, 1938 decree required all Jews with property in excess of 5,000 RM to declare their assets quarterly until the assets were gone or until the Jews left the Reich.

6

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM
NYSCEF DOC. NO. 25

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

44.    Jews were forbidden to transfer declared property, including art, without permission from Nazi authorities.

45.    As part of the process of securing Jewish assets to prevent transfers or sales, the Jewish Property Transaction Office (Vermögensverkehrsstelle) of Vienna commissioned inventories and valuation reports.   The Jewish victims were charged a fee for this process.

46.    A Vermögensverkehrsstelle inventory thus signified that Jewish assets were secured by the Nazi government.  Pursuant to that process, the Vermögensverkehrsstelle commissioned Franz Kieslinger, an expert of the Dorotheum, to inventory Grünbaum's art collection while Grünbaum was in the Dachau Concentration Camp in 1938.

47.    The Kieslinger Inventory is part of the Elisabeth and Fritz Grunbaum Jewish Property files maintained in the Austrian State Archives. **Exhibit G** at 3, 14-16, 27, 40-43. (true copy of Fritz Grönbaum's July 16, 1938 Jewish Property Declaration, which declares the art collection and includes the Kieslinger Inventory).

48.    The Dorotheum was a Nazi-controlled auction house in Vienna used by the Nazi regime to sell art plundered from Jews and turn the proceeds over to the Nazi Reich.

49.    The Kieslinger Inventory shows Grönbaum's art collection to be valued at 5,791 RM.  **Exhibit G** at 16, 42.

50.    Grönbaum's art collection contained at least eighty-one works by the artist Egon Schiele.

51.    The stamps "Erledigt" ["done" or "completed"] and "Gesperrt" ["closed" or "blocked"] were official Nazi stamps indicating that the property of the Jewish person in question had been spoliated.

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM

NYSCEF DOC. NO. 25

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

52.     Fritz's Jewish Property Declaration bears "Erledigt" and "Gesperrt" stamps.
**Exhibit G** at 17, 43.

53.     Because the art collection was inventoried and described in the Jewish Property
Declarations, the "Erledigt" and "Gesperrt" stamps demonstrate conclusively that the Nazis stole
Fritz Grünbaum's art collection.

54.     In November and December 1938, surrounding the Kristallnacht pogrom, the
Nazis passed additional laws to steal Jewish property and to forbid Jews from engaging in
property transactions without Nazi approval.

55.     One of the laws provided for "Aryan" trustees to be appointed to liquidate Jewish
property.

56.     All proceeds from sales or transfers of Jewish property went to the Nazi Reich,
with commissions to the Aryan trustees.

57.     Some time prior to January 1939, Vienna attorney Ludwig Rochlitzer was
appointed Aryan trustee of the "property of the Grünbaums." **Exhibit H** (a true copy of a
January 31, 1939 letter from Rochlitzer to Elisabeth announcing Rochlitzer's appointment as
Aryan trustee for the Grünbaum property, together with certified English translation).

58.     From the time of Rochlitzer's appointment as Aryan trustee, neither Fritz nor
Elisabeth had access to Fritz's art collection.

59.     Grünbaum never voluntarily abandoned his art collection during his lifetime.

**U.S. State Department Warns U.S. Museums, Colleges And Art Dealers Against Acquiring
Potentially Stolen Artworks From Europe In Highly Publicized Campaign, Thus Putting
The World On Notice**

60.     Following World War II, Nazi looting of artworks from Jewish victims received
tremendous media attention in the United States.

8

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM
NYSCEF DOC. NO. 25

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

61.    Following World War II, the U.S. State Department put out bulletins to museums, universities, art dealers and others urging U.S. citizens to be vigilant against acquiring Nazi-looted artwork and asking for assistance in returning stolen art.

62.    Media and government efforts put the art and museum community on heightened notice that acquiring artworks that were in Europe after 1933 and created prior to 1946 without complete provenances.

63.    Accordingly, any U.S. person acquiring artworks that were in Europe after 1933 and created prior to 1946 without complete provenances cannot be prejudiced by the inaction of a Holocaust victim family in seeking to recover artworks stolen by Nazis because that person should have exercised vigilance prior to and after acquiring the artwork.

64.    The Morgan was on inquiry notice prior to acquiring the Artwork that it might be stolen and failed to exercise appropriate diligence in acquiring the Artwork or to make reasonable efforts to ascertain the true owners of the Artwork prior to taking possession.

65.    New York law protects the right of the owner whose property has been stolen to recover that property, even if it is in the possession of a good-faith purchaser for value. *Solomon R. Guggenheim Found. v. Lubell,* 77 NY2d 311, 317-18 [1991]

66.    New York places the burden of investigating the provenance of a work of art on the potential purchaser in furtherance of discouraging the trade in stolen art. *Solomon R. Guggenheim Found. v. Lubell,* 77 N.Y.2d 311, 320-21 (1991).

**Grünbaum's Art Collection Surfaces In Switzerland In 1956**

67.    The Artwork is featured in a 1956 Gutekunst & Klipstein Sales catalogue of Egon Schiele's artworks as number 4. **Exhibit I (**a true copy of the 1956 Gutekunst & Klipstein Schiele sale catalogue, with certified English translation) at 17.

9

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM
NYSCEF DOC. NO. 25

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

68.     All artworks in the 1956 Gutekunst & Klipstein sales catalogue were stolen from Grünbaum, including the famous *Dead City III*, which was seized by the District Attorney Robert Morgenthau from the Museum of Modern Art in New York City in 1998. *Reif v. Nagy*, 175 A.D.3d 107 at 110, 114, 121.

69.     According to a Gutekunst & Klipstein invoice September 18, 1956 Otto Kallir purchased *Dead City III*, from Gutekunst & Klipstein together with 19 other artworks by Egon Schiele.  A true copy is attached hereto as **Exhibit J**.

70.     Examination of pre-war documentation prior to acquisition of the Artwork would have revealed evidence that it had been stolen from Grünbaum.

**Bakalar Sues The Grünbaum Heirs To Extinguish Rights In Grünbaum's Art Collection Using Fabricated Evidence**

71.     In 2005, Fischer and Vavra were sued by David Bakalar, a Massachusetts resident who sought to extinguish their rights in an Egon Schiele drawing stolen from Grünbaum titled *Seated Woman with Bent Left Leg* in an action captioned *Bakalar v. Vavra*.

72.     Bakalar had sought to auction *Seated Woman With Bent Left Leg* at Sotheby's in New York and London.

73.     In doing so, Bakalar promoted the false story that Grünbaum's sister-in-law Mathilde Lukacs obtained Grünbaum's art collection and sold it to Swiss art dealer Eberhard Kornfeld in 1956.

74.     The "Mathilde Lukacs" story, first floated in 1998 by Eberhard Kornfeld after *Dead City III's* seizure, has long been derided by Holocaust scholars as implausible because Lukacs was herself imprisoned in Belgium during World War II after escaping Vienna.

75.     Bakalar succeeded in excluding as untimely an expert report of historian Dr. Jonathan Petropoulos debunking the Mathilde Lukacs provenance and excluding an expert report

FILED: NEW YORK COUNTY CLERK 02/04/2022 05:49 PM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 25                                          RECEIVED NYSCEF: 02/04/2022

on Czech law of Dr. Milan Kostohryz showing that the Vavra line of heirs was persecuted and trapped behind the Iron Curtain in Communist Czechoslovakia.

76.      Because of these exclusions of key evidence and because Eberhard Kornfeld denied the Grünbaum Heirs' handwriting expert access to handwriting samples of Mathilde Lukacs that would have demonstrated forgeries, the *Bakalar v. Vavra* case was not fully or fairly litigated.

77.      In 2006, the Southern District of New York denied Fischer's and Vavra's request to amend the pleadings to permit them to pursue additional artworks owned by Fritz Grünbaum. *Bakalar v. Vavra,* 237 F.R.D. 59 (S.D.N.Y. 2006).

78.      From 2005 to 2012, Fischer and Vavra unsuccessfully sought in *Bakalar v. Vavra* to assert a possessory interest in *Seated Woman with Bent Left Leg*.

79.      Following a bench trial, the district court concluded that Bakalar could not establish by a preponderance of the evidence that Grünbaum voluntarily relinquished possession of the drawing or that he did so intending to pass title. *Bakalar v. Vavra,* 819 F.Supp.2d 293 at 300.

80.      The district court further found that Mathilde Lukacs did not acquire valid title to the drawing.  819 F.Supp.2d 293 at 302-303.

81.      Despite Bakalar's inability to prove legal title, the Hon. William Pauley determined that inactions of predecessors-in-interest of Leon Fischer and Milos Vavra extinguished possessory rights of the Grünbaum Heirs, as against Bakalar, a Massachusetts purchaser who purchased an artwork in New York from Otto Kallir of Galerie St. Etienne, who had in turn purchased *Seated Woman with Bent Left Leg* from the 1956 Gutekunst & Klipstein sale together with 18 other Schiele artworks, including *Dead City III.*   819 F.Supp.2d 293, 305

11

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM
NYSCEF DOC. NO. 25

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

(S.D.N.Y. 2011).   The district court invoked the doctrine of laches to reach this result.  The court applied laches in a manner inconsistent with the approach of New York common law courts to applying the equitable doctrine of laches and in a manner inconsistent with public policy protecting true owners of stolen artworks.

82.     On October 11, 2012, the Second Circuit Court of Appeals, in a summary (non-precedential) order, affirmed Judge Pauley's decision by finding it not clearly erroneous. *Bakalar v. Vavra*, 500 Fed.Appx. 6 (2d Cir. 2012).

83.     In doing so, the Second Circuit mistakenly relied on a fabricated version of the Grünbaum Heirs' case offered by the plaintiff that was nowhere contained in the record and --- when raised for the first time on appeal by plaintiff ---- had been vigorously contradicted by Vavra and Fischer.   *Bakalar v Vavra*, 500 Fed Appx. 6, 7-8 (2d Cir. 2012) ("Vavra and Fischer's hypothesis—that the Nazis stole the Drawing from Grunbaum only to subsequently return or sell it to his Jewish sister-in-law—does not come close to showing that the district court's finding was clearly erroneous.").

84.     To underscore, neither Vavra nor Fischer ever argued that Nazis returned or sold artworks to Mathilde Lukacs (and the record contained no evidence to support this manufactured narrative).

85.     To the contrary, from the first pleadings, Vavra and Fischer argued that the story that Mathilde Lukacs sold Grünbaum's art collection to Gutekunst & Klipstein was entirely a fabrication.

86.     Also from the first pleadings, Vavra and Fischer argued that even if, assuming arguendo, the Mathilde Lukacs story were true, Lukacs would not have had good title, which, in turn, meant that she could not have given good title to Bakalar.

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM

NYSCEF DOC. NO. 25

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

87.    In *Matter of Flamenbaum*, 22 N.Y.3d 962, 966 (2013), decided after *Bakalar*, clarified that, in the context of missing testimony relevant to a laches defense, the proponent of the defense must show that the missing evidence would have been relevant to establishing legal title. ("although the decedent's testimony may have shed light on how he came into possession of the (artwork), we can perceive of no scenario whereby the decedent could have shown that he held (good) title").

### In The Wake Of *Bakalar*, And Prior to *Reif v. Nagy*, Three Art Dealers Conspire To Strip German Lost Art Database (www.lostart.de) of Grünbaum Claims

88.    During the course of the *Bakalar* litigation, Grünbaum's heirs were criticized for not having registered search requests related to Grünbaum's art collection on the Lost Art Database located at www.lostart.de.

89.    Accordingly, Vavra and Fischer registered the "search requests" based on the Kieslinger inventory and other pre-World War II material to artworks that appeared circumstantially to fit the description of artworks lost by Grünbaum.

90.    Below is the Lost Art Database's description of what "search requests" are:

Lost Art Database

The Lost Art Database documents cultural property expropriated as a result of Nazi persecution, especially from Jewish owners, between 1933 and 1945 ("Nazi-looted art"), or for which such a loss cannot be ruled out. With the help of the publication of so-called Search Requests and Found-Object Reports, former owners or their heirs are to be brought together with current owners and thus support all stakeholders in finding a just and fair solution.

The Lost Art Database also contains reports on cultural property that was removed as a result of the Second World War ("trophy art"). Their publication is intended to support solutions in accordance with international law. The Lost Art Database is accessible worldwide free of charge. www.lostart.de/en/start

13

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM

NYSCEF DOC. NO. 25

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/09/2022

91.    On September 23, 2015, German attorney Jutta von Falkenhausen wrote to the Lost Art Database on behalf of Galerie Kornfeld Verlag AG (Bern) represented by Christine Stauffer, Galerie St. Etienne (New York) represented by Jane Kallir, and Richard Nagy Ltd. (London) represented by Richard Nagy. **Exhibit K** (true copy of von Falkenhausen's letter)**.**

92.    Relying on *Bakalar v. Vavra* and on Austrian decisions that, in turn, relied on *Bakalar v. Vavra* and the fabricated "Mathilde Lukacs" story, von Falkenhausen demanded that the Lost Art Database delist certain of the Grünbaum heirs' claims.

93.    Von Falkenhausen's request included Schiele's *Dead City III* and the *Red Blouse*, both of which are located at the Leopold Museum in Vienna.  **Exhibit K** at 12.

