**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

TIMOTHY REIF and DAVID FRAENKEL, as Co-Trustees of the LEON FISCHER TRUST FOR THE LIFE AND WORK OF FRITZ GRÜNBAUM and MILOS VAVRA,

        *Plaintiffs*,

v.

THE ART INSTITUTE OF CHICAGO,

        *Defendant*, and

An Artwork *RUSSIAN PRISONER OF WAR* (1916) by Artist Egon Schiele,

        *Defendant-in-rem.*

Case No. 1:23-cv-2443 (JGK)

**SECOND JOINT RULE 26(f) REPORT, JOINT REQUEST FOR STAY, AND ALTERNATIVE PROPOSED SCHEDULING ORDER**

---

In accordance with Federal Rule of Civil Procedure 26(f), and the Court's Order, dated June 6, 2025, ECF 124, Dunnington Bartholow & Miller, LLP ("Dunnington") as counsel for the estate of Leon Fischer and for Milos Vavra (collectively, the "Grünbaum Heirs") together with Plaintiffs Timothy Reif and David Fraenkel, as co-trustees of the Leon Fischer Trust for the Life and Work of Fritz Grünbaum (the "Trust") (collectively, "Plaintiffs") and Defendant The Art Institute of Chicago ("Defendant" or "AIC") (collectively, the "Parties") have conferred and submit the following Final Joint Rule 26(f) Report and Proposed Scheduling Order.[1]

**I.  JOINT REQUEST FOR A STAY**

The Parties hereby jointly request a stay of this action based on intervening events—subsequent to the submission of the Parties' prior Rule 26(f) report—which may impact the

---

[1] As set forth in the Trust's motion to withdraw and the Trust's opposition to Dunnington's cross-motion to amend the complaint, ECF 102-04, 114-17, the Trust disputes that Dunnington represents "the estate of Leon Fischer," and thus disputes Dunnington's use of the phrase "the Grünbaum Heirs" to refer to its clients. Both motions remain pending.

disposition of this case. For the following reasons, the Parties agree that good cause exists for a stay.

*Russian War Prisoner*—which is the artwork at issue in this action—is the subject of a state court criminal proceeding in the Supreme Court of New York County. On April 23, 2025, the Supreme Court entered an order instructing AIC to "surrender Russian War Prisoner to a designated Homeland Security Investigations agent," to be turned over to the heirs of Fritz Grünbaum. On April 29, 2025, AIC sought a stay of the Supreme Court's order pending appeal, with the consent of the New York County District Attorney's Office. The Appellate Division granted that motion.

Pursuant to an agreement between AIC and the Manhattan District Attorney's Office, AIC's appeal will be fully briefed by October 10, 2025, to allow the matter to be heard during the court's November 2025 term. AIC therefore anticipates a ruling from the Appellate Division is likely by late this year or early 2026.

Plaintiffs' position is that if the Appellate Division affirms the Supreme Court's order instructing AIC to surrender *Russian War Prisoner* to Grünbaum's heirs, Plaintiffs' claims in this action—and any forthcoming counterclaims AIC may assert—will be moot. Good cause therefore exists to stay this action pending a resolution of the criminal proceeding, and this Court has discretion to grant this relief. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012) ("A district court may stay civil proceedings when related criminal proceedings are imminent or pending, and it will sometimes be prudential to do so."); *Sec. & Exch. Comm'n v. Baston*, 2023 WL 6850320, at *2 (S.D.N.Y. Oct. 17, 2023) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action.") (quotation omitted); *Johnson v. New York*

2

*City Police Dep't*, 2003 WL 21664882, at *2 (S.D.N.Y. July 16, 2003) ("A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter.") (quotation omitted).

AIC believes it is premature to litigate the impact of any decision by the Appellate Division, as that impact would depend on the court's actual holding and the reasoning supporting it. Regardless, AIC agrees that the appeal could potentially have an impact on this case, such that it would be inefficient for this litigation to proceed while that appeal is pending.

Accordingly, out of respect for this Court's time and resources and those of the Appellate Division, and to preserve the limited resources of all parties, the Parties jointly propose that this action be stayed until the resolution of that appeal.

In the event the Court is not inclined to grant the Parties' joint request for a stay, the Parties respectfully request that the Court enter the Case Schedule and Discovery Plan set forth in Part IV, *infra*.