94.    Over the Grünbaum Heirs' objections, the Lost Art Database erased the Grünbaum Heirs' claims, in particular, the claims relating to artworks in the 1956 Gutekunst & Klipstein Schiele sale.

95.    Today, if one types in the name "Grünbaum" one will find a number of requests. Under "status" it states "This announcement is contradicted by third parties." **Exhibit L** (Mountain Landscape (Farmhouse in the Tirol) Lost art-ID 478864).  On August 26, 2018, the New York Times reported on the dispute between the Grünbaum Heirs and the Lost Art Database in the article by William Cohan: *Jewish Heirs Take on an Art Foundation That Rights Nazi Wrongs* **Exhibit M**. https://www.nytimes.com/2018/08/26/arts/design/nazi-art-egon-schiele-fritz-grunbaum.html.

### *Reif v. Nagy* Debunks Fabricated Mathilde Lukacs Provenance

96.    In November 2015, shortly after learning that two other Egon Schiele artworks from the 1956 Gutekunst & Klipstein sale catalogue (*Woman Hiding Her Face* and *Woman In Black Pinafore*) were displayed by London art dealer Richard Nagy at the Park Avenue Armory,

14

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM
NYSCEF DOC. NO. 25

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

Reif, Fraenkel and Vavra commenced *Reif v. Nagy* in the New York State Supreme Court, New York County.

97.    The Supreme Court, Ramos, J., after carefully considering expert testimony from Dr. Petropoulos and Dr. Kostohryz that had been excluded in the *Bakalar* case, granted summary judgment on the plaintiffs' replevin and conversion claims.  *Reif v. Nagy*, 61 Misc.3d at 330, 80 N.Y.S.3d at 367.

98.    Justice Ramos found that the Nazis confiscated Fritz Grünbaum's artworks by forcing him to sign the power of attorney to his wife, who was herself later murdered by the Nazis, and that the act of signing the power of attorney was involuntary: "[a] signature at gunpoint cannot lead to a valid conveyance." *Id.,* 61 Misc.3d at 326, 80 N.Y.S.3d at 634.

99.    In affirming, the Appellate Division, First Department, determined that the power of attorney the Nazis forced Fritz to execute in favor of Elisabeth while Fritz was imprisoned in Dachau was not voluntarily executed, "reject[ing] the notion that a person who signed a power of attorney in a death camp can be said to have executed the document voluntarily." *Reif v. Nagy,* 175 A.D.3d 107, 129, 106 N.Y.S.3d 5, 21 (First Dept. 2019).

100.    The First Department concluded Elisabeth was never able to convey good title. 175 A.D.3d at 129, 106 N.Y.S.3d at 21.

101.    The First Department determined that Grönbaum's art collection "never legally left Austria."  175 A.D.3d at 111.

102.    The First Department also determined that the art collection was in Austria on June 30, 1939, after Grönbaum's sister-in-law Mathilde Lukacs had fled Vienna for Belgium. 175 A.D.3d at 112.

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM          INDEX NO. 654839/2022

NYSCEF DOC. NO. 25                                          RECEIVED NYSCEF: 02/09/2022

103.    Unlike the *Bakalar* court, *Reif v. Nagy* carefully analyzed the historical

circumstances and rejected decisively the arguments that Grönbaum's sister-in-law Mathilde

Lukacs had laundered Grönbaum's artworks through Switzerland.

104.    The Appellate Division carefully analyzed overwhelming evidence suggesting

that Mathilde Lukacs never had custody of the art collection, and certainly lacked custody during

the War when she was imprisoned.

105.    The Appellate Division further noted:

> We note that there are no records, including invoices, checks, or receipts
> documenting that the Artworks were purchased by Kornfeld from Mathilde.
> Moreover, even if Mathilde had possession of Grunbaum's art collection,
> possession is not equivalent to legal title.

*Id.* at 127.

106.    The First Department also analyzed record evidence not available to the *Bakalar*

court, such as post-*Bakalar* revelations involving Eberhard Kornfeld's dealings with Cornelius

Gurlitt and Kornfeld's trafficking other Nazi-looted artworks.

107.    Thus, *Reif v. Nagy's* factual findings are based on a developed factual record and

supercede the factual record in *Bakalar*, further making *Bakalar* an untrustworthy precedent.

108.    In affirming, the First Department determined that relative to the art dealer

(Nagy), Reif, Frankel and Vavra had "superior ownership and possessory interests" in the

Schiele artworks. *Id.,* 175 A.D.3d at 132, 106 N.Y.S.3d at 24.

109.    Unlike *Bakalar, Reif v. Nagy* rejected the proposition that the decedent Mathilde

Lukacs's missing testimony could have prejudiced Nagy because "Mathilde could not have

shown she had good title to the artworks and her testimony would not have been probative." 175

A.D.3d 107 (First Dept. 2019).

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM
NYSCEF DOC. NO. 25

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

110.     In rejecting Nagy's "prejudice" argument, *Reif v. Nagy* relied on the New York Court of Appeals 2013 decision clarifying that a the proponent of the laches defense must show that a decedent's missing testimony would have supported a claim of title.  *Matter of Flamenbaum*, 22 N.Y.3d 962, 966 (2013).

111.     *Reif v. Nagy's* trustworthy application of *Matter of Flamenbaum* constitutes an intervening change or clarification of law that further renders the *Bakalar* precedent unreliable.

112.     Because Nagy refused to return the artworks, the Appellate Division affirmed an award of prejudgment interest in the amount of $700,964.44.  *Reif v. Nagy,* 199 A.D.3d 616, 158 N.Y.S.3d 89 (1st Dept. 2021).

113.     Nagy persisted in challenging the Heirs' possessory interest in artworks stolen from Grünbaum until the Court of Appeals' May 24, 2022 denial of Nagy's motion for leave to appeal.  *Reif v. Nagy,* 38 N.Y.3d 908, 168 N.Y.S.3d 720 (2022).

114.     The Court of Appeals' May 2022 decision established a possessory interest in Grünbaum's heirs under New York law to artworks stolen from Fritz Grünbaum, by the Nazis, such as Schiele's *Self-Portrait* (1910) in the Morgan's possession.

**Schieles Stolen From Grünbaum Featured in 1956 Gutekunst & Klipstein Sales Catalogue**

115.     The Artwork is featured in a 1956 Gutekunst & Klipstein Sales catalogue of Egon Schiele's artworks.

116.     All artworks in the 1956 Gutekunst & Klipstein sales catalogue were stolen from Grünbaum, including the famous *Dead City III*, which was seized by District Attorney Robert Morgenthau from the Museum of Modern Art in New York City in 1998. *Reif v. Nagy,* 175 A.D.3d 107 at 110, 114, 121 (1st Dept. 2019). The Gutekunst & Klipstein sales catalogue made no mention of Mathilde Lukacs in the provenance of the artworks.

17

FILED: NEW YORK COUNTY CLERK 02/04/2022 05:42 PM

NYSCEF DOC. NO. 25

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/04/2022

117.   In the 1997 Museum of Modern Art Catalogue:   *"Egon Schiele: the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Dead City III* (1911) appears as follows (with no mention of Mathilde Lukacs):



Arthur Roessler, Vienna; Alfred Spitzer, Vienna; Fritz Grünbaum, Vienna; Gutekunst & Klipstein, Bern, Galerie St. Etienne, New York; Rudolf Leopold, Vienna.   **Exhibit N** at 144.



118.   In the 1997 Museum of Modern Art Catalogue:   *"Egon Schiele : the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Red Blouse ("Rote Bluse")* (1913) appears as follows (with no mention of

18

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:19 PM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 25    RECEIVED NYSCEF: 02/09/2022

Mathilde Lukacs): Fritz Grunbaum, Vienna; Heirs of Fritz Grunbaum, The Netherlands; Galerie Kornfeld, Bern (auction), 1981; Rudolf Leopold, Vienna. **Exhibit N** at 220.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION – REPLEVIN (CPLR ART. 71)

119.    Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

120.    As set forth above, the Artwork was stolen from Fritz Grünbaum while he was in the Dachau Concentration Camp.

121.    Under New York law, where a chattel is stolen, no one acquiring that chattel from a thief can take good title.

122.    Plaintiffs have a right of ownership to the Artwork.

123.    Plaintiffs have diligently searched for the Artwork.

124.    A replevin cause of action is timely.

125.    Under New York law, and Chapter 71 of the CPLR, Plaintiffs are entitled to recover possession of the stolen chattel (artwork) through replevin.

126.    Accordingly, Plaintiffs respectfully request an order directing the return of the Artwork and forbidding the Artwork's transfer during the pendency of this action.

### AS AND FOR A SECOND CAUSE OF ACTION –
### DECLARATORY JUDGMENT
### (Against Both Defendants)

127.    Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

128.    CPLR 3001 authorizes the Court to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

129.    A justiciable controversy exists concerning the ownership of the Artwork that only the Supreme Court may determine.

19

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM
NYSCEF DOC. NO. 25

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

130.    Therefore, Plaintiffs request a declaratory judgment that the Artwork is the property of Plaintiffs.

### AS AND FOR A THIRD CAUSE OF ACTION – ENFORCEMENT OF MUSEUM LABELING LAW (Against The Morgan)

131.    Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

132.    New York Education Law, Section 233-aa, Subdivision 15, provides that every museum that has on display any identifiable works of art known to have been created before 1945 that changed hands due to theft, seizure, confiscation, forced sale or other involuntary means in Europe during the Nazi era of 1933-1945 shall, to the extent practicable, prominently place a placard or other signage acknowledging such information along with such display.

133.    Fritz Grünbaum's art collection, including the Artwork, changed hands by involuntary means during the Nazi era because in 1938 the Nazi regime forced him to sign the power of attorney permitting his wife Elisabeth to liquidate his assets and hand the assets over to the Nazi regime, and then between 1938 and 1939, Elisabeth was forced to liquidate Fritz's assets pursuant to Nazi decrees while Fritz was imprisoned in the Dachau Concentration Camp.

134.    The Morgan displays the Artwork without accompanying signage acknowledging that the Artwork changed hands through involuntary means during the Nazi era.

135.    As shown below, The Morgan displays the Artwork on its website without any accompanying information disclosing that the Artwork changed hands through involuntary means during the Nazi era.  [https://www.themorgan.org/search/site/schiele%20self%20portrait].

20

FILED: NEW YORK COUNTY CLERK 02/04/2022 05:49 PM          INDEX NO. 654839/2022

NYSCEF DOC. NO. 25                                        RECEIVED NYSCEF: 02/04/2022



136.    Plaintiffs, Grünbaum's heirs, are damaged because the Morgan displays the

Artwork without the signage called for by Education Law Section 233-aa, Subdivision 15.

137.    The Morgan's failure to place the signage mandated by Education Law Section

233-aa, Section 15, is significant because it encourages other institutions and museums to

disregard the law, and supports efforts to wipe out evidence of Nazi-persecution and claims

asserted by heirs of Holocaust victims.

138.    Therefore, Plaintiffs request that the Morgan be directed to label the Artwork in

compliance with New York law and request injunctive relief.

**WHEREFORE,**  Plaintiffs demand: (1) on their first cause of action, judgment providing

for the return of the Artwork; (2) on their second cause of action, a declaratory judgment that

Plaintiffs own the Artwork; (3) an award of costs and interest; (4) an injunction barring the

FILED: NEW YORK COUNTY CLERK 12/14/2022 05:19 PM

NYSCEF DOC. NO. 25

INDEX NO. 654839/2022

RECEIVED NYSCEF: 12/14/2022

Morgan from selling, loaning, transferring or otherwise alienating the Artwork, or removing the

Artwork from the jurisdiction of the State of New York, during the pendency of this action; and

(5) such other and further relief the Court deems just, proper and equitable.

Dated: New York, New York
            December 14, 2022

Respectfully submitted,

**DUNNINGTON BARTHOLOW & MILLER LLP**
*Attorneys for Plaintiffs*

By:  _/s/ Raymond J. Dowd_____
            Raymond J. Dowd
            Claudia G. Jaffe
            230 Park Avenue 21st Floor
            New York, New York 10169
            Telephone: 212-682-8811
            Facsimile: 212-661-7769
            rdowd@dunnington.com
            cjaffe@dunnington.com

22

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:49 PM
NYSCEF DOC. NO. 25

INDEX NO. 654830/2022
RECEIVED NYSCEF: 02/09/2022

## VERIFICATION

TIMOTHY M. REIF, affirms, subject to penalties of perjury under the laws of the State of New York as follows:

1. I am a plaintiff in this action and an attorney admitted to practice in the State of New York.

2. I have read the foregoing Complaint with exhibits, know the contents thereof and the same are true and correct to my own knowledge, except where alleged upon information and belief, and with respect to those allegations, I believe them to be true.

3. The grounds of my belief as to all matters not stated to upon my knowledge are documents, papers and data contained in the files pertaining to this matter.

December 14, 2022

_____
TIMOTHY M. REIF

FILED: NEW YORK COUNTY CLERK 03/09/2023 06:41 PM

NYSCEF DOC. NO. 26

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/09/2023

# EXHIBIT G

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:07 PM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 26                                           RECEIVED NYSCEF: 02/09/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA,

        *Plaintiffs,*

-against -

SUCCESSOR TRUSTEE TO IRA WENDER as Trustee of the ESTEE LAUDER 2002 TRUST,

        Defendant,

An Artwork *I LOVE ANTITHESES* (1912) by the Artist Egon Schiele,

        *Defendant-in-rem.*

Index No.:

**SUMMONS**

---

To The Defendants Named Above:

    **YOU ARE HEREBY SUMMONED** to answer the attached Verified Complaint in this action, and to serve a copy of your verified answer, or if the Verified Complaint is not served with this Summons, to serve a notice of appearance on the Plaintiffs' counsel, Dunnington Bartholow & Miller LLP, at the address set forth below within twenty (20) days after the service of this Summons (not counting the day of service itself), or within thirty (30) days after service is complete if this Summons is not delivered personally to you within the State of New York.