## II. BASIS FOR SUBJECT MATTER JURISDICTION

This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Pursuant to Rule II.A of this Court's individual rules, Plaintiffs identify the citizenship of each party as follows:

- Plaintiff Timothy Reif is a resident of the State of New York.
- Plaintiff David Fraenkel is a resident of the State of Florida.
- Plaintiff Milos Vavra is a resident of the Czech Republic.
- Defendant AIC is a nonprofit corporation incorporated in and with its principal place of business in the State of Illinois.

## III. SUBJECTS ON WHICH DISCOVERY IS NEEDED

A. **The Trust's Position**

The Trust anticipates seeking discovery on the following subject matters. The Trust expressly reserves the right to seek discovery on additional relevant matters as this case progresses.

1. The acquisition of *Russian Prisoner*, including all provenance research undertaken in connection with that acquisition.

2. The provenance and history of *Russian Prisoner*, including before, during, and after World War II.

3. Information available to Defendant that would have revealed that good title to *Russian Prisoner* could not be conveyed.

4. Any provenance research undertaken in connection with any other works of art by Egon Schiele.

5. Defendant's policies and procedures related to provenance research, including Nazi-era provenance research.

6. Nazi-era provenance research undertaken by Defendant or otherwise in Defendant's possession.

7. Any notices or other information received by Defendant concerning Nazi-looted artwork.

8. Any requests to return artwork alleged to have been looted by the Nazis or otherwise improperly taken due to events arising from the Holocaust.

9. Defendant's knowledge of and communications concerning Plaintiffs or Fritz Grünbaum, including any efforts to restitute the artworks of Fritz Grünbaum.

    10. Defendant's knowledge of and communications with or concerning persons with knowledge of Grünbaum's ownership of *Russian Prisoner*, including Eberhard Kornfeld and Otto Kallir.

    11. Any and all defenses and/or counterclaims Defendant asserts in this action.

  B. **The Grünbaum Heirs' Position**

The Grünbaum Heirs anticipate seeking discovery on the following subject matters and expressly reserve the right to seek discovery on additional relevant matters as this case progresses.

    1. Defendant AIC's acquisition of the Artwork, including all provenance research undertaken in connection with that acquisition.

    2. Defendant AIC's acquisition of Otto Kallir's catalogue raisonné of Egon Schiele.

    3. Defendant AIC's acquisition of the 1957 Galerie St. Etienne catalog "Egon Schiele: Watercolors and Drawings" depicting Russian Prisoner as No. 25 together with Defendants AIC's knowledge of Otto Kallir's acquisition of *Russian Prisoner*.

    4. Defendant AIC's relationship with Otto Kallir, Galerie St. Etienne, Galerie Würthle, Rudolf Leopold, Marlborough Gallery and other collectors and dealers in the works of Egon Schiele.

    5. Defendant AIC's pre-1966 institutional knowledge of Nazi art looting including military service of its leadership in Europe during World War II and including knowledge of the 1943 London Declaration, Military Law No. 52, and the 1946 Austrian Nullification Law.

6. Defendant AIC's pre-1966 research of potentially-looted objects in its collection in response to U.S. government warnings.

7. Any loans, acquisitions, or provenance research undertaken or declined by AIC or any third parties in connection with any other works of art by Egon Schiele.

8. Any provenance research or documents related to the 1998 Morgenthau seizure of Egon Schiele's *Dead City III*.

9. Defendant AIC's statements to Congress related to Nazi looted art claims, including but not limited to testimony of James Cuno.

10. Defendant AIC's policies and procedures related to provenance research, including Nazi-era provenance research.

11. Post-1966 Nazi-era provenance research undertaken by Defendant AIC or otherwise in Defendant AIC's possession.

12. Any notices or other information received by Defendant AIC concerning Nazi-looted artwork.

13. Any requests to Defendant AIC to return artwork alleged to have been looted by the Nazis or otherwise improperly taken due to events arising from the Holocaust.

14. Defendant AIC's knowledge of and communications concerning Plaintiffs or Fritz Grünbaum, including any efforts to restitute the artworks of Fritz Grünbaum.

15. Defendant AIC's knowledge of and communications with or concerning persons with knowledge of Grünbaum's ownership of the Artwork, including Eberhard Kornfeld and Otto Kallir.

16. Any and all defenses and/or counterclaims Defendant AIC asserts in this action.

C. **Defendant's Position**

AIC anticipates seeking discovery on the following subject matter and reserves the right to seek discovery on additional relevant matters as this case progresses.