    **PLEASE TAKE FURTHER NOTICE** that should you fail to answer or appear, a judgment will be entered against you by default for the relief in the Verified Complaint together with the costs and disbursements of this action.

1

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:47 PM     INDEX NO. 654839/2022

NYSCEF DOC. NO. 26     RECEIVED NYSCEF: 02/09/2022

Dated:  New York, New York
        December 14, 2022

**DUNNINGTON BARTHOLOW & MILLER LLP**
*Attorneys for Plaintiffs*

By:     __s/Raymond J. Dowd_____
        Raymond J. Dowd
        Claudia G. Jaffe
        230 Park Avenue, 21st Floor
        New York, New York 10169
        Phone: (212) 682-8811
        Facsimile: (212) 661-7769
        RDowd@dunnington.com
        CJaffe@dunnington.com

2

FILED: NEW YORK COUNTY CLERK 02/04/2022 05:47 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 26    RECEIVED NYSCEF: 02/04/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA,<br><br>*Plaintiffs,*<br><br>-against -<br><br>SUCCESSOR TRUSTEE TO IRA WENDER as Trustee of the ESTEE LAUDER 2002 TRUST,<br><br>*Defendant,*<br><br>An Artwork *I LOVE ANTITHESES* (1912) by the Artist Egon Schiele,<br><br>*Defendant-in-rem.* | Index No.:<br><br>**VERIFIED COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs, by and through their counsel, DUNNINGTON BARTHOLOW & MILLER

LLP, hereby complain of the Defendants as follows:

## PRELIMINARY STATEMENT

1.    This is an action by the heirs of Franz Friedrich ("Fritz") Grünbaum (the

Grünbaum Heirs) to recover a painting by Egon Schiele entitled *I Love Antitheses* (1912) (the

"Artwork") which, upon information and belief, is currently located in the county, city and state

of New York.



2.      The Artwork is catalogued in Kallir, Jane, *Egon Schiele: The Complete Works* (Harry Abrams 1990 & 1998) as a drawing, designated D.1187.

3.      Plaintiffs assert causes of action for replevin, declaratory judgment, and enforcement of Section 233-aa, Subdivision 15, of the New York Education Law (requiring museums to label works of art on display that changed hands due to theft, seizure, confiscation, forced sale or other involuntary means in Europe during the Nazi era).

4.      The Artwork is a unique chattel as defined by CPLR 7109(a) which authorizes injunctive relief.

5.      The Nazi regime stole the Artwork from Grünbaum while he was imprisoned in the Dachau Concentration Camp, where the Nazis tortured him and compelled him to sign an unlawful power of attorney giving his wife authority to convey his property, before murdering him.

6.      This action is related to *Reif v. Nagy* because the Hon. Charles Ramos determined conveyances pursuant to the unlawful Dachau power of attorney to be invalid because "[a] signature at gunpoint cannot lead to a valid conveyance." *Reif v. Nagy,* 61 Misc.3d 319, 326, 80 N.Y.S.3d 629, 634 (Sup. Ct. New York County Comm. Div. 2018), *aff'd,* 175 A.D.3d 107, 106 N.Y.S.3d 5 (1st Dept. 2019), *leave to review declined,* 25 N.Y.3d 986, 125 N.Y.S.3d 76 (May 24, 2022).

7.      The Artwork was among artworks stolen from Grünbaum by the Nazis based on the unlawful Dachau power of attorney.

### THE PARTIES

8.       Plaintiffs are co-heirs of the estate of Grünbaum, a Viennese Jewish cabaret performer (born in Brno, Moravia) who was arrested by the Gestapo on March 22, 1938,

2

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:07 PM
NYSCEF DOC. NO. 26

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

imprisoned in the Dachau Concentration Camp, despoiled of all of his property by the Nazi regime, and murdered in Dachau on January 14, 1941.

9.      Plaintiffs Reif and Fraenkel are co-trustees of the testamentary Leon Fischer Trust for the Life and Work of Fritz Grünbaum (the "Fischer Trust") and hold valid letters of trusteeship representing the late Leon Fischer's 50% ownership interest in Grünbaum's estate.

10.     Plaintiff Reif is a resident of the City, County and State of New York.

11.     Plaintiff Fraenkel is a resident of the State of Florida.

12.     Plaintiff Vavra is a resident of the Czech Republic who owns a 50% interest in Grünbaum's estate.

13.     The identity of defendant Successor Trustee to Ira Wender as trustee of the Estee Lauder 2002 Trust (the "Trust") is unknown to Plaintiffs because Ira Wender, at Patterson, Belknap, Webb & Tyler LLP at 1133 Avenue of the Americas, New York, NY 10036 is recently deceased.  Attached as **Exhibit A** is a true copy of correspondence from Richard Rothman of Weil Gotshal & Manges LLP identifying the "Estee Lauder 2002 Trust" as the owner of "I Love Antitheses" and Ira Wender as trustee.

14.     Defendant-in-rem the Artwork, upon information and belief, is presently located in county, city and state of New York and is being sued herein *in rem*.

### ALLEGATIONS SUPPORTING PLAINTIFFS' STANDING

15.     On July 16, 1938, Nazis forced Grünbaum to sign a power of attorney in the Dachau Concentration Camp permitting his wife Elisabeth to liquidate his assets and hand the assets over to the Nazi regime.  **Exhibit B** at 3. (true copy of the power of attorney ("Vollmacht") (including a certified English translation))**.**

3

FILED: NEW YORK COUNTY CLERK 02/04/2022 05:47 PM

NYSCEF DOC. NO. 26

INDEX NO. 654829/2022

RECEIVED NYSCEF: 02/04/2022

16.    From 1938 to 1939, Elisabeth was forced to liquidate Fritz's assets pursuant to Nazi decrees.

17.    On Grünbaum's death (in the Dachau Concentration Camp where he was imprisoned), a Vienna notary certified that Fritz had no property, there was nothing left. **Exhibit C** at 3 (true copy of the notary's certification).

18.    On October 5, 1942 Elisabeth was deported to the Maly Trostinec death camp in Minsk, where she was murdered.

19.    Elisabeth Grünbaum's June 1939 Jewish Property Declaration shows that all of her property had been taken by the Nazis before she was murdered. **Exhibit D** (true copy of Elisabeth's Jewish Property Declaration (including a certified English translation); *see* **Exhibit D** at 3, 28 (stamp "Erledigt" ["done" or "completed"] and "Gesperrt" ["closed"]).

20.    As explained more fully below, these documents show conclusively that the Grünbaums lost Grünbaum's art collection prior to their deaths.

21.    Austrian government records demonstrate that no Grünbaum family member could have legally recovered the art collection following the deaths of Fritz and Elisabeth Grünbaum.

22.    Austrian government records show that from 1941 until 2002 Grünbaum had no heirs appointed by an Austrian court and no Austrian decrees of distribution were issued.

23.    Under Austrian law, for a family member to transfer a decedent's assets, that family member must first be declared an heir and receive a decree of distribution.

24.    Thus, the lack of any heirship or distribution decrees from 1941 until 2002 in Austrian government files signifies, as a matter of law, that no family member could have taken title to Grünbaum's art collection, or title to any individual artworks belonging to Grünbaum.

4

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:07 PM
NYSCEF DOC. NO. 26

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

25.     Pursuant to a Certificate of Heirship issued by the District Court Innere Stadt Vienna dated September 12, 2002, Leon Fischer ("Fischer") and Milos Vavra ("Vavra") were each declared an heir of Fritz Grönbaum's estate entitled to an undivided fifty percent (50%) share. **Exhibit E** (true copy of the Certificate of Heirship).

26.     Prior to District Attorney Robert Morgenthau's seizure of Grünbaum's *Dead City III* at the Museum of Modern Art in New York City in 1999, neither Fischer nor Vavra had any idea that Grünbaum's art collection survived World War II.

27.     Pursuant to a last will and testament dated February 2012, Fischer appointed Reif and Fraenkel as executors of his estate.

28.     Fischer died on August 16, 2013.

29.     Upon learning of the art collection's existence, Fischer and Vavra diligently pursued Grönbaum's art collection.

30.     Letters testamentary were issued to Reif and Fraenkel and Fischer's will was duly probated.

31.      Fischer's will created the Leon Fischer Trust for the Life and Work of Fritz Grünbaum (the "Fischer Trust") to pursue Grönbaum's artworks with proceeds going to charity.

32.     Reif and Fraenkel are now co-trustees of the Fischer Trust and hold valid letters of trusteeship.

**ALLEGATIONS SUPPORTING RECOVERY OF THE STOLEN ARTWORK**

33.     Otto (Nirenstein) Kallir (1894-1978) was a Viennese art dealer who worked at the Wurthle Gallery in Vienna before founding his own art gallery in 1923 called the "Neue Galerie".

5

FILED: NEW YORK COUNTY CLERK 02/04/2022 05:47 PM    INDEX NO. 654830/2022
NYSCEF DOC. NO. 26                                            RECEIVED NYSCEF: 02/04/2022

34.    In 1925 the Wurthle Gallery displayed 22 artworks from Fritz Grunbaum's art collection.  A true copy of the 1925 Wurthle Gallery catalogue is attached hereto as **Exhibit F**.

35.    In 1928, Fritz Grünbaum permitted Otto Kallir to enter his Vienna apartment (in Grünbaum's absence) to select from among Grünbaum's Schieles the works that Kallir wanted to display at an exhibition commemorating the tenth anniversary of Schiele's death.  A true copy of the Kallir/Grunbaum 1928 correspondence ("the 1928 Correspondence") is attached hereto as **Exhibit G**.

36.    The 1928 Correspondence was donated by the Kallir family to the Austrian National Gallery (the Belvedere) as a gift of the Neue Galerie's business records following Otto Kallir's death and is currently maintained by the Austrian government as part of the Neue Galerie archive.

37.    The 1928 Correspondence shows that Grünbaum trusted Kallir.

38.    The 1928 Correspondence shows that Kallir was familiar with the contents of Grünbaum's art collection, in particularly Grünbaum's Schieles.

39.    The 1928 Correspondence lists four oils and 21 drawings and watercolors either by name or by description, including "Ich liebe Gegensatze" (1912) or "I Love Antitheses" (1912).

40.    In 1930, Otto Kallir published a catalogue raisonné of Egon Schiele's oil paintings that documented Fritz Grünbaum's ownership of works including "Dead City III".

41.    The foregoing pre-war documentation was used by scholars and historians to trace artworks looted from Fritz Grünbaum's art collection when portion of the collection after World War II when portions of the collection surfaced in Berne, Switzerland.

6

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:07 PM
NYSCEF DOC. NO. 26

INDEX NO. 654838/2022
RECEIVED NYSCEF: 02/09/2022

42.     On April 26, 1938, the Nazi regime decreed all Jewish property in excess of 5,000 Reichsmarks ("RM") to be available to the Nazi Reich for Field Marshal Goering's Four Year Plan to build the Nazi war machine.

43.     The April 26, 1938 decree required all Jews with property in excess of 5,000 RM to declare their assets quarterly until the assets were gone or until the Jews left the Reich.

44.     Jews were forbidden to transfer declared property, including art, without permission from Nazi authorities.

45.     As part of the process of securing Jewish assets to prevent transfers or sales, the Jewish Property Transaction Office (Vermögensverkehrsstelle) of Vienna commissioned inventories and valuation reports.   The Jewish victims were charged a fee for this process.

46.     A Vermögensverkehrsstelle inventory thus signified that Jewish assets were secured by the Nazi government.  Pursuant to that process, the Vermögensverkehrsstelle commissioned Franz Kieslinger, an expert of the Dorotheum, to inventory Grünbaum's art collection while Grünbaum was in the Dachau Concentration Camp in 1938.

47.     The Kieslinger Inventory is part of the Elisabeth and Fritz Grunbaum Jewish Property files maintained in the Austrian State Archives. **Exhibit H** at 3, 14-16, 27, 40-43. (true copy of Fritz Grönbaum's July 16, 1938 Jewish Property Declaration, which declares the art collection and includes the Kieslinger Inventory).

48.     The Dorotheum was a Nazi-controlled auction house in Vienna used by the Nazi regime to sell art plundered from Jews and turn the proceeds over to the Nazi Reich.

49.     The Kieslinger Inventory shows Grönbaum's art collection to be valued at 5,791 RM.  **Exhibit H** at 16, 42.

7

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:47 PM

NYSCEF DOC. NO. 26

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

50.     Grönbaum's art collection contained at least eighty-one works by the artist Egon Schiele.

51.     The stamps "Erledigt" ["done" or "completed"] and "Gesperrt" ["closed" or "blocked"] were official Nazi stamps indicating that the property of the Jewish person in question had been spoliated.