1. AIC's good faith and diligence in acquiring the Artwork.

2. The provenance and history of the Artwork, including before, during, and after the Second World War.

3. Plaintiffs' existing research into the history of the Artwork, including through discovery in prior litigation.

4. Plaintiffs' claim to the estate of Fritz Grünbaum, including documents establishing their rights as heirs and/or trustees.

5. Plaintiffs' and their predecessors' knowledge of their claims to the Artwork

6. Plaintiffs' and their predecessors' diligence, or lack thereof, in pursuing their claims to the Artwork.

7. Plaintiffs' reasons for not pursuing litigation against AIC following AIC's refusal of Plaintiffs' 2006 demand for the Artwork.

8. The role of Michael Nemec, Herbert Gruber, and Büro Für Genealogie in Plaintiffs' efforts to asset claims to the Artwork.

9. The fact alleged in Plaintiffs' Second Amended Complaint.

## IV. ALTERNATIVE CASE SCHEDULE AND DISCOVERY PLAN IN THE EVENT THE COURT DECLINES TO STAY THIS ACTION

As explained in Part I, above, the parties agree that the proceeding in this case, including discovery, should be stayed pending resolution of the appeal from the separate proceedings in state court, and the parties should meet and confer regarding a proposed schedule after those proceedings terminate. However, in response to the Court's June 5, 2025, Order instructing the parties to submit a proposed case schedule, the parties jointly propose the following schedule, in the event the Court declines to enter a stay at this point.

On March 11, 2025, the United States Court of Appeals for the Second Circuit issued a summary order in *Reif v. Art Institute of Chicago*, No. 24-809. The Second Circuit's summary order vacated this Court's March 19, 2024 judgment dismissing Plaintiffs' claims on the pleadings and remanded the action to this Court with instructions to permit the filing of Plaintiffs' proposed Second Amended Complaint (the "SAC").

Plaintiffs previously filed the proposed SAC in redline form on December 15, 2023. ECF 80-41. On April 30, 2025, in response to the Trust's motion to withdraw Dunnington as its counsel, Dunnington filed a cross-motion to amend the proposed SAC to add Büro Für Genealogie ("BFG") as attorney-in-fact for Timothy Reif and David Fraenkel and remove Kelley Drye & Warren LLP's e-filing privileges in this matter. ECF 107-10. The Trust opposed Dunnington's cross-motion in its entirety. ECF 114-17. AIC also filed a response to Dunnington's cross motion. ECF 118. Dunnington's cross-motion remains pending.

With the Court's permission, Plaintiffs will file an amended pleading in final form within one (1) day after the later of: (i) the Court's endorsement of this Joint Rule 26(f) Report and Proposed Scheduling Order, or (ii) the Court's issuance of a ruling on Dunnington's cross-motion to amend the complaint.

8

The Parties propose the following case schedule, with deadlines that run from the filing of the amended pleading.

| EVENT | DEADLINE |
|---|---|
| File amended pleading | 1 day after the later of: (i) Court's endorsement of the Parties' Joint Rule 26(f) Report and Proposed Scheduling Order, or (ii) the Court's issuance of a ruling on Dunnington's cross-motion. |
| Response to amended pleading | 14 days after filing of amended pleading |
| Response to Counterclaim | 21 days after filing of Counterclaim (if any) |
| Initial Disclosures | 14 days after filing of response to Counterclaim |
| Expert Disclosures (by Party with burden of proof)[2] | 6 months after service of Initial Disclosures |
| Responsive Expert Disclosures (by Party without burden of proof) | 6.5 months after service of Expert Disclosures |
| Fact Discovery Cutoff | 8 months after service of Initial Disclosures |
| Expert Report Deadline (by Party with burden of proof) | 6 weeks after Fact Discovery Cutoff |
| Responsive Expert Report Deadline (by Party without burden of proof) | 6 weeks after Expert Report Deadline |
| Expert Discovery Cutoff | 2 months after Responsive Expert Report Deadline |
| Dispositive Motion Filing Deadline | 2 months after Expert Discovery Cutoff |

The Parties will meet and confer concerning pre-trial and trial deadlines within 14 days after the denial of any summary judgment motions.

The Parties will re-submit the foregoing schedule with dates certain within one week of the filing of the amended pleading.

Other interim discovery deadlines may be extended by the Parties on consent without application to the Court, provided that all Interrogatories, Requests for Admission, and Requests for Production are served no later than 30 days before the Fact Discovery Cutoff.

---

[2] The Expert Disclosures and Responsive Expert Disclosures shall identify the Parties' trial experts and the general subject matter(s) of their testimony, and include a copy of each expert's C.V.