52.     Fritz's Jewish Property Declaration bears "Erledigt" and "Gesperrt" stamps. **Exhibit H** at 17, 43.

53.     Because the art collection was inventoried and described in the Jewish Property Declarations, the "Erledigt" and "Gesperrt" stamps demonstrate conclusively that the Nazis stole Fritz Grönbaum's art collection.

54.     In November and December 1938, surrounding the Kristallnacht pogrom, the Nazis passed additional laws to steal Jewish property and to forbid Jews from engaging in property transactions without Nazi approval.

55.     One of the laws provided for "Aryan" trustees to be appointed to liquidate Jewish property.

56.     All proceeds from sales or transfers of Jewish property went to the Nazi Reich, with commissions to the Aryan trustees.

57.     Some time prior to January 1939, Vienna attorney Ludwig Rochlitzer was appointed Aryan trustee of the "property of the Grünbaums." **Exhibit I** (a true copy of a January 31, 1939 letter from Rochlitzer to Elisabeth announcing Rochlitzer's appointment as Aryan trustee for the Grünbaum property, together with certified English translation).

58.     From the time of Rochlitzer's appointment as Aryan trustee, neither Fritz nor Elisabeth had access to Fritz's art collection.

8

FILED: NEW YORK COUNTY CLERK 02/04/2022 05:47 PM

NYSCEF DOC. NO. 26

INDEX NO. 654838/2022

RECEIVED NYSCEF: 02/04/2022

59.     Grünbaum never voluntarily abandoned his art collection during his lifetime.

**U.S. State Department Warns U.S. Museums, Colleges And Art Dealers Against Acquiring Potentially Stolen Artworks From Europe In Highly Publicized Campaign, Thus Putting The World On Notice**

60.     Following World War II, Nazi looting of artworks from Jewish victims received tremendous media attention in the United States.

61.      Following World War II, the U.S. State Department put out bulletins to museums, universities, art dealers and others urging U.S. citizens to be vigilant against acquiring Nazi-looted artwork and asking for assistance in returning stolen art.

62.     Media and government efforts put the art and museum community on heightened notice that acquiring artworks that were in Europe after 1933 and created prior to 1946 without complete provenances.

63.     Accordingly, any U.S. person acquiring artworks that were in Europe after 1933 and created prior to 1946 without complete provenances cannot be prejudiced by the inaction of a Holocaust victim family in seeking to recover artworks stolen by Nazis because that person should have exercised vigilance prior to and after acquiring the artwork.

64.     The Trust was on inquiry notice prior to acquiring the Artwork that it might be stolen and failed to exercise appropriate diligence in acquiring the Artwork or to make reasonable efforts to ascertain the true owners of the Artwork prior to taking possession.

65.     New York law protects the right of the owner whose property has been stolen to recover that property, even if it is in the possession of a good-faith purchaser for value. *Solomon R. Guggenheim Found. v. Lubell,* 77 NY2d 311, 317-18 [1991]

9

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:47 PM
NYSCEF DOC. NO. 26

INDEX NO. 654839/2022
RECEIVED NYSCEF: 02/09/2022

66.     New York places the burden of investigating the provenance of a work of art on the potential purchaser in furtherance of discouraging the trade in stolen art. *Solomon R. Guggenheim Found. v. Lubell,* 77 N.Y.2d 311, 320-21 (1991).

**Grünbaum's Art Collection Surfaces In Switzerland In 1956**

67.     The Artwork is featured in a 1956 Gutekunst & Klipstein Sales catalogue of Egon Schiele's artworks as number 19. **Exhibit J (**a true copy of the 1956 Gutekunst & Klipstein Schiele sale catalogue, with certified English translation) at 21.

68.     All artworks in the 1956 Gutekunst & Klipstein sales catalogue were stolen from Grünbaum, including the famous *Dead City III*, which was seized by the District Attorney Robert Morgenthau from the Museum of Modern Art in New York City in 1998. *Reif v. Nagy,* 175 A.D.3d 107 at 110, 114, 121.

69.     According to a Gutekunst & Klipstein invoice September 18, 1956 Otto Kallir purchased *Dead City III*, from Gutekunst & Klipstein together with 19 other artworks by Egon Schiele.  A true copy is attached hereto as **Exhibit K**.

70.     Examination of pre-war documentation prior to acquisition of the Artwork would have revealed evidence that it had been stolen from Grünbaum.

**Bakalar Sues The Grünbaum Heirs To Extinguish Rights In Grünbaum's Art Collection Using Fabricated Evidence**

71.     In 2005, Fischer and Vavra were sued by David Bakalar, a Massachusetts resident who sought to extinguish their rights in an Egon Schiele drawing stolen from Grünbaum titled *Seated Woman with Bent Left Leg* in an action captioned *Bakalar v. Vavra.*

72.     Bakalar had sought to auction *Seated Woman With Bent Left Leg* at Sotheby's in New York and London.

10

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:47 PM
NYSCEF DOC. NO. 26

INDEX NO. 654838/2022
RECEIVED NYSCEF: 02/09/2022

73.    In doing so, Bakalar promoted the false story that Grünbaum's sister-in-law Mathilde Lukacs obtained Grünbaum's art collection and sold it to Swiss art dealer Eberhard Kornfeld in 1956.

74.    The "Mathilde Lukacs" story, first floated in 1998 by Eberhard Kornfeld after *Dead City III's* seizure, has long been derided by Holocaust scholars as implausible because Lukacs was herself imprisoned in Belgium during World War II after escaping Vienna.

75.    Bakalar succeeded in excluding as untimely an expert report of historian Dr. Jonathan Petropoulos debunking the Mathilde Lukacs provenance and excluding an expert report on Czech law of Dr. Milan Kostohryz showing that the Vavra line of heirs was persecuted and trapped behind the Iron Curtain in Communist Czechoslovakia.

76.    Because of these exclusions of key evidence and because Eberhard Kornfeld denied the Grünbaum Heirs' handwriting expert access to handwriting samples of Mathilde Lukacs that would have demonstrated forgeries, the *Bakalar v. Vavra* case was not fully or fairly litigated.

77.    In 2006, the Southern District of New York denied Fischer's and Vavra's request to amend the pleadings to permit them to pursue additional artworks owned by Fritz Grünbaum. *Bakalar v. Vavra,* 237 F.R.D. 59 (S.D.N.Y. 2006).

78.    From 2005 to 2012, Fischer and Vavra unsuccessfully sought in *Bakalar v. Vavra* to assert a possessory interest in *Seated Woman with Bent Left Leg.*

79.    Following a bench trial, the district court concluded that Bakalar could not establish by a preponderance of the evidence that Grünbaum voluntarily relinquished possession of the drawing or that he did so intending to pass title. *Bakalar v. Vavra,* 819 F.Supp.2d 293 at 300.

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:47 PM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 26    RECEIVED NYSCEF: 02/09/2022

80.    The district court further found that Mathilde Lukacs did not acquire valid title to the drawing.  819 F.Supp.2d 293 at 302-303.

81.    Despite Bakalar's inability to prove legal title, the Hon. William Pauley determined that inactions of predecessors-in-interest of Leon Fischer and Milos Vavra extinguished possessory rights of the Grünbaum Heirs, as against Bakalar, a Massachusetts purchaser who purchased an artwork in New York from Otto Kallir of Galerie St. Etienne, who had in turn purchased *Seated Woman with Bent Left Leg* from the 1956 Gutekunst & Klipstein sale together with 18 other Schiele artworks, including *Dead City III.*  819 F.Supp.2d 293, 305 (S.D.N.Y. 2011).   The district court invoked the doctrine of laches to reach this result.  The court applied laches in a manner inconsistent with the approach of New York common law courts to applying the equitable doctrine of laches and in a manner inconsistent with public policy protecting true owners of stolen artworks.

82.    On October 11, 2012, the Second Circuit Court of Appeals, in a summary (non-precedential) order, affirmed Judge Pauley's decision by finding it not clearly erroneous. *Bakalar v. Vavra*, 500 Fed. Appx. 6 (2d Cir. 2012).

83.    In doing so, the Second Circuit mistakenly relied on a fabricated version of the Grünbaum Heirs' case offered by the plaintiff that was nowhere contained in the record and --- when raised for the first time on appeal by plaintiff ---- had been vigorously contradicted by Vavra and Fischer.   *Bakalar v Vavra*, 500 Fed Appx. 6, 7-8 (2d Cir. 2012) ("Vavra and Fischer's hypothesis—that the Nazis stole the Drawing from Grünbaum only to subsequently return or sell it to his Jewish sister-in-law—does not come close to showing that the district court's finding was clearly erroneous.").

FILED: NEW YORK COUNTY CLERK 03/09/2022 05:47 PM

NYSCEF DOC. NO. 26

INDEX NO. 654838/2022

RECEIVED NYSCEF: 03/09/2022

84.    To underscore, neither Vavra nor Fischer ever argued that Nazis returned or sold artworks to Mathilde Lukacs (and the record contained no evidence to support this manufactured narrative).

85.    To the contrary, from the first pleadings, Vavra and Fischer argued that the story that Mathilde Lukacs sold Grünbaum's art collection to Gutekunst & Klipstein was entirely a fabrication.

86.    Also from the first pleadings, Vavra and Fischer argued that even if, assuming arguendo, the Mathilde Lukacs story were true, Lukacs would not have had good title, which, in turn, meant that she could not have given good title to Bakalar.

87.    In *Matter of Flamenbaum*, 22 N.Y.3d 962, 966 (2013), decided after *Bakalar*, clarified that, in the context of missing testimony relevant to a laches defense, the proponent of the defense must show that the missing evidence would have been relevant to establishing legal title. ("although the decedent's testimony may have shed light on how he came into possession of the (artwork), we can perceive of no scenario whereby the decedent could have shown that he held (good) title").

**In The Wake Of *Bakalar*, And Prior to *Reif v. Nagy*, Three Art Dealers Conspire To Strip German Lost Art Database (www.lostart.de) of Grünbaum Claims**

88.    During the course of the *Bakalar* litigation, Grünbaum's heirs were criticized for not having registered search requests related to Grünbaum's art collection on the Lost Art Database located at www.lostart.de.

89.    Accordingly, Vavra and Fischer registered the "search requests" based on the Kieslinger inventory and other pre-World War II material to artworks that appeared circumstantially to fit the description of artworks lost by Grünbaum.

90.    Below is the Lost Art Database's description of what "search requests" are:

13

FILED: NEW YORK COUNTY CLERK 02/04/2022 05:47 PM

NYSCEF DOC. NO. 26

INDEX NO. 654838/2022

RECEIVED NYSCEF: 02/04/2022

Lost Art Database

The Lost Art Database documents cultural property expropriated as a result of Nazi persecution, especially from Jewish owners, between 1933 and 1945 ("Nazi-looted art"), or for which such a loss cannot be ruled out. With the help of the publication of so-called Search Requests and Found-Object Reports, former owners or their heirs are to be brought together with current owners and thus support all stakeholders in finding a just and fair solution.

The Lost Art Database also contains reports on cultural property that was removed as a result of the Second World War ("trophy art"). Their publication is intended to support solutions in accordance with international law. The Lost Art Database is accessible worldwide free of charge. www.lostart.de/en/start

91.    On September 23, 2015, German attorney Jutta von Falkenhausen wrote to the Lost Art Database on behalf of Galerie Kornfeld Verlag AG (Bern) represented by Christine Stauffer, Galerie St. Etienne (New York) represented by Jane Kallir, and Richard Nagy Ltd. (London) represented by Richard Nagy. **Exhibit L** (true copy of von Falkenhausen's letter)**.**

92.    Relying on *Bakalar v. Vavra* and on Austrian decisions that, in turn, relied on *Bakalar v. Vavra* and the fabricated "Mathilde Lukacs" story, von Falkenhausen demanded that the Lost Art Database delist certain of the Grünbaum heirs' claims.

93.    Von Falkenhausen's request included Schiele's *Dead City III* and the *Red Blouse*, both of which are located at the Leopold Museum in Vienna. **Exhibit L** at 12.

94.    Over the Grünbaum Heirs' objections, the Lost Art Database erased the Grünbaum Heirs' claims, in particular, the claims relating to artworks in the 1956 Gutekunst & Klipstein Schiele sale.

95.    Today, if one types in the name "Grünbaum" one will find a number of requests. Under "status" it states "This announcement is contradicted by third parties." **Exhibit M** (Mountain Landscape (Farmhouse in the Tirol) Lost art-ID 478864).  On August 26, 2018, the New York Times reported on the dispute between the Grünbaum Heirs and the Lost Art

14

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:47 PM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 26    RECEIVED NYSCEF: 02/09/2022

Database in the article by William Cohan: *Jewish Heirs Take on an Art Foundation That Rights Nazi Wrongs* **Exhibit N**. https://www.nytimes.com/2018/08/26/arts/design/nazi-art-egon-schiele-fritz-grunbaum.html.

### *Reif v. Nagy* Debunks Fabricated Mathilde Lukacs Provenance

96.    In November 2015, shortly after learning that two other Egon Schiele artworks from the 1956 Gutekunst & Klipstein sale catalogue (*Woman Hiding Her Face* and *Woman In Black Pinafore*) were displayed by London art dealer Richard Nagy at the Park Avenue Armory, Reif, Fraenkel and Vavra commenced *Reif v. Nagy* in the New York State Supreme Court, New York County.

97.    The Supreme Court, Ramos, J., after carefully considering expert testimony from Dr. Petropoulos and Dr. Kostohryz that had been excluded in the *Bakalar* case, granted summary judgment on the plaintiffs' replevin and conversion claims. *Reif v. Nagy,* 61 Misc.3d at 330, 80 N.Y.S.3d at 367.