9

The Parties also agree to supplement their Initial Disclosures pursuant to Fed. R. Civ. P. 26(e) within a reasonable period of time after discovery of the information necessitating supplementation.

## V. LIMITATIONS ON DISCOVERY

The Parties will conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York, including the limitations on discovery provided for therein. The Parties also anticipate seeking the entry of a Confidentiality Agreement and Protective Order.

## VI. ANTICIPATED DISCOVERY DISPUTES

The Parties are not currently aware of any discovery disputes, and will endeavor to work cooperatively to resolve disputes and avoid bringing unnecessary issues to the Court.

## VII. AMENDMENTS TO THE PLEADINGS

As noted above, Dunnington filed a cross-motion to amend the proposed SAC, which remains pending.

Plaintiffs do not otherwise anticipate seeking leave to amend the SAC, but reserve the right to do so as the case progresses. AIC will file its responsive pleading after Plaintiffs have filed the SAC.

## VIII. EXPERT WITNESS DISCLOSURES

The Parties anticipate utilizing experts. Expert reports and depositions will be handled on the timeframe set forth in Section IV above.

## IX. ELECTRONIC DISCOVERY

The Parties anticipate seeking the entry of a Stipulated Order Regarding the Production of Electronically Stored Information. In connection with preparation of that Order, the Parties will confer in good faith to set e-discovery protocols that are proportional to the needs of the

case. The Parties will confer in good faith to set e-discovery protocols that are proportional to the needs of the case.

## X. ANTICIPATED MOTIONS

The Parties presently anticipate filing motions for summary judgment on the timelines set forth in the scheduling proposals above, if they determine that the evidentiary record supports such motions. Additionally, the Parties state as follows:

### A. Defendant's Position

AIC may file a motion to dismiss or motion for judgment on the pleadings as to Plaintiffs' constructive trust claim. That claim was not alleged in the FAC and thus was not addressed in the earlier motion to dismiss briefing in this matter. It also was not addressed on appeal or in the Second Circuit's decision. AIC continues to evaluate whether the constructive trust claim is best addressed at the pleadings stage, and may defer this issue until summary judgment.

### B. Plaintiffs' Position

The Grünbaum Heirs believe that any motion practice related to the constructive trust claim would be premature because a constructive trust is a fact-intensive flexible equitable remedy under New York law and within the court's discretion designed to avoid injustice. Without developing the facts relevant to AIC's knowledge that *Russian Prisoner* was likely looted prior to its pre-1966 acquisition, such motion practice would be premature.

## XI. EARLY SETTLEMENT RESOLUTION

On December 6, 2024, the United States Court of Appeals for the Second Circuit referred the appeal of this action to the Court's Civil Appeals Mediation Program ("CAMP") for purposes of exploring settlement possibilities. *See* Case No. 24-809, ECF 105. The Parties participated in a CAMP mediation on January 13, 2025. The mediation did not result in settlement.

## XII. TRIAL

The Parties anticipate that a trial of this matter will take approximately two weeks. The Parties do not consent to a Magistrate Judge at this time.

DATED: June 11, 2025

**KELLEY DRYE & WARREN, LLP**

By: /s/ Genna S. Steinberg
Genna S. Steinberg
Elizabeth N. Krasnow
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
ekrasnow@kelleydrye.com
gsteinberg@kelleydrye.com

*Counsel for Plaintiffs Timothy Reif and David Fraenkel, as Co-Trustees of the Leon Fischer Trust for the Life and Work of Fritz Grünbaum*

**DUNNINGTON BARTHOLOW & MILLER LLP**

By: /s/ Raymond J. Dowd
Raymond J. Dowd
Claudia G. Jaffe
230 Park Avenue, 21st Floor
New York, NY 10169
Telephone: (212) 682-8811
Facsimile: (212) 661-7769
rdowd@dunnington.com
cjaffe@dunnington.com

*Counsel for the Grünbaum Heirs*

**WILSON SONSINI GOODRICH & ROSATI P.C.**

By: /s/ Jessica Lonergan
Jessica Lonergan
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
jlonergan@wsgr.com

Eric P. Tuttle (admitted *pro hac vice*)
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104
Telephone: (206) 883-2500
Facsimile: (866) 974-7329
eric.tuttle@wsgr.com

Luis Li (admitted *pro hac vice*)
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
luis.li@wsgr.com

*Counsel for Defendant The Art Institute of Chicago*