98.    Justice Ramos found that the Nazis confiscated Fritz Grünbaum's artworks by forcing him to sign the power of attorney to his wife, who was herself later murdered by the Nazis, and that the act of signing the power of attorney was involuntary: "[a] signature at gunpoint cannot lead to a valid conveyance." *Id.,* 61 Misc.3d at 326, 80 N.Y.S.3d at 634.

99.    In affirming, the Appellate Division, First Department, determined that the power of attorney the Nazis forced Fritz to execute in favor of Elisabeth while Fritz was imprisoned in Dachau was not voluntarily executed, "reject[ing] the notion that a person who signed a power of attorney in a death camp can be said to have executed the document voluntarily." *Reif v. Nagy,* 175 A.D.3d 107, 129, 106 N.Y.S.3d 5, 21 (First Dept. 2019).

15

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:47 PM

NYSCEF DOC. NO. 26

INDEX NO. 654838/2022

RECEIVED NYSCEF: 02/09/2022

100.    The First Department concluded Elisabeth was never able to convey good title. 175 A.D.3d at 129, 106 N.Y.S.3d at 21.

101.    The First Department determined that Grönbaum's art collection "never legally left Austria." 175 A.D.3d at 111.

102.    The First Department also determined that the art collection was in Austria on June 30, 1939, after Grönbaum's sister-in-law Mathilde Lukacs had fled Vienna for Belgium. 175 A.D.3d at 112.

103.    Unlike the *Bakalar* court, *Reif v. Nagy* carefully analyzed the historical circumstances and rejected decisively the arguments that Grönbaum's sister-in-law Mathilde Lukacs had laundered Grönbaum's artworks through Switzerland.

104.    The Appellate Division carefully analyzed overwhelming evidence suggesting that Mathilde Lukacs never had custody of the art collection, and certainly lacked custody during the War when she was imprisoned.

105.    The Appellate Division further noted:

> We note that there are no records, including invoices, checks, or receipts documenting that the Artworks were purchased by Kornfeld from Mathilde. Moreover, even if Mathilde had possession of Grunbaum's art collection, possession is not equivalent to legal title.

*Id.* at 127.

106.    The First Department also analyzed record evidence not available to the *Bakalar* court, such as post-*Bakalar* revelations involving Eberhard Kornfeld's dealings with Cornelius Gurlitt and Kornfeld's trafficking other Nazi-looted artworks.

107.    Thus, *Reif v. Nagy's* factual findings are based on a developed factual record and supercede the factual record in *Bakalar*, further making *Bakalar* an untrustworthy precedent.

16

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:47 PM

NYSCEF DOC. NO. 26

INDEX NO. 654838/2022

RECEIVED NYSCEF: 02/09/2022

108.    In affirming, the First Department determined that relative to the art dealer (Nagy), Reif, Frankel and Vavra had "superior ownership and possessory interests" in the Schiele artworks. *Id.,* 175 A.D.3d at 132, 106 N.Y.S.3d at 24.

109.    Unlike *Bakalar, Reif v. Nagy* rejected the proposition that the decedent Mathilde Lukacs's missing testimony could have prejudiced Nagy because "Mathilde could not have shown she had good title to the artworks and her testimony would not have been probative." 175 A.D.3d 107 (First Dept. 2019).

110.    In rejecting Nagy's "prejudice" argument, *Reif v. Nagy* relied on the New York Court of Appeals 2013 decision clarifying that a the proponent of the laches defense must show that a decedent's missing testimony would have supported a claim of title.  *Matter of Flamenbaum*, 22 N.Y.3d 962, 966 (2013).

111.    *Reif v. Nagy's* trustworthy application of *Matter of Flamenbaum* constitutes an intervening change or clarification of law that further renders the *Bakalar* precedent unreliable.

112.    Because Nagy refused to return the artworks, the Appellate Division affirmed an award of prejudgment interest in the amount of $700,964.44.  *Reif v. Nagy,* 199 A.D.3d 616, 158 N.Y.S.3d 89 (1st Dept. 2021).

113.    Nagy persisted in challenging the Heirs' possessory interest in artworks stolen from Grünbaum until the Court of Appeals' May 24, 2022 denial of Nagy's motion for leave to appeal.  *Reif v. Nagy,* 38 N.Y.3d 908, 168 N.Y.S.3d 720 (2022).

114.    The Court of Appeals' May 2022 decision established a possessory interest in Grönbaum's heirs under New York law to artworks stolen from Fritz Grünbaum, by the Nazis, such as Schiele's *I Love Antitheses (1912)* in the Trust's possession.

**Schieles Stolen From Grünbaum Featured in 1956 Gutekunst & Klipstein Sales Catalogue**

FILED: NEW YORK COUNTY CLERK 02/04/2022 05:47 PM

NYSCEF DOC. NO. 26

INDEX NO. 654838/2022

RECEIVED NYSCEF: 02/04/2022

115.    The Artwork is featured in a 1956 Gutekunst & Klipstein Sales catalogue of Egon Schiele's artworks.

116.    All artworks in the 1956 Gutekunst & Klipstein sales catalogue were stolen from Grünbaum, including the famous *Dead City III*, which was seized by District Attorney Robert Morgenthau from the Museum of Modern Art in New York City in 1998. *Reif v. Nagy,* 175 A.D.3d 107 at 110, 114, 121 (1st Dept. 2019). The Gutekunst & Klipstein sales catalogue made no mention of Mathilde Lukacs in the provenance of the artworks.

117.    In the 1997 Museum of Modern Art Catalogue:  *"Egon Schiele: the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Dead City III* (1911) appears as follows (with no mention of Mathilde Lukacs):



Arthur Roessler, Vienna; Alfred Spitzer, Vienna; Fritz Grünbaum, Vienna; Gutekunst & Klipstein, Bern, Galerie St. Etienne, New York; Rudolf Leopold, Vienna.   **Exhibit O** at 144.

18

FILED: NEW YORK COUNTY CLERK 02/04/2022 05:47 PM
NYSCEF DOC. NO. 26

INDEX NO. 654838/2022
RECEIVED NYSCEF: 02/04/2022



118.    In the 1997 Museum of Modern Art Catalogue:  *"Egon Schiele : the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Red Blouse ("Rote Bluse")* (1913) appears as follows (with no mention of Mathilde Lukacs): Fritz Grunbaum, Vienna; Heirs of Fritz Grunbaum, The Netherlands; Galerie Kornfeld, Bern (auction), 1981; Rudolf Leopold, Vienna. **Exhibit O** at 220.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION – REPLEVIN (CPLR ART. 71)

119.    Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

120.    As set forth above, the Artwork was stolen from Fritz Grünbaum while he was in the Dachau Concentration Camp.

121.    Under New York law, where a chattel is stolen, no one acquiring that chattel from a thief can take good title.

122.    Plaintiffs have a right of ownership to the Artwork.

123.    Plaintiffs have diligently searched for the Artwork.

124.    A replevin cause of action is timely.

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:47 PM

NYSCEF DOC. NO. 26

INDEX NO. 654839/2022

RECEIVED NYSCEF: 02/09/2022

125.    Under New York law, and Chapter 71 of the CPLR, Plaintiffs are entitled to recover possession of the stolen chattel (artwork) through replevin.

126.    Accordingly, Plaintiffs respectfully request an order directing the return of the Artwork and forbidding the Artwork's transfer during the pendency of this action.

### AS AND FOR A SECOND CAUSE OF ACTION – DECLARATORY JUDGMENT

127.    Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

128.    CPLR 3001 authorizes the Court to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

129.    A justiciable controversy exists concerning the ownership of the Artwork that only the Supreme Court may determine.

130.    Therefore, Plaintiffs request a declaratory judgment that the Artwork is the property of Plaintiffs.

**WHEREFORE,** Plaintiffs demand: (1) on their first cause of action, judgment providing for the return of the Artwork; (2) on their second cause of action, a declaratory judgment that Plaintiffs own the Artwork; (3) an award of costs and interest; (4) an injunction barring the Trust from selling, loaning, transferring or otherwise alienating the Artwork, or removing the Artwork from the jurisdiction of the State of New York, during the pendency of this action; and (5) such other and further relief the Court deems just, proper and equitable.

Dated: New York, New York
      December 14, 2022

                          Respectfully submitted,

20

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:47 PM    INDEX NO. 654839/2022
NYSCEF DOC. NO. 26                                   RECEIVED NYSCEF: 02/09/2022

**DUNNINGTON BARTHOLOW & MILLER LLP**
*Attorneys for Plaintiffs*


By: _/s/ Raymond J. Dowd_____
      Raymond J. Dowd
      Claudia G. Jaffe
      230 Park Avenue 21st Floor
      New York, New York 10169
      Telephone: 212-682-8811
      Facsimile: 212-661-7769
      rdowd@dunnington.com
      cjaffe@dunnington.com

21

FILED: NEW YORK COUNTY CLERK 02/09/2022 05:47 PM

NYSCEF DOC. NO. 26

INDEX NO. 654828/2022

RECEIVED NYSCEF: 02/09/2022

### VERIFICATION

TIMOTHY M. REIF, affirms, subject to penalties of perjury under the laws of the State of New York as follows:

1. I am a plaintiff in this action and an attorney admitted to practice in the State of New York.

2. I have read the foregoing Complaint with exhibits, know the contents thereof and the same are true and correct to my own knowledge, except where alleged upon information and belief, and with respect to those allegations, I believe them to be true.

3. The grounds of my belief as to all matters not stated to upon my knowledge are documents, papers and data contained in the files pertaining to this matter.

December 14, 2022

_____
TIMOTHY M. REIF

FILED: NEW YORK COUNTY CLERK 03/09/2023 06:41 PM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 27    RECEIVED NYSCEF: 03/09/2023

# EXHIBIT H

FILED: NEW YORK COUNTY CLERK 12/14/2022 06:41 PM          INDEX NO. 654838/2022

NYSCEF DOC. NO. 27                                            RECEIVED NYSCEF: 12/14/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA,<br><br>*Plaintiffs,*<br><br>-against -<br><br>THE ART INSTITUTE OF CHICAGO,<br><br>*Defendant,*<br><br>An Artwork *RUSSIAN PRISONER OF WAR* (1916) by the Artist Egon Schiele,<br><br>*Defendant-in-rem.* | Index No.:<br><br>**SUMMONS**<br><br>**Jury Trial Demanded** |

To The Defendants Named Above:

**YOU ARE HEREBY SUMMONED** to answer the attached Verified Complaint in this action, and to serve a copy of your verified answer, or if the Verified Complaint is not served with this Summons, to serve a notice of appearance on the Plaintiffs' counsel, Dunnington Bartholow & Miller LLP, at the address set forth below within twenty (20) days after the service of this Summons (not counting the day of service itself), or within thirty (30) days after service is complete if this Summons is not delivered personally to you within the State of New York.

**PLEASE TAKE FURTHER NOTICE** that should you fail to answer or appear, a judgment will be entered against you by default for the relief in the Verified Complaint together with the costs and disbursements of this action.

Dated:  New York, New York
        December 14, 2022

1

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:41 PM

INDEX NO. 654838/2022

NYSCEF DOC. NO. 27

RECEIVED NYSCEF: 02/04/2022

**DUNNINGTON BARTHOLOW & MILLER LLP**
*Attorneys for Plaintiffs*

By:     s/Raymond J. Dowd
               Raymond J. Dowd
               Claudia G. Jaffe
               230 Park Avenue, 21st Floor
               New York, New York 10169
               Phone: (212) 682-8811
               Facsimile: (212) 661-7769
               RDowd@dunnington.com
               CJaffe@dunnington.com

2

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM

NYSCEF DOC. NO. 27

INDEX NO. 654838/2022

RECEIVED NYSCEF: 02/09/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TIMOTHY REIF and DAVID FRAENKEL, as Co-
Trustees of the LEON FISCHER TRUST FOR THE
LIFE AND WORK OF FRITZ GRUNBAUM and
MILOS VAVRA,

*Plaintiffs,*

-against -

THE ART INSTITUTE OF CHICAGO,

*Defendant,*

An Artwork *RUSSIAN PRISONER OF WAR* (1916) by
the Artist Egon Schiele,

*Defendant-in-rem.*

Index No.:

**VERIFIED COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, by and through their counsel, DUNNINGTON BARTHOLOW & MILLER LLP, hereby complain of the Defendants as follows:

**PRELIMINARY STATEMENT**

1.      This is an action by the heirs of Franz Friedrich ("Fritz") Grünbaum (the Grünbaum Heirs) to recover a painting by Egon Schiele entitled *Russian Prisoner of War* (1916) (the "Artwork") which, upon information and belief, is currently located in the City of Chicago at the Art Institute of Chicago, 111 South Michigan Avenue, Chicago IL 60603  ("the Art Institute").



FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM    INDEX NO. 654838/2022

NYSCEF DOC. NO. 27    RECEIVED NYSCEF: 03/09/2022

2.      The Artwork, pictured above left, is catalogued in Kallir, Jane, *Egon Schiele: The Complete Works* (Harry Abrams 1990 & 1998) as a drawing, designated D. 1839.

3.      An image, pictured above right) appearing on the Artwork's recto is catalogued in Kallir, Jane, *Egon Schiele: The Complete Works* (Harry Abrams 1990 & 1998) as a drawing, designated D. 1449.

4.      Plaintiffs assert causes of action for replevin and declaratory judgment.

5.      The Artwork is a unique chattel as defined by CPLR 7109(a) which authorizes injunctive relief.

6.      The Nazi regime stole the Artwork from Grünbaum while he was imprisoned in the Dachau Concentration Camp, where the Nazis tortured him and compelled him to sign an unlawful power of attorney giving his wife authority to convey his property, before murdering him.

7.      This action is related to *Reif v. Nagy* because the Hon. Charles Ramos determined conveyances pursuant to the unlawful Dachau power of attorney to be invalid because "[a] signature at gunpoint cannot lead to a valid conveyance." *Reif v. Nagy,* 61 Misc.3d 319, 326, 80 N.Y.S.3d 629, 634 (Sup. Ct. New York County Comm. Div. 2018), *aff'd,* 175 A.D.3d 107, 106 N.Y.S.3d 5 (1st Dept. 2019), *leave to review declined,* 25 N.Y.3d 986, 125 N.Y.S.3d 76 (May 24, 2022).

8.      The Artwork was among artworks stolen from Grünbaum by the Nazis based on the unlawful Dachau power of attorney.

**THE PARTIES**

9.      Plaintiffs are co-heirs of the estate of Grünbaum, a Viennese Jewish cabaret performer (born in Brno, Moravia) who was arrested by the Gestapo on March 22, 1938,

2

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM          INDEX NO. 654838/2022
NYSCEF DOC. NO. 27                                      RECEIVED NYSCEF: 02/09/2022

imprisoned in the Dachau Concentration Camp, despoiled of all of his property by the Nazi

regime, and murdered in Dachau on January 14, 1941.

10.     Plaintiffs Reif and Fraenkel are co-trustees of the testamentary Leon Fischer Trust

for the Life and Work of Fritz Grünbaum (the "Fischer Trust") and hold valid letters of

trusteeship representing the late Leon Fischer's 50% ownership interest in Grünbaum's estate.

11.     Plaintiff Reif is a resident of the City, County and State of New York.

12.     Plaintiff Fraenkel is a resident of the State of Florida.

13.     Plaintiff Vavra is a resident of the Czech Republic who owns a 50% interest in

Grünbaum's estate.

14.     Defendant the Art Institute is a museum and institution located at 111 South

Michigan Avenue, Chicago IL, 60603.

15.     The Artwork, upon information and belief, is presently located at the Art Institute

bearing the inventory number 1966.172 and is being sued herein *in rem.*

## ALLEGATIONS SUPPORTING JURISDICTION IN NEW YORK COUNTY

16.      From late 1956 until around 1966, the Artwork was located in New York County

in the possession of the Galerie St. Etienne on 57th Street.

17.     From late 1956 until around 1966, Grünbaum's heirs were entitled to possession

and all right, title and interest in and to the Artwork which was part of Grünbaum's estate.

18.     From late 1956 until the present, one or more of Grünbaum's heirs resided and

continues to reside in New York County.

19.     Without any right, title or interest in the Artwork, and without conducting a

reasonable provenance inquiry that would have shown that the Artwork belonged to New York

3

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:44 PM    INDEX NO. 654838/2022
NYSCEF DOC. NO. 27                                RECEIVED NYSCEF: 02/09/2022

residents, the Art Institute of Chicago tortiously caused Galerie St. Etienne to transport the Artwork outside New York County.

20.    Because this tort occurred in New York County, this court has long arm jurisdiction over this controversy under Section 302 of the New York Civil Practice Law and Rules.

21.    Because this controversy seeks declaratory relief and involves the rights of a decedent's estate held by residents of New York to sue for a stolen chattel, this court has jurisdiction to grant declaratory relief and exercise jurisdiction over non-domiciliaries for this "chose in action" involving a chattel located outside New York for the reasons set forth in *Estate of Stettiner,* 148 A.D.3d 184 (First Dept. 2017).

## ALLEGATIONS SUPPORTING PLAINTIFFS' STANDING

22.    On July 16, 1938, Nazis forced Grünbaum to sign a power of attorney in the Dachau Concentration Camp permitting his wife Elisabeth to liquidate his assets and hand the assets over to the Nazi regime. **Exhibit A** at 3. (true copy of the power of attorney ("Vollmacht") (including a certified English translation))**.**

23.    From 1938 to 1939, Elisabeth was forced to liquidate Fritz's assets pursuant to Nazi decrees.

24.    On Grünbaum's death (in the Dachau Concentration Camp where he was imprisoned), a Vienna notary certified that Fritz had no property, there was nothing left. **Exhibit B** at 3 (true copy of the notary's certification).

25.    On October 5, 1942 Elisabeth was deported to the Maly Trostinec death camp in Minsk, where she was murdered.

4

26.     Elisabeth Grünbaum's June 1939 Jewish Property Declaration shows that all of her property had been taken by the Nazis before she was murdered. E**xhibit C** ( true copy of Elisabeth's Jewish Property Declaration (including a certified English translation); *see* **Exhibit C** at 3, 28 (stamp "Erledigt" ["done" or "completed"] and "Gesperrt" ["closed"]).

27.     As explained more fully below, these documents show conclusively that the Grünbaums lost Grünbaum's art collection prior to their deaths.

28.     Austrian government records demonstrate that no Grünbaum family member could have legally recovered the art collection following the deaths of Fritz and Elisabeth Grünbaum.

29.     Austrian government records show that from 1941 until 2002 Grünbaum had no heirs appointed by an Austrian court and no Austrian decrees of distribution were issued.

30.     Under Austrian law, for a family member to transfer a decedent's assets, that family member must first be declared an heir and receive a decree of distribution.

31.     Thus, the lack of any heirship or distribution decrees from 1941 until 2002 in Austrian government files signifies, as a matter of law, that no family member could have taken title to Grünbaum's art collection, or title to any individual artworks belonging to Grünbaum.

32.     Pursuant to a Certificate of Heirship issued by the District Court Innere Stadt Vienna dated September 12, 2002, Leon Fischer ("Fischer") and Milos Vavra ("Vavra") were each declared an heir of Fritz Grünbaum's estate entitled to an undivided fifty percent (50%) share. **Exhibit D** (true copy of the Certificate of Heirship).

33.     Prior to District Attorney Robert Morgenthau's seizure of Grünbaum's *Dead City III* at the Museum of Modern Art in New York City in 1999, neither Fischer nor Vavra had any idea that Grünbaum's art collection survived World War II.

5

FILED: NEW YORK COUNTY CLERK 02/04/2022 06:41 PM    INDEX NO. 654838/2022

NYSCEF DOC. NO. 27    RECEIVED NYSCEF: 02/04/2022

34.    Pursuant to a last will and testament dated February 2012, Fischer appointed Reif and Fraenkel as executors of his estate.

35.    Fischer died on August 16, 2013.

36.    Upon learning of the art collection's existence, Fischer and Vavra diligently pursued Grönbaum's art collection.

37.    Letters testamentary were issued to Reif and Fraenkel and Fischer's will was duly probated.

38.    Fischer's will created the Leon Fischer Trust for the Life and Work of Fritz Grünbaum (the "Fischer Trust") to pursue Grönbaum's artworks with proceeds going to charity.

39.    Reif and Fraenkel are now co-trustees of the Fischer Trust and hold valid letters of trusteeship.

**ALLEGATIONS SUPPORTING RECOVERY OF THE STOLEN ARTWORK**

40.    Otto (Nirenstein) Kallir (1894-1978) was a Viennese art dealer who worked at the Wurthle Gallery in Vienna before founding his own art gallery in 1923 called the "Neue Galerie".

41.    In 1925 the Wurthle Gallery displayed 22 artworks from Fritz Grunbaum's art collection.  A true copy of the 1925 Wurthle Gallery catalogue is attached hereto as **Exhibit E**.

42.    In 1928, Fritz Grünbaum permitted Otto Kallir to enter his Vienna apartment (in Grünbaum's absence) to select from among Grünbaum's Schieles the works that Kallir wanted to display at an exhibition commemorating the tenth anniversary of Schiele's death.  A true copy of the Kallir/Grunbaum 1928 correspondence ("the 1928 Correspondence") is attached hereto as **Exhibit F**.

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM
NYSCEF DOC. NO. 27

INDEX NO. 654838/2022
RECEIVED NYSCEF: 02/09/2022

43.     The 1928 Correspondence was donated by the Kallir family to the Austrian National Gallery (the Belvedere) as a gift of the Neue Galerie's business records following Otto Kallir's death and is currently maintained by the Austrian government as part of the Neue Galerie archive.

44.     The 1928 Correspondence shows that Grünbaum trusted Kallir.

45.     The 1928 Correspondence shows that Kallir was familiar with the contents of Grünbaum's art collection, in particularly Grünbaum's Schieles.

46.     The 1928 Correspondence lists four oils and 21 drawings and watercolors either by name or by description, including "Ich liebe Gegensatze" (1912) or "I Love Antitheses" (1912).

47.     In 1930, Otto Kallir published a catalogue raisonné of Egon Schiele's oil paintings that documented Fritz Grünbaum's ownership of works including "Dead City III".

48.     The foregoing pre-war documentation was used by scholars and historians to trace artworks looted from Fritz Grünbaum's art collection when portion of the collection after World War II when portions of the collection surfaced in Berne, Switzerland.

49.

50.     On April 26, 1938, the Nazi regime decreed all Jewish property in excess of 5,000 Reichsmarks ("RM") to be available to the Nazi Reich for Field Marshal Goering's Four Year Plan to build the Nazi war machine.

51.     The April 26, 1938 decree required all Jews with property in excess of 5,000 RM to declare their assets quarterly until the assets were gone or until the Jews left the Reich.

52.     Jews were forbidden to transfer declared property, including art, without permission from Nazi authorities.

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM    INDEX NO. 654838/2022
NYSCEF DOC. NO. 27                                          RECEIVED NYSCEF: 02/09/2022

53.     As part of the process of securing Jewish assets to prevent transfers or sales, the Jewish Property Transaction Office (Vermögensverkehrsstelle) of Vienna commissioned inventories and valuation reports.   The Jewish victims were charged a fee for this process.

54.     A Vermögensverkehrsstelle inventory thus signified that Jewish assets were secured by the Nazi government.

55.     Pursuant to that process, the Vermögensverkehrsstelle commissioned Franz Kieslinger, an expert of the Dorotheum, to inventory Grünbaum's art collection while Grünbaum was in the Dachau Concentration Camp in 1938.

56.     The Kieslinger Inventory is part of the Elisabeth and Fritz Grunbaum Jewish Property files maintained in the Austrian State Archives. **Exhibit E** at 3, 14-16, 27, 40-43. (true copy of Fritz Grönbaum's July 16, 1938 Jewish Property Declaration, which declares the art collection and includes the Kieslinger Inventory).

57.     The Dorotheum was a Nazi-controlled auction house in Vienna used by the Nazi regime to sell art plundered from Jews and turn the proceeds over to the Nazi Reich.

58.     The Kieslinger Inventory shows Grönbaum's art collection to be valued at 5,791 RM.  **Exhibit G** at 16, 42.

59.     Grönbaum's art collection contained at least eighty-one works by the artist Egon Schiele.

60.     The stamps "Erledigt" ["done" or "completed"] and "Gesperrt" ["closed" or "blocked"] were official Nazi stamps indicating that the property of the Jewish person in question had been spoliated.

61.     Fritz's Jewish Property Declarations bears "Erledigt" and "Gesperrt" stamps. **Exhibit G** at 17, 43.

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM

NYSCEF DOC. NO. 27

INDEX NO. 654838/2022

RECEIVED NYSCEF: 02/09/2022

62.     Because the art collection was inventoried and described in the Jewish Property Declarations, the "Erledigt" and "Gesperrt" stamps demonstrate conclusively that the Nazis stole Fritz Grünbaum's art collection.

63.     In November and December 1938, surrounding the Kristallnacht pogrom, the Nazis passed additional laws to steal Jewish property and to forbid Jews from engaging in property transactions without Nazi approval.

64.     One of the laws provided for "Aryan" trustees to be appointed to liquidate Jewish property.

65.     All proceeds from sales or transfers of Jewish property went to the Nazi Reich, with commissions to the Aryan trustees.

66.     Some time prior to January 1939, Vienna attorney Ludwig Rochlitzer was appointed Aryan trustee of the "property of the Grünbaums." **Exhibit H** (a true copy of a January 31, 1939 letter from Rochlitzer to Elisabeth announcing Rochlitzer's appointment as Aryan trustee for the Grünbaum property, together with certified English translation).

67.     From the time of Rochlitzer's appointment as Aryan trustee, neither Fritz nor Elisabeth had access to Fritz's art collection.

68.     Grünbaum never voluntarily abandoned his art collection during his lifetime.

**U.S. State Department Warns U.S. Museums, Colleges And Art Dealers Against Acquiring Potentially Stolen Artworks From Europe In Highly Publicized Campaign, Thus Putting The World On Notice**

69.     Following World War II, Nazi looting of artworks from Jewish victims received tremendous media attention in the United States.

9

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM
NYSCEF DOC. NO. 27

INDEX NO. 654838/2022
RECEIVED NYSCEF: 02/09/2022

70.     Following World War II, the U.S. State Department put out bulletins to museums, universities, art dealers and others urging U.S. citizens to be vigilant against acquiring Nazi-looted artwork and asking for assistance in returning stolen art.

71.     Media and government efforts put the art and museum community on heightened notice that acquiring artworks that were in Europe after 1933 and created prior to 1946 without complete provenances.

72.     Accordingly, any U.S. person acquiring artworks that were in Europe after 1933 and created prior to 1946 without complete provenances cannot be prejudiced by the inaction of a Holocaust victim family in seeking to recover artworks stolen by Nazis because that person should have exercised vigilance prior to and after acquiring the artwork.

73.     The Art Institute was on inquiry notice prior to acquiring the Artwork that it might be stolen and failed to exercise appropriate diligence in acquiring the Artwork or to make reasonable efforts to ascertain the true owners of the Artwork prior to taking possession.

74.     New York law protects the right of the owner whose property has been stolen to recover that property, even if it is in the possession of a good-faith purchaser for value.

*Solomon R. Guggenheim Found. v. Lubell,* 77 NY2d 311, 317-18 [1991]

75.     New York places the burden of investigating the provenance of a work of art on the potential purchaser in furtherance of discouraging the trade in stolen art. *Solomon R. Guggenheim Found. v. Lubell,* 77 N.Y.2d 311, 320-21 (1991).

**Grünbaum's Art Collection Surfaces In Switzerland In 1956**

76.     The Artwork is featured in a 1956 Gutekunst & Klipstein Sales catalogue of Egon Schiele's artworks as number 39. **Exhibit I (**a true copy of the 1956 Gutekunst & Klipstein Schiele sale catalogue, with certified English translation) at 26.

10

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM

NYSCEF DOC. NO. 27

INDEX NO. 654838/2022

RECEIVED NYSCEF: 02/09/2022

77.    All artworks in the 1956 Gutekunst & Klipstein sales catalogue were stolen from Grünbaum, including the famous *Dead City III*, which was seized by the District Attorney Robert Morgenthau from the Museum of Modern Art in New York City in 1998. *Reif v. Nagy,* 175 A.D.3d 107 at 110, 114, 121.

78.    According to a Gutekunst & Klipstein invoice September 18, 1956 Otto Kallir purchased *Dead City III*, from Gutekunst & Klipstein together with 19 other artworks by Egon Schiele.  A true copy is attached hereto as **Exhibit J**.

79.    Examination of pre-war documentation prior to acquisition of the Artwork would have revealed evidence that it had been stolen from Grünbaum.

**Bakalar Sues The Grünbaum Heirs To Extinguish Rights In Grünbaum's Art Collection Using Fabricated Evidence**

80.    In 2005, Fischer and Vavra were sued by David Bakalar, a Massachusetts resident who sought to extinguish their rights in an Egon Schiele drawing stolen from Grünbaum titled *Seated Woman with Bent Left Leg* in an action captioned *Bakalar v. Vavra.*

81.    Bakalar had sought to auction *Seated Woman With Bent Left Leg* at Sotheby's in New York and London.

82.    In doing so, Bakalar promoted the false story that Grünbaum's sister-in-law Mathilde Lukacs obtained Grünbaum's art collection and sold it to Swiss art dealer Eberhard Kornfeld in 1956.

83.    The "Mathilde Lukacs" story, first floated in 1998 by Eberhard Kornfeld after *Dead City III's* seizure, has long been derided by Holocaust scholars as implausible because Lukacs was herself imprisoned in Belgium during World War II after escaping Vienna.

84.    Bakalar succeeded in excluding as untimely an expert report of historian Dr. Jonathan Petropoulos debunking the Mathilde Lukacs provenance and excluding an expert report

11

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM          INDEX NO. 654838/2022

NYSCEF DOC. NO. 27                                        RECEIVED NYSCEF: 02/09/2022

on Czech law of Dr. Milan Kostohryz showing that the Vavra line of heirs was persecuted and trapped behind the Iron Curtain in Communist Czechoslovakia.

85.     Because of these exclusions of key evidence and because Eberhard Kornfeld denied the Grünbaum Heirs' handwriting expert access to handwriting samples of Mathilde Lukacs that would have demonstrated forgeries, the *Bakalar v. Vavra* case was not fully or fairly litigated.

86.     In 2006, the Southern District of New York denied Fischer's and Vavra's request to amend the pleadings to permit them to pursue additional artworks owned by Fritz Grünbaum. *Bakalar v. Vavra,* 237 F.R.D. 59 (S.D.N.Y. 2006).

87.     From 2005 to 2012, Fischer and Vavra unsuccessfully sought in *Bakalar v. Vavra* to assert a possessory interest in *Seated Woman with Bent Left Leg*.

88.     Following a bench trial, the district court concluded that Bakalar could not establish by a preponderance of the evidence that Grünbaum voluntarily relinquished possession of the drawing or that he did so intending to pass title. *Bakalar v. Vavra,* 819 F.Supp.2d 293 at 300.

89.     The district court further found that Mathilde Lukacs did not acquire valid title to the drawing.  819 F.Supp.2d 293 at 302-303.

90.     Despite Bakalar's inability to prove legal title, the Hon. William Pauley determined that inactions of predecessors-in-interest of Leon Fischer and Milos Vavra extinguished possessory rights of the Grünbaum Heirs, as against Bakalar, a Massachusetts purchaser who purchased an artwork in New York from Otto Kallir of Galerie St. Etienne, who had in turn purchased *Seated Woman with Bent Left Leg* from the 1956 Gutekunst & Klipstein sale together with 18 other Schiele artworks, including *Dead City III.*   819 F.Supp.2d 293, 305

(S.D.N.Y. 2011). The district court invoked the doctrine of laches to reach this result. The court applied laches in a manner inconsistent with the approach of New York common law courts to applying the equitable doctrine of laches and in a manner inconsistent with public policy protecting true owners of stolen artworks.

91.    On October 11, 2012, the Second Circuit Court of Appeals, in a summary (non-precedential) order, affirmed Judge Pauley's decision by finding it not clearly erroneous. *Bakalar v. Vavra*, 500 Fed. Appx. 6 (2d Cir. 2012).

92.    In doing so, the Second Circuit mistakenly relied on a fabricated version of the Grünbaum Heirs' case offered by the plaintiff that was nowhere contained in the record and --- when raised for the first time on appeal by plaintiff ---- had been vigorously contradicted by Vavra and Fischer. *Bakalar v Vavra*, 500 Fed Appx. 6, 7-8 (2d Cir. 2012) ("Vavra and Fischer's hypothesis—that the Nazis stole the Drawing from Grunbaum only to subsequently return or sell it to his Jewish sister-in-law—does not come close to showing that the district court's finding was clearly erroneous.").

93.    To underscore, neither Vavra nor Fischer ever argued that Nazis returned or sold artworks to Mathilde Lukacs (and the record contained no evidence to support this manufactured narrative).

94.    To the contrary, from the first pleadings, Vavra and Fischer argued that the story that Mathilde Lukacs sold Grünbaum's art collection to Gutekunst & Klipstein was entirely a fabrication.

95.    Also from the first pleadings, Vavra and Fischer argued that even if, assuming arguendo, the Mathilde Lukacs story were true, Lukacs would not have had good title, which, in turn, meant that she could not have given good title to Bakalar.

13

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM

NYSCEF DOC. NO. 27

INDEX NO. 654838/2022

RECEIVED NYSCEF: 02/09/2022

96.    *In Matter of Flamenbaum*, 22 N.Y.3d 962, 966 (2013), decided after *Bakalar*, clarified that, in the context of missing testimony relevant to a laches defense, the proponent of the defense must show that the missing evidence would have been relevant to establishing legal title. ("although the decedent's testimony may have shed light on how he came into possession of the (artwork), we can perceive of no scenario whereby the decedent could have shown that he held (good) title").

**In The Wake Of *Bakalar*, And Prior to *Reif v. Nagy*, Three Art Dealers Conspire To Strip German Lost Art Database (www.lostart.de) of Grünbaum Claims**

97.    During the course of the *Bakalar* litigation, Grünbaum's heirs were criticized for not having registered search requests related to Grünbaum's art collection on the Lost Art Database located at www.lostart.de.

98.    Accordingly, Vavra and Fischer registered the "search requests" based on the Kieslinger inventory and other pre-World War II material to artworks that appeared circumstantially to fit the description of artworks lost by Grünbaum.

99.    Below is the Lost Art Database's description of what "search requests" are:

*Lost Art Database*

*The Lost Art Database documents cultural property expropriated as a result of Nazi persecution, especially from Jewish owners, between 1933 and 1945 ("Nazi-looted art"), or for which such a loss cannot be ruled out. With the help of the publication of so-called Search Requests and Found-Object Reports, former owners or their heirs are to be brought together with current owners and thus support all stakeholders in finding a just and fair solution.*

*The Lost Art Database also contains reports on cultural property that was removed as a result of the Second World War ("trophy art"). Their publication is intended to support solutions in accordance with international law. The Lost Art Database is accessible worldwide free of charge. www.lostart.de/en/start*

14

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM

NYSCEF DOC. NO. 27

INDEX NO. 654838/2022

RECEIVED NYSCEF: 03/09/2022

100.    On September 23, 2015, German attorney Jutta von Falkenhausen wrote to the Lost Art Database on behalf of Galerie Kornfeld Verlag AG (Bern) represented by Christine Stauffer, Galerie St. Etienne (New York) represented by Jane Kallir, and Richard Nagy Ltd. (London) represented by Richard Nagy. **Exhibit K** (true copy of von Falkenhausen's letter)**.**

101.    Relying on *Bakalar v. Vavra* and on Austrian decisions that, in turn, relied on *Bakalar v. Vavra* and the fabricated "Mathilde Lukacs" story, von Falkenhausen demanded that the Lost Art Database delist certain of the Grünbaum heirs' claims.

102.    Von Falkenhausen's request included Schiele's *Dead City III* and the *Red Blouse*, both of which are located at the Leopold Museum in Vienna.  **Exhibit K** at 12.

103.    Over the Grünbaum Heirs' objections, the Lost Art Database erased the Grünbaum Heirs' claims, in particular, the claims relating to artworks in the 1956 Gutekunst & Klipstein Schiele sale.

104.    Today, if one types in the name "Grünbaum" one will find a number of requests. Under "status" it states "This announcement is contradicted by third parties." **Exhibit L** (Mountain Landscape (Farmhouse in the Tirol) Lost art-ID 478864.  On August 26, 2018, the New York Times reported on the dispute between the Grünbaum Heirs and the Lost Art Database in the article by William Cohan: *Jewish Heirs Take on an Art Foundation That Rights Nazi Wrongs* **Exhibit M**. https://www.nytimes.com/2018/08/26/arts/design/nazi-art-egon-schiele-fritz-grunbaum.html.

### *Reif v. Nagy* Debunks Fabricated Mathilde Lukacs Provenance

105.    In November 2015, shortly after learning that two other Egon Schiele artworks from the 1956 Gutekunst & Klipstein sale catalogue (*Woman Hiding Her Face* and *Woman In Black Pinafore*) were displayed by London art dealer Richard Nagy at the Park Avenue Armory,

15

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM    INDEX NO. 654838/2022

NYSCEF DOC. NO. 27                                                      RECEIVED NYSCEF: 02/09/2022

Reif, Fraenkel and Vavra commenced *Reif v. Nagy* in the New York State Supreme Court, New York County.

106.    The Supreme Court, Ramos, J., after carefully considering expert testimony from Dr. Petropoulos and Dr. Kostohryz that had been excluded in the *Bakalar* case, granted summary judgment on the plaintiffs' replevin and conversion claims.  *Reif v. Nagy,* 61 Misc.3d at 330, 80 N.Y.S.3d at 367.

107.    Justice Ramos found that the Nazis confiscated Fritz Grünbaum's artworks by forcing him to sign the power of attorney to his wife, who was herself later murdered by the Nazis, and that the act of signing the power of attorney was involuntary: "[a] signature at gunpoint cannot lead to a valid conveyance." *Id.,* 61 Misc.3d at 326, 80 N.Y.S.3d at 634.

108.    In affirming, the Appellate Division, First Department, determined that the power of attorney the Nazis forced Fritz to execute in favor of Elisabeth while Fritz was imprisoned in Dachau was not voluntarily executed, "reject[ing] the notion that a person who signed a power of attorney in a death camp can be said to have executed the document voluntarily." *Reif v. Nagy,* 175 A.D.3d 107, 129, 106 N.Y.S.3d 5, 21 (First Dept. 2019).

109.    The First Department concluded Elisabeth was never able to convey good title. 175 A.D.3d at 129, 106 N.Y.S.3d at 21.

110.    The First Department determined that Grönbaum's art collection "never legally left Austria."  175 A.D.3d at 111.

111.    The First Department also determined that the art collection was in Austria on June 30, 1939, after Grönbaum's sister-in-law Mathilde Lukacs had fled Vienna for Belgium. 175 A.D.3d at 112.

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM

NYSCEF DOC. NO. 27

INDEX NO. 654838/2022

RECEIVED NYSCEF: 02/09/2022

112.    Unlike the *Bakalar* court, *Reif v. Nagy* carefully analyzed the historical circumstances and rejected decisively the arguments that Grönbaum's sister-in-law Mathilde Lukacs had laundered Grönbaum's artworks through Switzerland.

113.    The Appellate Division carefully analyzed overwhelming evidence suggesting that Mathilde Lukacs never had custody of the art collection, and certainly lacked custody during the War when she was imprisoned.

114.    The Appellate Division further noted:

> We note that there are no records, including invoices, checks, or receipts documenting that the Artworks were purchased by Kornfeld from Mathilde. Moreover, even if Mathilde had possession of Grunbaum's art collection, possession is not equivalent to legal title.

*Id.* at 127.

115.    The First Department also analyzed record evidence not available to the *Bakalar* court, such as post-*Bakalar* revelations involving Eberhard Kornfeld's dealings with Cornelius Gurlitt and Kornfeld's trafficking other Nazi-looted artworks.

116.    Thus, *Reif v. Nagy's* factual findings are based on a developed factual record and supercede the factual record in *Bakalar*, further making *Bakalar* an untrustworthy precedent.

117.    In affirming, the First Department determined that relative to the art dealer (Nagy), Reif, Frankel and Vavra had "superior ownership and possessory interests" in the Schiele artworks. *Id.,* 175 A.D.3d at 132, 106 N.Y.S.3d at 24.

118.    Unlike *Bakalar, Reif v. Nagy* rejected the proposition that the decedent Mathilde Lukacs's missing testimony could have prejudiced Nagy because "Mathilde could not have shown she had good title to the artworks and her testimony would not have been probative." 175 A.D.3d 107 (First Dept. 2019).

17

FILED: NEW YORK COUNTY CLERK 03/09/2022 06:41 PM

NYSCEF DOC. NO. 27

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/09/2022

119.    In rejecting Nagy's "prejudice" argument, *Reif v. Nagy* relied on the New York Court of Appeals 2013 decision clarifying that a the proponent of the laches defense must show that a decedent's missing testimony would have supported a claim of title. *Matter of Flamenbaum*, 22 N.Y.3d 962, 966 (2013).

120.    *Reif v. Nagy's* trustworthy application of *Matter of Flamenbaum* constitutes an intervening change or clarification of law that further renders the *Bakalar* precedent unreliable.

121.    Because Nagy refused to return the artworks, the Appellate Division affirmed an award of prejudgment interest in the amount of $700,964.44.  *Reif v. Nagy,* 199 A.D.3d 616, 158 N.Y.S.3d 89 (1st Dept. 2021).

122.    Nagy persisted in challenging the Heirs' possessory interest in artworks stolen from Grünbaum until the Court of Appeals' May 24, 2022 denial of Nagy's motion for leave to appeal.  *Reif v. Nagy,* 38 N.Y.3d 908, 168 N.Y.S.3d 720 (2022).

123.    The Court of Appeals' May 2022 decision established a possessory interest in Grünbaum's heirs under New York law to artworks stolen from Fritz Grünbaum, by the Nazis, such as Schiele's *Russian Prisoner of War (1916)* in the Art Institute's possession.

**Schieles Stolen From Grünbaum Featured in 1956 Gutekunst & Klipstein Sales Catalogue**

124.    The Artwork is featured in a 1956 Gutekunst & Klipstein Sales catalogue of Egon Schiele's artworks.

125.    All artworks in the 1956 Gutekunst & Klipstein sales catalogue were stolen from Grünbaum, including the famous *Dead City III*, which was seized by District Attorney Robert Morgenthau from the Museum of Modern Art in New York City in 1998. *Reif v. Nagy,* 175 A.D.3d 107 at 110, 114, 121 (1st Dept. 2019). The Gutekunst & Klipstein sales catalogue made no mention of Mathilde Lukacs in the provenance of the artworks.

18

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:44 PM
NYSCEF DOC. NO. 27

INDEX NO. 654838/2022
RECEIVED NYSCEF: 02/09/2022

126.    In the 1997 Museum of Modern Art Catalogue:  *"Egon Schiele: the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Dead City III* (1911) appears as follows (with no mention of Mathilde Lukacs):



Arthur Roessler, Vienna; Alfred Spitzer, Vienna; Fritz Grünbaum, Vienna; Gutekunst & Klipstein, Bern, Galerie St. Etienne, New York; Rudolf Leopold, Vienna.  **Exhibit N** at 144.



127.    In the 1997 Museum of Modern Art Catalogue:  *"Egon Schiele : the Leopold collection, Vienna, Texts by Magdalena Dabrowski and Rudolf Leopold* (Yale University Press), the provenance of *Red Blouse ("Rote Bluse")* (1913) appears as follows (with no mention of

19

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM

NYSCEF DOC. NO. 27

INDEX NO. 654838/2022

RECEIVED NYSCEF: 02/09/2022

Mathilde Lukacs): Fritz Grunbaum, Vienna; Heirs of Fritz Grunbaum, The Netherlands; Galerie Kornfeld, Bern (auction), 1981; Rudolf Leopold, Vienna. **Exhibit N** at 220.

## AS AND FOR A FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT

128.   Plaintiffs repeat and reallege the foregoing paragraphs as if set forth herein.

129.   CPLR 3001 authorizes the Court to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

130.   A justiciable controversy exists concerning the ownership of the Artwork that only the Supreme Court may determine.

131.   Therefore, Plaintiffs request a declaratory judgment that the Artwork is the property of Plaintiffs.

**WHEREFORE,** Plaintiffs demand: (1) a declaratory judgment that Plaintiffs own the Artwork; (2) an award of costs and interest; and (3) such other and further relief the Court deems just, proper and equitable.

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM
NYSCEF DOC. NO. 27

INDEX NO. 654838/2022
RECEIVED NYSCEF: 02/09/2022

Dated: New York, New York
December 14, 2022

Respectfully submitted,


**DUNNINGTON BARTHOLOW & MILLER LLP**
*Attorneys for Plaintiffs*


By:  _/s/ Raymond J. Dowd_____
Raymond J. Dowd
Claudia G. Jaffe
230 Park Avenue 21st Floor
New York, New York 10169
Telephone: 212-682-8811
Facsimile: 212-661-7769
rdowd@dunnington.com
cjaffe@dunnington.com

21

FILED: NEW YORK COUNTY CLERK 02/09/2022 06:41 PM
NYSCEF DOC. NO. 27

INDEX NO. 654838/2022
RECEIVED NYSCEF: 02/09/2022

## VERIFICATION

TIMOTHY M. REIF, affirms, subject to penalties of perjury under the laws of the State

of New York as follows:

1. I am a plaintiff in this action and an attorney admitted to practice in the State of New

   York.

2. I have read the foregoing Complaint with exhibits, know the contents thereof and the

   same are true and correct to my own knowledge, except where alleged upon

   information and belief, and with respect to those allegations, I believe them to be true.

3. The grounds of my belief as to all matters not stated to upon my knowledge are

   documents, papers and data contained in the files pertaining to this matter.

December 14, 2022

_____
TIMOTHY M. REIF

**FILED: NEW YORK COUNTY CLERK 03/17/2023 10:13 AM**
NYSCEF DOC. NO. 32

INDEX NO. 654839/2022
RECEIVED NYSCEF: 03/16/2023

At IAS Part $\frac{53}{}$ of the Supreme Court of the State of New York, held in and for the County of New York, at the Courthouse located at 60 Centre Street, New York, New York on the 16 day of _March_____, 2023

PRESENT: **HON. ANDREW BORROK**
                                **J.S.C.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA,<br><br>                    *Plaintiffs,*<br><br>            -against -<br><br>THE MUSEUM OF MODERN ART,<br><br>                    Defendant,<br><br>An Artwork *Prostitute* (1912) by the Artist Egon Schiele,<br>                    *Defendant-in-rem.* | Index No.: 654839/2022<br><br>**ORDER TO SHOW CAUSE**<br><br>Mot. Seq. 001 |

Upon reading and filing of the Verified Complaint, the Affirmation of Claudia G. Jaffe with Exhibits dated March 9, 2023, the memorandum of law and upon all of the papers and proceedings had to date herein; it is

**ORDERED** that Defendants appear and show cause at Part ___53___, Room __238__, at the Courthouse located at 60 Centre Street New York, New York, on the _10_ day of __May_____ 2023, at __2__ a.m./p.m. or as soon thereafter as counsel may be heard, why an order should not be entered:

(i)    Pursuant to CPLR 602, consolidating for briefing and disclosure purposes this action and six related actions identified on Exhibit A annexed hereto (the "Related Actions"); and

FILED: NEW YORK COUNTY CLERK 03/17/2023 10:13 AM    INDEX NO. 654839/2022

NYSCEF DOC. NO. 32                                           RECEIVED NYSCEF: 03/16/2023

(ii)    Granting such other and further relief that the Court deem just, proper and
equitable.

**ORDERED** that opposition papers, if any, be filed and served on or by

*April 11, 2023* ; and it is further

~~ORDERED that reply papers, if any, be served on or by~~ _____ ; and
~~it is further~~

**ORDERED** that service of this Order along with the papers upon which it is based on

Defendants in this action and upon Defendants in the Related Actions shall be made by overnight

delivery through U.S. Postal Service Priority Express Mail Service or Federal Express on the

persons listed below _____ at the addresses stated below on or by

*March* 21, 2023 be deemed good and sufficient service thereof.

The Museum of Modern Art
11 West 53rd Street
New York, NY 10019

The Morgan Library and Museum
c/o Harry Sandick, Esq.
1133 Avenue of the Americas
New York, NY 10036

The Allen Museum
87 N. Main St.
Oberlin, OH 44074

The Santa Barbara Museum of Art
1130 State St.
Santa Barbara CA 93101

The Art Institute of Chicago
111 South Michigan Avenue,
Chicago, IL 60603

ENTER:

_____
J.S.C.

**HON. ANDREW BORROK**
**J.S.C.**

FILED: NEW YORK COUNTY CLERK 03/17/2023 10:13 AM

NYSCEF DOC. NO. 32

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/16/2023

## EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| |
|---|
| TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA, <br> *Plaintiffs,* <br><br> -against - <br><br> THE MUSEUM OF MODERN ART, <br><br> Defendant, <br><br> An Artwork *Prostitute* (1912) by the Artist Egon Schiele, <br><br> *Defendant-in-rem.* |

CAPTION 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| |
|---|
| TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRUNBAUM and MILOS VAVRA, <br> *Plaintiffs,* <br><br> -against - <br><br> THE MUSEUM OF MODERN ART, <br><br> *Defendant,* <br><br> An Artwork *Girl Putting on Shoe* (1910) by the Artist Egon Schiele, <br><br> *Defendant-in-rem.* |

CAPTION 2

FILED: NEW YORK COUNTY CLERK 03/17/2023 10:13 AM

NYSCEF DOC. NO. 32

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/16/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TIMOTHY REIF and DAVID FRAENKEL, as Co-
Trustees of the LEON FISCHER TRUST FOR THE
LIFE AND WORK OF FRITZ GRUNBAUM and
MILOS VAVRA,

    *Plaintiffs,*

 -against -

THE MORGAN LIBRARY & MUSEUM, NEW
YORK,

    Defendant,

An Artwork *SELF PORTRAIT* (1910) by the Artist
Egon Schiele,

    *Defendant-in-rem.*

CAPTION 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TIMOTHY REIF and DAVID FRAENKEL, as Co-
Trustees of the LEON FISCHER TRUST FOR THE
LIFE AND WORK OF FRITZ GRUNBAUM and
MILOS VAVRA,

    *Plaintiffs,*

 -against -

THE ALLEN MEMORIAL ART MUSEUM,

    *Defendant,*

An Artwork *GIRL WITH BLACK HAIR* (1911) by the
Artist Egon Schiele,

    *Defendant-in-rem.*

CAPTION 4

FILED: NEW YORK COUNTY CLERK 03/17/2023 10:13 AM

NYSCEF DOC. NO. 32

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/16/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TIMOTHY REIF and DAVID FRAENKEL, as Co-
Trustees of the LEON FISCHER TRUST FOR THE
LIFE AND WORK OF FRITZ GRUNBAUM and
MILOS VAVRA,

    *Plaintiffs,*

-against -

THE ART INSTITUTE OF CHICAGO,

    *Defendant,*

An Artwork *RUSSIAN PRISONER OF WAR* (1916) by
the Artist Egon Schiele,

    *Defendant-in-rem.*

CAPTION 5

---

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TIMOTHY REIF and DAVID FRAENKEL, as Co-
Trustees of the LEON FISCHER TRUST FOR THE
LIFE AND WORK OF FRITZ GRUNBAUM and
MILOS VAVRA,

    *Plaintiffs,*

-against -

THE SANTA BARBARA MUSEUM OF ART,

    *Defendant,*

An Artwork *PORTRAIT OF THE ARTIST'S WIFE*
(1915) by the Artist Egon Schiele,

    *Defendant-in-rem.*

CAPTION 6

FILED: NEW YORK COUNTY CLERK 03/17/2023 10:13 AM

NYSCEF DOC. NO. 32

INDEX NO. 654839/2022

RECEIVED NYSCEF: 03/16/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TIMOTHY REIF and DAVID FRAENKEL, as Co-
Trustees of the LEON FISCHER TRUST FOR THE
LIFE AND WORK OF FRITZ GRUNBAUM and
MILOS VAVRA,
                    *Plaintiffs,*

-against -                                          CAPTION 7

SUCCESSOR TRUSTEE TO IRA WENDER as
Trustee of the ESTEE LAUDER 2002 TRUST,

                    Defendant,

An Artwork *I LOVE ANTITHESES* (1912) by the
Artist Egon Schiele,

                    *Defendant-in-rem.*